# EXHIBIT 4

## EXHIBIT 4 TO PRETRIAL ORDER

## AGROFRESH'S ISSUES OF LAW REMAINING TO BE LITIGATED

AgroFresh Inc. ("AgroFresh") respectfully submits this statement of issues of law. AgroFresh's statement is based on AgroFresh's current understanding of Defendants' claims and defenses. AgroFresh reserves its right to change or supplement this statement to the extent Defendants are permitted to change or supplement their own submissions, including, but not limited to, adding specific new allegations for which Defendants' submissions did not fairly put AgroFresh on notice.[1]

AgroFresh does not include here the issues that have been the subject of a stipulation, issues that may arise due to future acts by Defendants, or issues that have been bifurcated (such as Counts II, III, V-XVIV, and damages). AgroFresh reserves the right to include these issues at a later time.

By including an issue of law here, AgroFresh does not assume the burden of proof or production with regard to the legal issues that are Defendants' burden to prove. AgroFresh reserves the right to revise this list for any reason, including in light of Defendants' list, as well as any pretrial rulings by the Court.

To the extent AgroFresh's statement of issues of fact remaining to be litigated contains issues of law, those issues are incorporated herein by reference.

AgroFresh objects to Defendants including in the Pretrial Order any issues and facts not properly part of this case and/or untimely raised. AgroFresh does not concede the relevance or propriety of these issues or facts merely by including in AgroFresh's statements any responsive issues or facts.

_____

[1] *E.g.* AgroFresh objects to any new arguments that Defendants seek to raise for the first time after the close of discovery.

## I.  OWNERSHIP OF UNITED STATES PATENT NO. 9,394,216

1.      Whether AgroFresh is the owner of United States Patent No. 9,394,216 (the "'216 Patent") through operation of Commercial Agreement and Consulting Agreement, which automatically assigned the '216 Patent to AgroFresh. *Intercept Pharm., Inc. v. Fiorucci*, No. CV 14-1313-RGA, 2016 WL 6609201, at *1 (D. Del. Jan. 28, 2016) (the interpretation of patent assignment clauses is a matter of federal law); *Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991) (an assignment of rights in an invention made prior to the existence of the invention may be a valid assignment of an expectant interest, and "no further act would be required once an invention came into being; the transfer of title would occur by operation of law"); *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) (whether an assignment of patent rights in an agreement is automatic or merely a promise to assign depends on the contractual language, and if the contract expressly grants rights in future inventions, no further act is required for transfer of title to occur by operation of law); *Speedplay, Inc. v. Bebop, Inc.,* 211 F.3d 1245, 1253 (Fed. Cir. 2000) (concluding that language providing that party "hereby conveys, transfers and assigns" inventions constituted present assignment).

2.      All words in the contract should be given meaning and effect. *iBIO, Inc. v. Fraunhofer USA, Inc.*, No. 10256-VCMR, 2016 Del. Ch. LEXIS 113, at *13-14 (Ch. July 29, 2016) (contract construction is a matter of law and "operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court" and so "a court must construe the agreement as a whole, giving effect to all provisions therein") (citations omitted); *In re Peierls Family Inter Vivos Trusts*, 77 A.3d 249, 265 (Del. 2013) ("[W]e prefer an interpretation that attaches meaning to

every word used by the drafter and that avoids rendering language superfluous."); *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421, 430–31 (D. Del. 2014) (standard rules of contract interpretation require courts to determine the intent of the parties from the language of the contract and "where no ambiguity exists, the contract will be interpreted according to the ordinary and usual meaning of its terms") (citations omitted); *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010) ("Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party.") (citation and internal quotes omitted).

3.       If contracts are unambiguous, as the Agreements are here, they should be construed as a matter of law. *iBIO, Inc. v. Fraunhofer USA, Inc.*, No. 10256-VCMR, 2016 Del. Ch. LEXIS 113, at *13-14 (Ch. July 29, 2016) ("The meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan," and "[i]f a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity") (citations omitted); *Glanden v. Quirk*, 128 A.3d 994, 1000 (Del. 2015); *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) ("A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.").

