

Frederick L. Cottrell III
302-651-7509
Cottrell@rlf.com

November 2, 2018

**REDACTED
PUBLIC VERSION**

<u>**VIA CM/ECF & HAND DELIVERY**</u>

The Honorable Sherry R. Fallon
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re: *AgroFresh Inc. v. MirTech, Inc., et al.*, C.A. No. 16-662-MN-SRF

Dear Magistrate Judge Fallon:

    While UPL is actively participating in discovery as a party, it bears noting that AgroFresh's motives for adding UPL to this lawsuit—and for seeking depositions of high-ranking UPL officers who live and work in Mumbai—are questionable. UPL is the parent company of non-party Decco Worldwide, which is the parent company of Defendant Decco U.S. Post-Harvest, Inc., which owns 50% of the Delaware joint venture (Essentiv) with Dr. Mir. Essentiv made ▮▮▮▮▮▮▮▮▮▮ U.S. sales in 2016 (in a $50MM plus market), and it is those sales and the activities of Dr. Mir that are at issue. Essentiv made those sales on the express warranty and representation from Dr. Mir that he owned the '216 patent and could license it to Essentiv. When the Court ruled that Dr. Mir did not own the '216 patent, Essentiv immediately and voluntarily paused all sales pending resolution of this suit. Located on the other side of the globe and thrice removed from Essentiv, UPL had limited involvement with the conduct at issue in this lawsuit, consisting of a handful of joint meetings involving Dr. Mir and typical corporate governance of its subsidiaries.

    Yet AgroFresh's posture in discovery has been aggressive, contending that UPL must present a corporate witness regarding "prior economic espionage activities in the US and around the world that have been the subject of civil cases or criminal investigations" and "all communications with counsel associated with the economic espionage and frauds that [AgroFresh] ha[s] pled." MacGill Oct. 24 Email (Ex. 1). These topics lend themselves more to harassment than the litigated issues. UPL submits that high-ranking officers from a foreign company with a tangential connection to the salient facts of this case should not be required to travel from Mumbai to the United States for deposition. AgroFresh's counsel can take the depositions by video or, if they desire, travel to India to take the deposition in person.

### There is a Presumption that Depositions of UPL Witnesses Should Be Held in India

    As AgroFresh acknowledges, it is well settled that the deposition of a corporate defendant's officers or agents should ordinarily be taken at the corporation's principal place of business. *See, e.g., CyberFone Sys. LLC v. Cellco Partnership*, C.A. No. 11-827 (D. Del. May 15, 2012) (Tr. at 24:23-25:5) (Ex. 2) ("Deponents generally are deposed where they live or work, unless there's a real good reason to bring them to Delaware. So that is the default."); *Xpoint Technologies v. Intel*

November 2, 2018
Page 2

*Corp.*, D.I. 482 at ¶ 3 in C.A. No. 09-26 (D. Del. Aug. 17, 2010) (Bechtle, S.M.) (Ex. 3). "[T]his presumption applies with no less force when the defendant is domiciled in another country." *See In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471–72 (E.D. Va. 2010). In fact, "[w]hen a foreign defendant is involved, this presumption may be even stronger." *S.E.C. v. Banc de Binary*, 2014 WL 1030862, at *3 (D. Nev. Mar. 14, 2014) (citing *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987)).

## I. The balance of the burdens supports conducting depositions in India

The inconvenience of holding depositions in the United States is demonstrable. Mr. Kaushik and Mr. Kumar[1] both work and reside in India. With high-ranking positions within UPL, their extended absence for travel to and from the U.S. (as opposed to losing a mere day each for deposition in India) would disrupt their busy professional schedules and UPL's affairs. Notwithstanding AgroFresh's unsupported claim (based on a few prior trips) that "both witnesses travel to the U.S. frequently" (D.I. 259 at 4), neither individual *regularly* travels to the U.S. Nor does either expect to travel here before the close of fact discovery. More important, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Dr. Khanvte Ltr. (Ex. 4). ▉▉▉▉▉▉▉ Mr. Kaushik has only taken three international trips and has not travelled to the U.S. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Counsel will be placed under some burden if required to travel to India. But "travel for depositions is expected of litigators," *Morin v. Nationwide Fed. Credit Union*, 229 F.R.D. 362, 363 (D. Conn. 2005), and Barnes & Thornburg's attorneys—seasoned litigators from a law firm with nationwide offices—have substantial resources and experience to handle this burden. And even if the burden was equal or greater for AgroFresh (it is not), the purported burden on AgroFresh is a natural consequence of the suit *it filed* against a foreign defendant and should not be a basis to shift that burden to UPL. *Shinde v. Nithyananda Found.*, 2015 WL 12778697, at *2 (C.D. Cal. May 21, 2015) ("[C]ourts have held that plaintiffs normally cannot complain if they are required to take discovery at great distances from the forum.") (internal quotation marks omitted). In any event, "the convenience of counsel is less compelling than any hardship to the witnesses." *Yaskawa Elec. Corp. v. Kollmorgen Corp.*, 201 F.R.D. 443, 445 (N.D. Ill. 2001); *Merianos v. Merry Chance Indus. Ltd.*, 2011 WL 13214089, at *3 (C.D. Cal. Aug. 8, 2011).

