## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AGROFRESH INC.,                                    )
                                                   )
    Plaintiff,                   )
                                                   )
    v.                           )       Civil Action No. 16-662-MN-SRF
                                                   )
ESSENTIV LLC, DECCO U.S. POST-HARVEST, )            **UNDER SEAL**
INC., and CEREXAGRI, INC. d/b/a DECCO  )
POST-HARVEST,                                      )
                                                   )
    Defendants.                  )
                                                   )

## MEMORANDUM ORDER

At Wilmington this **11th** day of **December, 2018**, the court having considered the

parties' letter submissions and the arguments presented during the May 15, 2018 discovery

dispute hearing, as well as the documents produced for *in camera* review (D.I. 180; D.I. 181;

D.I. 182; D.I. 183; 5/15/18 Tr.), IT IS HEREBY ORDERED THAT plaintiff AgroFresh, Inc.'s

("AgroFresh") motion to compel the production of certain categories of documents identified in

the privilege log of defendants Decco U.S. Post-Harvest, Inc., UPL Ltd., Cerexagri, Inc., and

Essentiv LLC (collectively, "Decco") is granted.

**1.**     **Background.** AgroFresh researches, develops, and sells technology for pre- and

post-harvest freshness preservation of fruits, vegetables, and other produce using a synthetic,

volatile gas called 1-methylcyclopropene ("1-MCP"). (D.I. 97 at 2) Dr. Nazir Mir ("Dr. Mir") is

an inventor and expert in the field of post-harvest technology who has developed "1-MCP related

technologies," including an invention that combines 1-MCP with an engineered film called a

Modified Atmospheric Package ("MAP"). (*Id.* at 3) MirTech, Inc. ("MirTech") is a company

solely owned by Dr. Mir. (*Id.* at 2)

2.    In 2009, AgroFresh and Dr. Mir began negotiations to develop technology combining AgroFresh's 1-MCP expertise and Mir's MAP technology. (*Id.*) On January 1, 2010, a Consulting Services Agreement ("CSA") between Dr. Mir and AgroFresh took effect, providing that each party was to own

> any and all inventions conceived or reduced to practice in the course of Services made solely by that Party. The Parties shall jointly own, as of the date of their conception, any and all inventions conceived or reduced to practice jointly by the Parties in the course of Services. [Nevertheless,] Consultant must disclose those inventions promptly to [Dow's] Representative in writing.

(*Id.* at 4)

3.    In May 2011, AgroFresh and Dr. Mir signed a Commercial Agreement and a Consulting Agreement (together, the "Agreements"), with a retroactive effective date of January 1, 2011. (*Id.* at 5) Pursuant to the Agreements, Dr. Mir agreed to provide services related to combining his MAP technology and 1-MCP, MirTech agreed to assign its proprietary interests and rights in any patent application or issued patent related to Dr. Mir's products. (*Id.*) The Agreements obligated MirTech to "promptly inform AF of any and all inventions, discoveries, improvements or other modifications which are related to the Products . . . whether patentable or not." (*Id.*)

4.    In July 2013, the parties executed an extension of the Consulting Agreement through December 31, 2014. (*Id.* at 8) In the fall of 2013, Dr. Mir began working on technology encapsulating 1-MCP in β-cyclodextrin. (*Id.*) Dr. Mir sought a separate agreement to cover his work on this project. (*Id.*) At a meeting on December 12, 2013, Dr. Mir made a presentation regarding the modified β-cyclodextrin polymer, but did not represent whether the 1-MCP was encapsulated or adsorbed because Dr. Mir did not discover the use of a metal-organic framework ("MOF") to stabilize 1-MCP until the period between May 2014 and May 2015. (*Id.* at 8-9)

2

AgroFresh was not interested in commercializing Dr. Mir's β-cyclodextrin and 1-MCP analog concepts, but AgroFresh and Dr. Mir continued their work on the RipeLock trials and commercialization. (*Id.* at 9-10)

5. In July 2014, the parties executed a second extension of the Consulting Agreement to December 31, 2015. (*Id.* at 10) Dr. Mir independently pursued various patent applications, and two patents issued to him in August and September 2014 on variants of the hydrocolloid systems presented during the December 2013 meeting. (*Id.*) Dr. Mir informed AgroFresh of his work, but AgroFresh did not express an interest in or claim ownership of this work. (*Id.*)