4.       Whether the phrase "related to," as used in the Agreements, is unambiguous and should be given a broad meaning. *Tyco Healthcare Grp., LP. v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1378-79 (Fed. Cir. 2009) ("In general, 'related to' means one thing has some

relationship or connection to another thing."); *Denis v. Attorney Gen. of U.S.*, 633 F.3d 201, 209 (3d Cir. 2011) (the term "relating to" in a statute is "to be read expansively and 'must not be strictly confined to its narrowest meaning'") (citation omitted).

## II.     FRAUDULENT INDUCEMENT

5.      AgroFresh will prove the elements of fraudulent inducement at trial.  *E.I. DuPont de Nemours & Co. v. Florida Evergreen Foliage*, 744 A.2d 457, 461-62 (Del. 1999) (the elements of fraudulent inducement include "(1) a false representation . . . made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance"; and, under common law, the representation must be material and concern "an essential part of the transaction").

### A.      False representations

6.      Whether Defendants made false representations, failed to disclose material facts despite a duty to speak, and failed to disclose facts necessary to render statements they had made not misleading in connection with the negotiation of the First Amendment to the Commercial Agreement and Third Extension of the Consulting Agreement.  *Duffield Associates, Inc. v. Meridian Architects & Engineers, LLC*, No. CIV.A. SIOC-03004RFS, 2010 WL 2802409, at *4-5 (Del. Super. July 12, 2010) (fraud may "occur not only where there is an overt misrepresentation but may exist where there is a deliberate concealment of material facts or silence when one has a duty to speak."); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) ("[O]ne is equally culpable of fraud who by omission fails to reveal that which it is his duty to disclose in order to prevent statements actually made from being misleading.);

*Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987) (fraud may occur "through deliberate concealment of material facts, or by silence in the face of a duty to speak.").

7.      Whether Defendants' had a duty to speak arising by virtue of Defendants' contractual obligations, including the terms of the contract and the duty of good faith and fair dealing; the special relationship between the parties by virtue of their close working relationship, AgroFresh's extensive disclosure of confidential information, and AgroFresh's substantial compensation to Mir; and the basic and essential nature of the facts in question. *In re Student Fin. Corp.*, No. 02-11620, 2004 WL 609329, at *5 (D. Del. Mar. 23, 2004) (duty to speak may arise from circumstances other than a fiduciary or confidential relationship, noting that "Restatement (Second) of Torts § 551 provides that a party to a business transaction has a duty to exercise reasonable care to disclose: 1) information known due to the existence of a confidential or fiduciary relationship; 2) information that if undisclosed will cause its partial statements of facts to be misleading; or 3) facts basic to the transaction 'if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts'"); *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 29 (Del. Ch. 2009) (citing Restatement (Second) of Torts § 538 regarding materiality); Restatement (Second) of Torts § 538 ("The matter is material if (a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.").

**B.      Knowledge or belief representation was false**

8.      Whether Defendants were aware that their representations and omissions were false and misleading.  *Metro Commun. Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 143 (Del. Ch. 2004) (fraud requires "a certain level of scienter on the part of the defendant; a misrepresentation must be made either knowingly, intentionally, or with reckless indifference to the truth").

## C.     Intent to induce plaintiff to act and justifiable reliance

9.      Whether Defendants intended to induce reliance on their misrepresentations and omissions, which resulted in damage to AgroFresh.  *In re Wayport, Inc. Litig.*, 76 A.3d 296, 325 (Del. Ch. 2013) ("A result is intended if the actor either acts with the desire to cause it or acts believing that there is a substantial certainty that the result will follow from his conduct.") (quoting Restatement of Torts § 531, cmt. C); *Davis v. 24 Hour Fitness Worldwide, Inc.*, 75 F. Supp. 3d 635, 640 (D. Del. 2014) ("Questions of reasonable reliance ask what information a reasonable person would consider important in determining his choice of action in the transaction in question.") (citation and internal quotes omitted); *Vichi v. Koninklijke Philips Elecs.*, N.V., 85 A.3d 725, 815–16 (Del. Ch. 2014) (for damages to lie, "misrepresentation or omission must be a factual cause of the harm in the sense that the harm would not have occurred but for the misrepresentation or omission" and the misrepresentation or omission also must be a legal cause of the harm, meaning that it must be a sufficiently significant cause of the harm to impose liability, which under the Restatement (Second) of Torts, "[a] fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance").