Recognizing that distant travel will inevitably burden someone, UPL offered to make its witnesses available for deposition by videoconference. *See* Fed. R. Civ. P. 30(b)(4). Although AgroFresh rejected this offer, it has made no showing that a videoconference deposition would prejudice it. Consistent with approaches endorsed by other courts in similar situations, UPL

---

[1] AgroFresh has not yet served its 30(b)(6) notice. However, UPL expects that multiple witnesses will be designated, which may include Mr. Kaushik, Mr. Kumar, and others within UPL. For any of these potential witnesses, a trip to the U.S. from India will likely be a disruptive and burdensome undertaking.

November 2, 2018
Page 3

continues to offer this compromise.[2] *See UniSuper Ltd. v. News Corp.*, 2006 WL 375433, at *2 (Del. Ch. Feb. 9, 2006) (denying motion to compel and finding video depositions to be appropriate where witnesses would have to incur significant time and expense to travel from Australia to the United States for their depositions); *In re Cent. Gulf Lines, Inc.*, 1999 WL 1124789, at *1 (E.D. La. Dec. 3, 1999) (denying motion to compel witnesses to travel from Hong Kong to the United States and permitting video depositions).

AgroFresh's other arguments on convenience are unconvincing. First, it baldly asserts that obtaining a travel Visa "could take a month or more." D.I. 259 at 4. But the website it cites even states that a Visa could be issued in as little as "three working days." India also offers a "Fast Track" service to obtain an e-Visa. *See* http://www.evisaindia.org.in/. Second, AgroFresh generally alleges that it would be more difficult to secure a deposition location, videographer, and court reporter in India. D.I. 259 at 4. But AgroFresh "fails to provide any evidence that it would be inefficient or costly to secure these matters in [India]," *Tailift USA, Inc. v. Tailift Co.*, 2004 WL 722244, at *3 (N.D. Tex. Mar. 26, 2004), and there are U.S.-based court reporter companies that offer deposition services in India. Finally, AgroFresh relies on one case that suggests a deposition could require "a commission from a High Court in India." D.I. 259 at 4. However, AgroFresh does not explain how difficult that may be to obtain, or whether it is common practice to obtain a commission to conduct a deposition of an Indian citizen. But even if a commission is required, to demonstrate due respect for Indian law, it seems AgroFresh would have to obtain one to depose these witnesses *anywhere*, whether here or in India.

## II. Conducting depositions in India will be the most efficient

████████████████████████████████████

████ aking travel to India unavoidable. Consequently, taking the depositions of *all* UPL's witnesses in India will increase efficiency because it will encourage the parties to schedule Mr. Kaushik's, Mr. Kumar's, and UPL's 30(b)(6) deposition over a single block of time, rather than on nonsequential dates. The prospect of avoiding unnecessary travel should heavily favor India. *See Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*, 2005 WL 8157062, at *4 (E.D.N.Y. May 11, 2005) (rejecting motion to compel defendant's Egyptian-based witness to appear for deposition in New York, finding the fact that other deponents were also located in Egypt "weigh[ed] heavily in favor of adhering to the general presumption"); *Snow Becker Krauss P.C. v. Proyectos E Instalaciones De Desalacion*, 1992 WL 395598, at *3 (S.D.N.Y. Dec. 11, 1992) (denying request to take defendants' depositions in New York instead of Spain, noting that plaintiff could accomplish a significant portion of its depositions "in a single trip to Spain").