6. On October 20, 2014, Dr. Mir received a confidential disclosure agreement from Decco regarding his intellectual property. (*Id.* at 11) On October 29, 2014, Dr. Mir sent an email to AgroFresh informing AgroFresh that other parties had expressed an interest in acquiring his patents. (*Id.* at 10)

7. In November 2014, Dr. Mir filed a provisional application covering his MOF technology. (*Id.* at 9 n.10) Dr. Mir's MOF provisional patent application did not claim priority to the earlier patent application for the β-cyclodextrin ideas presented during the December 2013 meeting. (*Id.*)

8. On November 30, 2014, Dr. Mir executed a letter of intent ("Letter of Intent") to form a strategic alliance with Decco for the commercialization of the technologies he developed as embodied by the provisional patent application related to United States Patent No. 9,394,216 ("the '216 patent"). (D.I. 181, Ex. 6; D.I. 97 at 11) In Phase I of the Letter of Intent, MirTech assumed responsibility for "prosecut[ing] MirTech patents and patent applications," and Decco was responsible for "obtain[ing] written legal opinions for the 'Right to Practice' of MirTech

3

patents and patent applications." (D.I. 181, Ex. 6 at 1) In Phase II, MirTech promised to "continue to support key project objectives" regarding research, training, and development, while Decco agreed to "coordinate the conduct of required registration studies, file for global regulatory approvals . . . and conduct pre-commercial activities including branding, marketing, communications and sales." (*Id.*) In Phase III, Dr. Mir and MirTech (together, the "MirTech defendants") agreed to form a joint venture, MirTech agreed to grant an exclusive license to the joint venture to use the patented technology, and Decco assumed responsibility "for all sales related activities." (*Id.* at 2)

9.      The Letter of Intent included a confidentiality provision regarding the MOF provisional application and associated technology. (D.I. 97 at 11) Pursuant to the Letter of Intent, Decco agreed to pay Dr. Mir a $250,000 advance on future royalties from the sale of products using the MOF technology, and Dr. Mir agreed to provide a future joint venture the exclusive rights to practice the MOF technology embodied in the '216 patent and the technology shared with AgroFresh in December 2013. (*Id.*)

10.      By April 2015, Dr. Mir finalized the MOF technology that ultimately became the '216 patent, and developed the product Decco registered as TruPick™. (D.I. 97 at 11) On June 1, 2015, Dr. Mir and Decco memorialized the completion of the Phase I activities contemplated by the Letter of Intent. (*Id.* at 11-12) Dr. Mir did not disclose to AgroFresh the MOF technology or his business relationship with Decco during this time. (*Id.* at 12)

11.      In July 2015, a second AgroFresh patent issued that was invented by Dr. Mir and disclosed "an unexpected synergistic effect of a cyclopropene compound and a modified atmosphere package to extend shelf life and/or storage for avocados." (*Id.* at 13) Dr. Mir requested an extension to the Consulting Agreement with AgroFresh to guarantee his salary from

4

AgroFresh. (*Id.*) At the same time, Decco characterized Dr. Mir as "transitioning" from AgroFresh to Decco. (*Id.*)

**12.** In October 2015, Dr. Mir and Decco finalized their term sheet for Decco's use of the '216 patent technology. (*Id.*) On October 7, 2015, Dr. Mir and Decco submitted a completed registration packet to the EPA for TruPick™. (*Id.* at 14) Dr. Mir negotiated a third extension of the Consulting Agreement with AgroFresh at this time, which encompassed "[p]roducts developed using either MAP or MAP + 1-MCP technologies," to the exclusion of sales and marketing of 1-MCP alone. (*Id.*)

**13.** In May 2016, the application that became the '216 patent published. (*Id.* at 16) On June 27, 2016, the EPA registered TruPick™. (*Id.*) The following day, Dr. Mir disclosed the '216 patent technology to AgroFresh for the first time and asked whether AgroFresh was interested in the technology. (*Id.* at 16-17) On June 30, 2016, Dr. Mir and MirTech entered into a consulting agreement with Essentiv LLC, the joint venture formed by MirTech and Decco. (*Id.* at 17) On July 11, 2016, Decco and Essentiv announced the EPA registration of TruPick™ using the MOF technology developed by Dr. Mir. (*Id.*)