## D.     Duty to speak

10.     A duty to speak may arise under various circumstances.

One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2); *In re Wayport, Inc. Litig.*, 76 A.3d 296, 323 (Del. Ch. 2013).

> ### i.      Duty arising from the Commercial Agreement and Consulting Agreement

11.     Whether Section 12.1 of the Agreements created a duty to disclose the technology at issue in this case. *Mitsubishi Power Sys. Ams., Inc. v. Babcock & Brown Infrastructure Grp. US, LLC*, No. : 4499-VCL, 2010 Del. Ch. LEXIS 11, at *50 (Ch. Jan. 22, 2010) (acknowledging parties can contract to impose a duty to disclose).

> ### ii.     Duty arising from Nazir Mir's and MirTech's relationship with AgroFresh

12.     Whether the parties' longstanding commercial partnership and close business relationship was the type of special relationship giving rise to a duty to disclose or, at a minimum, whether a duty to disclose arose from the duty of good faith and fair dealing. *Crosse*

*v. BCBSD, Inc.*, 836 A.2d 492, 494 (Del. 2003) (whether a special or fiduciary relationship exists

is a question of law); *Corrado Bros. v. Twin City Fire Ins. Co.*, 562 A.2d 1188, 1192 (Del. 1989)

("A fiduciary relationship exists where the parties share a common goal and "the fiduciary is

required to pursue solely the interests of the beneficiary in the property."); *Wal-Mart Stores, Inc.*

*v. AIG Life Ins. Co.*, 872 A.2d 611, 624 (Del. Ch. 2005), *aff'd in part, rev'd in other part*, 901

A.2d 106 (Del. 2006) (in a fiduciary relationship "one party places a special trust in another and

relies on that trust," or "one party [] protect[s] the interests of another"); *MetCap Sec. LLC v.*

*Pearl Senior Care, Inc.*, No. CIV.A. 2129-VCN, 2007 WL 1498989, at *5 (Del. Ch. May 16,

2007) ("Generally, a duty to disclose arises when there is a fiduciary or other similar relationship

of trust between the parties or where the custom or course of dealing between the parties merits

disclosure.").

### iii.  Duty to disclose facts basic to the transaction

13.     Whether MirTech and Mir had a duty to disclose facts basic to the transaction in

connection with the negotiations of the First Amendment and Third Extension but failed to do so.

Restatement (Second) of Torts § 551 (1977) (comment b)  ("The conditions under which liability

is imposed for nondisclosure in an action for deceit differ in one particular from those under

which a similar nondisclosure may confer a right to rescind the transaction or to recover back

money paid or the value of other benefits conferred. In the absence of a duty of disclosure, under

the rule stated in Subsection (2) of this Section, one who is negotiating a business transaction is

not liable in deceit because of his failure to disclose a fact that he knows his adversary would

regard as material.  On the other hand, as is stated in Restatement, Second, Contracts § 303(b)

the other is entitled to rescind the transaction if the undisclosed fact is basic; and under

Restatement of Restitution, § 8, Comment e, and § 28, he would be entitled to recover back any money paid or benefit conferred in consummation of the transaction.")

## III.    RESCISSION

14.     Misrepresentations of material facts, like those at issue in this case, render a contract voidable.  Restatement (Second) of Contracts § 164(1) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."); *Norton v. Poplos*, 443 A.2d 1, 4–5 (Del. 1982) ("It is not necessary, in order that a contract may be rescinded for fraud or misrepresentation, that the party making the misrepresentation should have known that it was false.  Innocent misrepresentation is sufficient for though the representation may have been made innocently, it would be unjust and inequitable to permit a person who has made false representations, even innocently, to retain the fruits of a bargain induced by such representations.").

15.     Misrepresentations are actionable, and permit rescission, if they create a false impression in the contractual counterparty.  *Norton*, 443 A.2d at 4–5 (a statement "may constitute an actionable misrepresentation if it causes a false impression as to the true state of affairs, and the actor fails to provide qualifying information to cure the mistaken belief").

16.     Whether the duty of good faith and fair dealing warrants rescission of the language that Mir and MirTech negotiated without disclosing their relationship with Decco or the '216 Patent technology.  *See, e.g.*, *Omni Credit All., Inc. v. Kennedy Funding, Inc.*, 371 F. App'x 252, 254 (3d Cir. 2010).

9