In contrast, AgroFresh's purported claim for increased efficiency is its speculative assertion that disputes may arise that demand immediate Court assistance. This argument should be rejected because it ignores that Court intervention during a deposition is rarely sought, it overlooks that most disputes can likely be preserved on the record or resolved during the block of

---

[2] AgroFresh has proposed, as an alternative, that depositions occur in London. For the same reasons discussed herein, that distant location is not much less inconvenient than the United States.

November 2, 2018
Page 4

time set aside for all depositions in India, and it improperly assumes counsel will not conduct themselves professionally.

### III. Costs favor taking these depositions in India

The costs to UPL (both in monetary expenditures and inconvenience) of bringing Mr. Kaushik, Mr. Kumar, and potentially several 30(b)(6) designees to the United States on various dates—compared to a few lawyers traveling to India during a single block of time—would be significant. AgroFresh has offered no evidence that it would cost more to conduct these depositions in India than in the United States. At worst, the costs associated with each suggested location are roughly equal, so conducting depositions here instead of in India would merely shift costs to UPL, an improper approach given the presumption on deposition locations.

### IV. UPL has filed no counterclaims in this case

UPL has filed no counterclaims, so the presumption that its deponents should be examined in India applies with full force. AgroFresh's assertion that UPL will eventually file a counterclaim of patent invalidity is both speculative and irrelevant because courts view *compulsory* counterclaims differently. *See Pub. Works Supply Co. v. Soleno, Inc.*, 2008 WL 11389371, at *4 (D. Mass. May 22, 2008) ("Accordingly, the counterclaims are compulsory thereby supporting the conclusion that the depositions should take place at Soleno's principal place of business."); *Invensas Corp. v. Renesas Elecs. Corp.*, 2012 WL 2501106, at *2 (D. Del. June 27, 2012) (noting that defendant whose counterclaims were compulsory does not stand in the same position as a plaintiff who selected the forum). AgroFresh also contends that UPL is effectively a counterclaimant because it has served invalidity contentions and filed a petition for *inter partes* review of the '216 patent. D.I. 259 at 4. But AgroFresh offers no authority on why defending itself in this lawsuit or participating in a limited proceeding before an unrelated administrative body should render UPL's witnesses subject to deposition in Delaware. As one court recently noted, an argument that a defendant should be compelled to appear here for deposition "due to their extensive contacts with the United States and use of the U.S. legal system" should "not [be] well taken." *See Shinde*, 2015 WL 12778697 at *3.

When balanced together, the above factors establish that the general rule on deposition locations should not be disregarded here. Just as many other courts have done in similar circumstances, this Court should require that UPL's witnesses be deposed at its principal place of business in Mumbai (whether in person or by video). *See Xpoint Technologies v. Intel Corp.*, D.I. 473 in C.A. No. 09-26-SLR (D. Del. Aug. 11, 2010) (Bechtle, S.M.) (Tr. at 21:10-22:5) (Ex. 5) (ordering depositions be taken in Taiwan); *Tessera, Inc. v. Sony Electronics, Inc.*, D.I. 131 in C.A. No. 10–838–RMB–KMW (D. Del. Mar. 20, 2012) (Ex 6) (ordering depositions to occur at Japanese-based defendants' principal place of business "per the general rule"); *Shinde v. Nithyananda Found.*, 2015 WL 12778697, at *5 (C.D. Cal. May 21, 2015) (directing plaintiffs to "depose defendants in India, either in person or by video"). UPL therefore requests that AgroFresh's motion to compel UPL to bring its witnesses to the United States be denied.

November 2, 2018
Page 5

                                               Respectfully,

                                               */s/ Frederick L. Cottrell, III*

                                             Frederick L. Cottrell, III (#2555)

cc: Counsel of Record (via CM/ECF)


## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2018, a true and correct copy of the foregoing document was served upon the following attorneys of record by electronic mail:

Chad S.C. Stover (No. 4919)
BARNES & THORNBURG LLP
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 300-3474
Facsimile: (302) 300-3456
cstover@btlaw.com

Robert D. MacGill
Deborah Pollack-Milgate
Joseph T. Wendt
Jessica M. Lindemann
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
rmacgill@btlaw.com
dmilgate@btlaw.com
jwendt@btlaw.com
jessica.Lindemann@btlaw.com

*/s/ Nicole K. Pedi*
Nicole K. Pedi (#6236)
Pedi@rlf.com