**14.** **Procedural history.** On August 3, 2016, AgroFresh filed a complaint against the MirTech defendants and Decco (collectively, "defendants"). (D.I. 2 at ¶ 1) The complaint arises out of a failed business relationship between AgroFresh and MirTech, and includes claims of ownership of certain intellectual property, breach of contract, tortious conduct, and patent infringement.

**15.** In October 2016, the parties jointly moved to bifurcate Counts I and IV of the complaint to simplify and clarify the disputed issues in the case. (D.I. 18) The court held a bench trial in March 2017 on the bifurcated counts, and issued an opinion outlining the findings

5

of fact and conclusions of law on June 30, 2017. (D.I. 97) Specifically, the court concluded that all improvements to the technology were automatically assigned to AgroFresh, including the technology covered by the '216 patent. Moreover, the court determined that Dr. Mir fraudulently induced AgroFresh into executing an extension to the Agreements by not disclosing either the '216 patent technology or his business relationship with Decco. (*Id.* at 33-34)

**16.** On August 18, 2017, AgroFresh filed its first amended complaint against defendants, which contained additional claims against the MirTech defendants including breach of contract, fraud, and willful patent infringement. (D.I. 106)

**17.** On September 15, 2017, AgroFresh executed a settlement agreement with the MirTech defendants, pursuant to which the MirTech defendants admitted the allegations in the first amended complaint and agreed to entry of judgment against them on all counts of the original complaint and the first amended complaint. (D.I. 115 at ¶ 3; D.I. 180, Ex. C) The parties filed a joint motion for entry of a consent judgment in accordance with the settlement agreement. (D.I. 112) On September 18, 2017, the court entered a final consent judgment in favor of AgroFresh and against the MirTech defendants. (D.I. 115)

**18.** The court held a discovery dispute hearing on May 15, 2018 to address, among other issues, the applicability of the common interest privilege to documents listed on the privilege log. The dispute regarding the common interest privilege, as initially raised, extended to four categories of documents: (1) communications between Mir and his counsel with copies to Decco employees and/or attorneys, (2) communications between Mir and Decco employees involving no attorneys, (3) communications between Decco employees and Decco attorneys on which Mir is copied, and (4) documents related to the negotiations between Decco and MirTech concerning their joint venture which eventually resulted in the formation of Essentiv LLC. (D.I.

6

180 at 2-3) Decco has agreed to produce documents in the fourth category. (*Id.* at 2 n.1) The MirTech defendants have waived any privilege as to all categories of documents, but have not produced the documents due to Decco's assertion of the privilege.[1] (*Id.* at 2)

**19.     Legal standard.** "The common interest doctrine is an exception to the general rule that the attorney-client privilege is waived following disclosure of privileged materials to a third party." *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010) (citing *Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1047 (D. Del. 1985)). The party asserting the doctrine bears the burden of showing that "(1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *MobileMedia Ideas LLC v. Apple Inc.*, 890 F. Supp. 2d 508, 515 (D. Del. 2012) (internal quotation marks and citations omitted). Although the common interests between the litigant and the third party cannot be solely commercial, "an overlap of commercial and legal interests . . . does not negate the effect of the legal interests in establishing a community of interest." *Id.* "The parties do not have to be involved in actual litigation or an ongoing lawsuit for their interests to be legal; anticipated litigation is sufficient." *INVISTA N. Am. S.à.r.l. v. M&G USA Corp.*, C.A. No. 11-1007-LPS-CJB, 2013 WL 12171721, at *8 (D. Del. June 25, 2013) (internal citations and quotation marks omitted).

**20.     Analysis.** In accordance with the first factor under the common interest doctrine, Decco has met its burden of establishing the existence of a shared legal interest with the MirTech defendants following the consummation of the LLC Agreement on June 30, 2016. The Federal Circuit has recognized that "[a] community of legal interests may arise between parties jointly

---

[1] The law is well-established that all members of the common interest community must consent to the waiver before the waiver is effective. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 263 F.R.D. 142, 146 (D. Del. 2009).

7

developing patents; they have a common legal interest in developing the patents to obtain greatest protection and in exploiting the patents." *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996) (quoting *Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 WL 12919, at *1 (N.D. Ill. June 19, 1987) (internal quotation marks omitted)). From the date the parties enter into an agreement awarding an exclusive license, a common legal interest in maintaining strong and enforceable patents exists between licensors and exclusive licensees. *See INVISTA N. Am. S.á.r.l. v. M&G USA Corp.*, C.A. No. 11-1007-SLR-CJB, 2013 WL 12171721, at *7-8 (D. Del. June 25, 2013) (finding that the parties shared "a common legal interest in maintaining strong and enforceable patents-in-suit—an interest that began from at least the time that the parties entered into the asset sale agreement and that continues through to the present day."). The LLC Agreement at issue in the present case provides that MirTech shall award an exclusive license in the 1-MCP technology to the joint venture formed by MirTech and Decco. (D.I. 181, Ex. 8 at ¶ 4.2(a)) Consequently, the common interest doctrine applies to communications dated on or after the June 30, 2016 execution of the LLC Agreement.

21.     Although AgroFresh alleges that Decco's role in developing the patents was purely commercial, the Federal Circuit and courts within this district have established that "licensors and exclusive licensees of patents share a common, identical legal interest sufficient to invoke the [common interest] doctrine." *See INVISTA N. Am. S.á.r.l. v. M&G USA Corp.*, C.A. No. 11-1007-SLR-CJB, 2013 WL 12171721, at *8 (D. Del. June 25, 2013) (citing *In re Regents*, 101 F.3d at 1390). The exclusive license agreement in the present case therefore creates a common legal interest between Decco and MirTech, even if Decco's responsibilities under the LLC Agreement also include commercial activities. *See In re Regents*, 101 F.3d at 1390 (concluding that "the legal interest between Lilly and UC was substantially identical because of

the potentially and ultimately exclusive nature of the Lilly-UC license agreement," even though

Lilly was "an industrial enterprise seeking valid and enforceable patents to support commercial

activity.") (citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974)

("The fact that there may be an overlap of a commercial and a legal interest for a third party does

not negate the effect of the legal interest in establishing a community of interest.")). AgroFresh

also challenges whether the interests of a licensor and a licensee are truly identical, because the

licensee is free from the obligation to pay royalties on sales of the product if the patent is

invalidated. (5/15/18 Tr. at 28:1-18) Nonetheless, for purposes of the common interest doctrine,

licensors and exclusive licensees of patent rights are understood to share an identical legal

interest in obtaining strong and enforceable patents. *INVISTA N. Am.*, 2013 WL 12171721, at *8

(citing *In re Regents*, 101 F.3d at 1390).

    **22.**    AgroFresh also argues that the exclusive license agreement in this matter cannot

form the basis for application of the common interest privilege to Decco because the joint

venture, and not Decco, is the exclusive licensee. (5/15/18 Tr. at 18:6-22) Neither party cites

authority discussing the proper application of the common interest doctrine where, as here, the

party seeking application of the common interest doctrine is not itself the exclusive licensee, but

instead holds a 50% interest in the joint venture holding the exclusive license to the patented

technology. However, Decco's formation of the joint venture with MirTech itself establishes a

common legal interest between MirTech and Decco. *See Cooey v. Strickland*, 269 F.R.D. 643,

652 (S.D. Ohio 2010) (stating that, "so long as the parties clearly and specifically agree to the

joint venture in some manner, the [common interest] doctrine will apply."). Moreover, Decco

maintains an interest in the exclusive license through its 50% ownership stake in the joint

venture. Therefore, Decco has met its burden to show the existence of a common legal interest

9

between MirTech and Decco sufficient to warrant application of the common interest doctrine to
the challenged communications from the date of the LLC Agreement to the present.

    **23.**    The common interest doctrine does not apply, and the privilege is waived, with
respect to communications made before the execution of the LLC Agreement on June 30, 2016.
*See Cooey*, 269 F.R.D. at 652 ("Communications made before an agreement to proceed jointly
are not privileged."). The Letter of Intent does not establish a common legal interest between
Decco and MirTech because it represents the parties' tentative negotiations prior to the
consummation of a binding agreement nearly two years later. (5/15/18 Tr. at 11:12-12:3, 19:7-
20:13; D.I. 183 at 3) Specifically, the Letter of Intent "outlin[es] the mutual intent of Decco and
MirTech Inc. . . . to collaborate" with respect to MirTech's 1-MCP technology, but repeatedly
emphasizes that negotiations regarding the agreement are ongoing. (D.I. 181, Ex. 6 at DECCO-
00000362-64) (pursuant to ¶ 4(a) of the November 30, 2014 Letter of Intent, "Decco and
MirTech agree[d] to negotiate the commercial terms for NewCo" after April 1, 2015). Under
similar circumstances, courts have declined to apply the common interest privilege to
communications made prior to the consummation of a formal agreement, concluding that
application of the common interest doctrine "becomes questionable . . . when, as here, the two
parties are *negotiating* a joint venture. They are still competitors, perhaps more so than partners,
and do not share an interest sufficiently common to extend the attorney-client privilege to their
discussions." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 428-29 (N.D. Ill. 2006) (citing
*SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 513 (D. Conn. 1976)); *see also INVISTA*, 2013 WL
12171721, at *8 (holding that the parties had identical interests in strong patent rights "[f]rom at
least the date the parties entered into" an intellectual property license agreement); *In re Regents*,
101 F.3d at 1390 (concluding that the common interest doctrine applied where "Lilly was more

10

than a non-exclusive licensee, and shared the interest that UC would obtain valid and enforceable patents."). Consequently, communications predating the execution of the LLC Agreement do not fall within the scope of the common interest doctrine, and are therefore not protected by the attorney-client privilege.

**24.** The court must next determine whether the crime-fraud exception to the common interest doctrine applies to communications dated June 30, 2016 or thereafter. Communications between an attorney and a client, which are otherwise privileged, are not protected if they are made in furtherance of a crime or fraud. *See Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 482 (D. Del. 2012). The party seeking discovery of privileged communications or documents must prove the crime-fraud exception applies by showing: (1) a prima facie case of criminal or fraudulent conduct, and (2) the communications were made in furtherance of the crime or fraud. *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 155 (D. Del. 1977). Communications made after the fraud are protected and are not subject to the crime-fraud exception. *Id.*

**25.** AgroFresh contends that the crime-fraud exception applies to the challenged communications in the instant case because Judge Robinson's June 30, 2017 opinion confirms the existence of fraudulent activity, and the consent judgment entered on September 18, 2017 establishes Dr. Mir's fraud and conspiracy with Decco. (5/15/18 Tr. at 28:19-32:12) However, the record before the court does not adequately support the application of the crime-fraud exception to Decco's conduct. In the court's June 30, 2017 opinion, Judge Robinson concluded that Dr. Mir misrepresented his intentions regarding rights to the technology while simultaneously negotiating with AgroFresh and Decco regarding the same technology. (D.I. 97 at 30-33) The court reached no express conclusions regarding Decco's knowledge or intent

11

regarding the falsity of Dr. Mir's representations.[2] (*Id.*) The court's determination that AgroFresh was the rightful owner of the patented technology cannot properly be extended to reach a conclusion that Decco was aware of AgroFresh's ownership rights during its own negotiations with MirTech. (*Id.* at 18-30) The Letter of Intent, Term Sheet, and LLC Agreement identify Dr. Mir as the owner and inventor of the patented technology having the right to grant an exclusive license. (D.I. 181, Exs. 6-8; 5/15/18 Tr. at 52:6-54:9) The court concludes that the crime-fraud exception to the attorney-client privilege does not apply to Decco because neither the June 30, 2017 opinion, nor the September 18, 2017 final consent judgment adequately supports AgroFresh's position that Decco committed a fraud.

**26.** Having established the existence of a common legal interest between Decco and MirTech beginning as of June 30, 2016, the court next evaluates each of the three categories of documents on an *in camera* basis to ascertain whether each communication was made to further the effort. The court concludes that the common interest doctrine does not apply to any of the documents sampled in Category 1, regarding communications between Dr. Mir and his counsel, with copies to Decco employees and/or attorneys. The documents range from the time period between May 20, 2015 to June 21, 2016 and, therefore, do not fall within the applicable time period when Decco and MirTech shared a common legal interest.

---

[2] AgroFresh calls particular attention to the portion of the June 30, 2017 opinion describing Dr. Mir's failure to disclose the nature of his activities with Decco. There, the court acknowledged that "[t]hese facts were material, as Decco itself recognized that AgroFresh would 'certainly' cut Dr. Mir off as a consultant if it learned of his activities." (D.I. 97 at 31-32) This statement ultimately remains focused on Dr. Mir's conduct, and does not amount to a finding that Decco had the knowledge or intent to engage in fraudulent activities with Dr. Mir.

**Category 1**

*Communications between Dr. Mir and counsel, with copies to Decco employees/attorneys*

| Log Entry | Application of Common Interest Privilege |
|-----------|------------------------------------------|
| 319 | Not privileged.  Document predates applicable time period. |
| 505 | Not privileged.  Document predates applicable time period. |
| 566 | Not privileged.  Document predates applicable time period. |
| 569 | Not privileged.  Document predates applicable time period. |
| 575 | Not privileged.  Document predates applicable time period. |
| 590 | Not privileged.  Document predates applicable time period. |
| 593 | Not privileged.  Document predates applicable time period. |
| 659 | Not privileged.  Document predates applicable time period. |
| 761 | Not privileged.  Document predates applicable time period. |
| 851 | Not privileged.  Document predates applicable time period. |
| 946 | Not privileged.  Document predates applicable time period. |
| 986 | Not privileged.  Document predates applicable time period. |
| 987 | Not privileged.  Document predates applicable time period. |
| 1096 | Not privileged.  Document predates applicable time period. |
| 1103 | Not privileged.  Document predates applicable time period. |
| 1378 | Not privileged.  Document predates applicable time period. |
| 1414 | Not privileged.  Document predates applicable time period. |
| 1445 | Not privileged.  Document predates applicable time period. |
| 1446 | Not privileged.  Document predates applicable time period. |
| 1957 | Not privileged.  Document predates applicable time period. |

27.    The common interest doctrine does not apply to any of the documents in Category 2, which encompasses communications between Dr. Mir and Decco employees involving no attorneys.  As previously discussed with respect to the Category 1 documents, the Category 2 documents all relate to communications taking place prior to the execution of the LLC Agreement on June 30, 2016.  Moreover, many of the documents in Category 2 are not directed to or from an attorney, nor is an attorney copied on them.  "[C]ommunications made between parties themselves, when no attorneys are present, may not be privileged, as some courts find that these communications are not likely tied to the parties' common legal interest."  *Cooey v. Strickland*, 269 F.R.D. 643, 653 (S.D. Ohio 2010) (citing *United States v. Gotti*, 771 F. Supp. 535, 545 (E.D.N.Y. 1991)).

13

**Category 2**

*Communications between Dr. Mir and Decco employees involving no attorneys*

| Log Entry | Application of Common Interest Privilege |
|-----------|-------------------------------------------|
| 107 | Not privileged. Document predates applicable time period. Privilege is waived by disclosure to a third party.[3] |
| 135 | Not privileged. Document predates applicable time period. Privilege is waived by disclosure to a third party.[4] |
| 136 | Not privileged. Document predates applicable time period. Privilege is waived by disclosure to a third party.[5] |
| 137 | Not privileged. Document predates applicable time period. Privilege is waived by disclosure to a third party.[6] |
| 138 | Not privileged. Document predates applicable time period. Privilege is waived by disclosure to a third party.[7] |
| 139 | Not privileged. Document predates applicable time period. Privilege is waived by disclosure to a third party.[8] |
| 162 | Not privileged. Document predates applicable time period. Privilege is waived by disclosure to a third party.[9] |
| 169 | Not privileged. Document predates applicable time period. Privilege is waived by disclosure to a third party.[10] |
| 174 | Not privileged. Document predates applicable time period. No attorney is copied on the communication. |
| 258 | Not privileged. Document predates applicable time period. No attorney is copied on the communication. |
| 263 | Not privileged. Document predates applicable time period. No attorney is copied on the communication.[11] |

[3] This document is an email between Dr. Mir and Lynn Oakes, two non-attorneys, which forwards communications originally sent to Mr. Oakes by Decco's attorneys. This constitutes a waiver of the attorney-client privilege by Mr. Oakes. *See Kickflip, Inc. v. Facebook, Inc.*, C.A. No. 12-1369-LPS, 2015 WL 13446263, at *2 (D. Del. Jan. 21, 2015) ("[I]t is well-settled that when a client voluntarily discloses privileged communications to a third party, the [attorney-client] privilege is waived." (quoting *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991))).

[4] *See* footnote 3, *supra.*

[5] *See* footnote 3, *supra.*

[6] *See* footnote 3, *supra.*

[7] *See* footnote 3, *supra.*

[8] *See* footnote 3, *supra.*

[9] *See* footnote 3, *supra.*

[10] *See* footnote 3, *supra.*

[11] This document is an email between Dr. Mir and Lynn Oakes, two non-attorneys. It appears that the content of the message itself is a verbatim communication from Gillian Bunker, an attorney, to Mr. Oakes, that was then copy/pasted by Mr. Oakes into an email message to Dr. Mir. This constitutes a waiver of the attorney-client privilege by Mr. Oakes. *See Kickflip, Inc. v. Facebook, Inc.*, C.A. No. 12-1369-LPS, 2015 WL 13446263, at *2 (D. Del. Jan. 21, 2015) ("[I]t

| 292 | Not privileged. Document predates applicable time period. No attorney is copied on the communication.[12] |
| 318 | Not privileged. Document predates applicable time period. No attorney is copied on the communication.[13] |
| 377 | Not privileged. Document predates applicable time period. No attorney is copied on the communication.[14] |
| 1137 | Not privileged. Document predates applicable time period. No attorney is copied on the communication.[15] |

**28.** The common interest doctrine does not apply to any of the documents in Category

3, which encompasses communications between Decco employees and Decco attorneys on

which Dr. Mir is copied. As previously discussed with respect to the documents in Categories 1

and 2, the Category 3 documents all relate to communications taking place prior to the execution

of the LLC Agreement on June 30, 2016.

**Category 3**
*Communications between Decco employees and Decco attorneys on which Mir is copied*

| Log Entry | Application of Common Interest Privilege |
| --- | --- |
| 93 | Not privileged. Document predates applicable time period. |
| 94 | Not privileged. Document predates applicable time period. |
| 95 | Not privileged. Document predates applicable time period. |
| 96 | Not privileged. Document predates applicable time period. |
| 100 | Not privileged. Document predates applicable time period. |
| 108 | Not privileged. Document predates applicable time period. |
| 110 | Not privileged. Document predates applicable time period. |
| 175 | Not privileged. Document predates applicable time period. |
| 180 | Not privileged. Document predates applicable time period. |
| 181 | Not privileged. Document predates applicable time period. |
| 182 | Not privileged. Document predates applicable time period. |
| 183 | Not privileged. Document predates applicable time period. |
| 184 | Not privileged. Document predates applicable time period. |
| 1912 | Not privileged. Document predates applicable time period. |

is well-settled that when a client voluntarily discloses privileged communications to a third party, the [attorney-client] privilege is waived." (quoting *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991))).

[12] *See* footnote 11, *supra.*

[13] *See* footnote 11, *supra.*

[14] *See* footnote 11, *supra.*

[15] *See* footnote 11, *supra.*

| 2109 | Not privileged. Document predates applicable time period. |
|------|-----------------------------------------------------------|

**29.    Conclusion.** In view of the foregoing analysis, AgroFresh's motion to compel the production of certain categories of documents identified in Decco's privilege log is granted. The production of documents shall be stayed until the expiration of the objections period under Rule 72(a).

**30.** Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties should jointly submit a proposed redacted version by no later than **December 18, 2018**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The court will subsequently issue a publicly available version of its Memorandum Order.

**31.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

**32.**    The parties are directed to the court's Standing Order For Objections Filed Under

Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge

17