IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AGROFRESH INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-662-MN-SRF |
| ) | |
| ESSENTIV LLC, DECCO U.S. POST-HARVEST, ) | |
| INC., and CEREXAGRI, INC. d/b/a DECCO ) | |
| POST-HARVEST, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

### I.   INTRODUCTION

Presently before the court in this patent infringement action is the motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by defendants UPL, Ltd., Decco U.S. Post Harvest, Inc., Cerexagri, Inc., and Essentiv, LLC, (collectively, "Decco"). (D.I. 131)[1] For the following reasons, I recommend that the court grant-in-part Decco's motion to dismiss.

### II.   BACKGROUND

#### A.   Parties

AgroFresh is an Illinois corporation having a principal place of business in Philadelphia, Pennsylvania. (D.I. 106 at ¶ 9) AgroFresh researches, develops, and sells technology for pre- and post-harvest freshness preservation of fruits, vegetables, and other produce using a synthetic, volatile gas called 1-methylcyclopropene ("1-MCP"). (*Id.* at ¶ 2) AgroFresh owns patents on

---

[1] The briefing associated with the instant motion to dismiss is found at D.I. 132, D.I. 139, and D.I. 140.

technologies used by growers to control the ripening of fruits and vegetables to reduce waste and improve product quality. (*Id.*) These patents include the asserted U.S. Patent Nos. 6,017,849 ("the '849 patent") and 6,313,068 ("the '068 patent"). (*Id.* at ¶ 22) AgroFresh's products include SmartFresh, Harvista, and RipeLock. (*Id.* at ¶ 2)

Dr. Mir is an inventor and expert in the field of post-harvest technology who has developed technologies relating to 1-methylcyclopropene ("1-MCP"), including an invention that combines 1-MCP with an engineered film known as a modified atmospheric package ("MAP"). (*Id.* at ¶ 34) MirTech is a New Jersey corporation maintaining its principal place of business in Somerset, New Jersey, which is solely owned by Dr. Mir. (*Id.* at ¶¶ 10-11)

Decco U.S. Post-Harvest is a Delaware corporation with a principal place of business in California. (*Id.* at ¶ 12) Cerexagri d/b/a Decco Post-Harvest is a Pennsylvania corporation with a principal place of business in Pennsylvania. (*Id.* at ¶ 13) Essentiv LLC is a Delaware limited liability company formed in accordance with a joint venture of MirTech and Decco. (*Id.* at ¶ 14) UPL is incorporated in India, with its principal place of business in Mumbai, India. (*Id.* at ¶ 15)

**B. Facts**

Between 2010 and 2016, AgroFresh and Dr. Mir operated under a Consulting Agreement and a Commercial Agreement (together, the "Agreements") to develop technology combining AgroFresh's 1-MCP expertise and Dr. Mir's modified atmosphere package ("MAP") technology. (*Id.* at ¶¶ 35-44) Pursuant to the Agreements, Dr. Mir agreed to provide services related to combining his MAP technology and 1-MCP, MirTech agreed to assign its proprietary interests and rights in any patent application or issued patent related to Dr. Mir's products. (*Id.*) The Agreements obligated the MirTech defendants not to compete with AgroFresh, and they contained confidentiality and automatic assignment clauses. (*Id.* at ¶ 40)

2

In 2013, the MirTech defendants began working on other technology related to encapsulating 1-MCP, which they did not disclose to AgroFresh. (*Id.* at ¶ 47) Instead, Dr. Mir independently pursued a provisional patent application on the new technology and signed a letter of intent ("Letter of Intent") with Decco in 2014 to develop and market the new technology. (*Id.* at ¶¶ 48, 54) In 2015 and 2016, Decco and the MirTech defendants prosecuted the application resulting in U.S. Patent No. 9,394,216 ("the '216 patent"), ran trials, and developed the product ultimately registered as TruPick™. (*Id.* at ¶¶ 56, 61, 76)

In July 2016, Decco and the MirTech defendants issued a press release announcing the EPA registration of TruPick. (*Id.* at ¶ 76) The press release was AgroFresh's first notice of the research and development efforts between Decco and the MirTech defendants. (*Id.* at ¶ 78) AgroFresh subsequently sent a letter to the MirTech defendants asking them to cure their breaches of the Agreements and indicating its intention to terminate the Agreements absent a cure of the breaches. (*Id.* at ¶ 80)

### C. Procedural History

On August 3, 2016, AgroFresh filed its original complaint. (D.I. 2) The complaint included claims of ownership of certain intellectual property, breach of contract, tortious conduct, and patent infringement. More specifically, Count I of the complaint revolves around the agreements between AgroFresh and MirTech, and whether MirTech was obligated to disclose and automatically assign to AgroFresh the rights to U.S. Patent No. 9,394,216 ("the '216 patent"), which was developed and filed by MirTech. Count IV of the complaint includes allegations that Mir and MirTech fraudulently induced AgroFresh to sign an extension to the parties' agreements in October 2015.

3

In October 2016, the parties filed a joint motion to bifurcate Counts I and IV of the complaint on the grounds that prioritizing the claim of ownership of the '216 patent and the fraudulent inducement claim would simplify and clarify the disputed issues in the case, likely facilitate resolution, and result in economies for the court and the parties. (D.I. 18) The court granted the motion, and held a bench trial on Counts I and IV from March 20 to March 22, 2017. In its Findings of Fact and Conclusions of Law, entered on June 30, 2017, the court entered judgment in favor of AgroFresh and against Mir and MirTech on Counts I and IV. (D.I. 97 at 33-34) Specifically, the court concluded that the '216 patent was an improvement related to the product which was automatically assigned to AgroFresh, and Mir fraudulently induced AgroFresh into executing an extension to various agreements by not disclosing the '216 patent disclosure or Mir's business relationship with Decco. (*Id.*)

Following the court's decision, AgroFresh filed its first amended complaint ("FAC") against the same original parties and added UPL Ltd. as a defendant. (D.I. 106) The FAC added causes of action under the Trade Secrets Act, the Pennsylvania Trade Secrets Act, and related tort theories. (*Id.* at ¶¶ 224-269) On September 15, 2017, MirTech, Mir, and AgroFresh executed a private settlement agreement (the "Settlement Agreement"). (D.I. 178, Ex. A) On September 18, 2017, Mir and MirTech entered into a final consent judgment with AgroFresh, pursuant to which Mir and MirTech "consent[ed] to a judgment establishing liability" for all counts alleged against them and "agree[d] to remit payment . . . to compensate AgroFresh," including $340,000 in damages. (D.I. 115) On September 29, 2017, a scheduling order was entered on the remaining counts of the FAC. (D.I. 122)

4

## III.  LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Connelly v. Lane Const. Corp.*, 809 F. 3d 780, 790-91 (3d Cir. 2016).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); s*ee also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56. While the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly*, 809 F.3d at 786 (internal quotations and citations omitted).

When determining whether dismissal is appropriate, the court must take three steps.[2] *Id.* at 787; *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and

---

[2] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

5

reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; s*ee also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. ANALYSIS

### A. Claims against Mir and MirTech (Counts II-IV, VI, and VIII)

In support of the motion to dismiss, Decco contends that AgroFresh's claims for breach of contract, fraud, fraudulent inducement, constructive fraud, and breach of the duty of loyalty should be dismissed because they were only asserted against Mir and MirTech, and they fail to state a claim against Decco. (D.I. 132 at 4) In response, AgroFresh does not dispute that the causes of action were raised only against Mir and MirTech, and challenges Decco's standing to seek dismissal on that basis. (D.I. 139 at 4) According to AgroFresh, the entry of a final judgment on the counts indicates that the counts meet the 12(b)(6) standard and have been conclusively established. (*Id.*)

I recommend that the court deny Decco's motion to dismiss as moot with respect to Counts II-IV, VI, and VIII. The parties agree that these counts were brought only against Mir and MirTech, and do not state a claim against Decco. Consequently, Decco has no obligation to defend against these causes of action. The parties also agree that the court entered final

judgment on these counts in AgroFresh's favor.[3] (D.I. 97) Decco cites no authority in support of the proposition that dismissal under Rule 12(b)(6) is appropriate for causes of action that are the subject of a final judgment.

The cases relied upon by Decco do not present similar circumstances in which a final consent judgment is entered on claims against certain defendants after the filing of an amended complaint, but the claims against the remaining defendants are left to be adjudicated. Instead, the cases cited by Decco present circumstances more traditionally associated with a Rule 12(b)(6) failure to state a claim. In *Duffy v. Kent County Levy Court*, the court dismissed causes of action against one of the defendants after concluding that the ADA provides recovery only against a public entity. C.A. No. 09-198-SLR, 2010 WL 3909089, at *3 (D. Del. Sept. 27, 2010). The decision did not address the status of a complaint in the Rule 12(b)(6) context after the entry of a final judgment on some, but not all, of the causes of action. The same is true of the other cases relied upon by Decco. *See In re Buckhead Am. Corp.*, 178 B.R. 956, 968 (D. Del. 1994); *Baylis v. Taylor*, 475 F. Supp. 2d 484, 490 (D. Del. 2007); *Davis v. First Corr. Med.*, 530 F. Supp. 2d 657, 660 (D. Del. 2008).

### B. Patent ownership claims (Counts X-XIII)

In support of the motion to dismiss, Decco contends that the FAC's causes of action relating to ownership of the patents-in-suit are based only on Mir's alleged failure to execute the appropriate paperwork reflecting the assignment to AgroFresh, and fail to state a claim against Decco. (D.I. 132 at 5) In response, AgroFresh alleges that the ownership claims are generally

---

[3] *See* Fed. R. Civ. P. 54(b) ("[W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.").

7

alleged against all defendants, and Decco has not offered to stipulate to AgroFresh's ownership of the technology. (D.I. 139 at 5)

I recommend that the court grant Decco's motion to dismiss with respect to Counts X to XIII regarding ownership of the patents-in-suit, to the extent that the causes of action extend to Decco.[4] Unlike the other counts in the FAC, these counts do not indicate in their titles whether they are brought against all defendants, only the MirTech defendants, or only Decco. (D.I. 106 at ¶¶ 160-197) However, Counts X to XIII do not recite any factual allegations relating to Decco in connection with the ownership of the patents-in-suit, despite multiple references to the MirTech defendants. (*Id.*) Since Decco is the only remaining group of defendants in this litigation, and Counts X to XIII do not contain any factual allegations suggesting that Decco may assert ownership rights over the patents-in-suit, AgroFresh has failed to state a claim against Decco regarding the ownership causes of action at Counts X to XIII. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56 (explaining that a claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged).

### C. Indirect infringement claims (Counts XIV-XVI)

To establish indirect infringement, a patent owner has available two theories: active inducement of infringement and contributory infringement. *See* 35 U.S.C. § 271(b) & (c). Liability for indirect infringement may arise "if, but only if, [there is] . . . direct infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961) (emphasis omitted)).

---

[4] To the extent that Counts X to XIII apply only to the MirTech defendants, I recommend that the court deny the motion to dismiss as moot for the reasons set forth at § IV.A, *supra*.

Under 35 U.S.C. § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer." "To prove induced infringement, the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotations omitted). "[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011). To adequately plead a cause of action for induced infringement, the plaintiff must allege that at least one direct infringer exists, that defendants had knowledge of the patent(s), that defendants specifically intended that their customers would infringe, and that those acts constituted infringement. *See Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 394 (D. Del. 2013).

To establish contributory infringement, the patent owner must demonstrate the following: (1) an offer to sell, sale, or import; (2) a component or material for use in a patented process constituting a material part of the invention; (3) knowledge by the defendant that the component is especially made or especially adapted for use in an infringement of such patents; and (4) the component is not a staple or article suitable for substantial noninfringing use. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (citing 35 U.S.C. § 271(c)). Defendant "must know 'that the combination for which his component was especially designed was both patented and infringing.'" *Global Tech*, 131 S. Ct. at 2067 (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

### 1. Induced infringement

In support of its motion to dismiss AgroFresh's causes of action for induced infringement of the '216, '849, and '068 patents, Decco contends that the FAC does not contain allegations of

9

third-party direct infringement. (D.I. 132 at 6-7) Moreover, Decco argues that the FAC recites the elements of the claim without providing factual support, particularly with respect to the requisite element of Decco's intent. (*Id.* at 9)

In response, AgroFresh argues that the allegations in the complaint, considered as a whole, establish that Decco commercialized and marketed the infringing TruPick product to the detriment of AgroFresh's sales to customers of its SmartFresh product. (D.I. 139 at 6-8) According to AgroFresh, the customers infringe the patents-in-suit by using the allegedly infringing TruPick product, and Decco's advertising efforts are sufficient to establish its intent to encourage the infringing use. (*Id.* at 8-9)

I recommend that the court grant Decco's motion to dismiss AgroFresh's causes of action for induced infringement because the FAC does not adequately plead an act of direct infringement by a third-party customer. The facts before the court are similar to the circumstances presented in *Varian Medical Systems, Inc. v. Elekta AB*, C.A. No. 15-871-LPS-CJB, 2016 WL 3748772, at *4 (D. Del. July 12, 2016). In *Varian*, the court found the pleading deficient because the complaint did not state that the "group of possible direct infringers ever actually purchased the [accused product] (such that one might reasonably infer they went on to use it in an infringing manner)." *Varian*, 2016 WL 3748772, at *4. Instead, the pleading in *Varian* described "'customers and potential customers' who have attended 'trade shows, consultations, [and] training programs' and who have received 'demonstrat[ions]' and 'instruct[ions]' from Defendants' representatives as to how to use the Gamma Knife Icon." *Id.* (quoting complaint). The same is true in the present case, in which the FAC alleges that "Defendants also specifically intend and have induced third party customers to infringe" the asserted claims of the '216, '849, and '068 patents by issuing a press release, promoting the

patented technology, and forming the joint venture to market and sell the technology, without expressly stating that the customers bought or used the infringing product. (D.I. 106 at ¶¶ 202, 210, 219)

Similarly, in *Pragmatus Telecom, LLC v. Ford Motor Co.*, the court found allegations that the defendant intended its customers to visit its website to infringe the patents failed to adequately plead direct infringement by third parties because "that is not the same thing as saying, 'Ford customers infringe the patents by using the websites.'" C.A. No. 12-92-RGA, 2012 WL 2700495, at *1 n.3 (D. Del. July 5, 2012). This conclusion does not conflict with the Federal Circuit's ruling in *In re Bill of Lading*, which found the amended pleadings survived the *Iqbal / Twombly* inquiry because they "each assert that a specific customer or customers are infringing the [asserted] patent **by using the patented method**."[5] *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012). Here, the FAC does not expressly allege that the third party customers use the patented technology.

The FAC otherwise adequately pleads specific intent by Decco to induce infringement. Viewing the FAC in the light most favorable to AgroFresh, the allegations in the FAC plausibly infer that Decco intended to induce infringement through its marketing activities relating to the accused TruPick product. (D.I. 106 at ¶¶ 1, 22, 76, 78) Both the Federal Circuit and courts in this district have held that similar marketing activities are sufficient to support an allegation of specific intent. *See In re Bill of Lading*, 681 F.3d at 1341-42 ("Common sense indicates that advertising that your product" can be used in a certain way "gives rise to a reasonable inference

---

[5] Specifically, the Federal Circuit observed that "[t]he Qualcomm Amended Complaint states that the patent is being infringed by use of the patented method by specific Qualcomm customers." *In re Bill of Lading*, 681 F.3d at 1335. The Intermec Amended Complaint alleged that "Intermec's trucking customers use its Fixed Vehicle Computers, Mobile Scanners and Transportation and Logistics Solutions. . . ." *Id.* at 1336.

11

that you intend to induce your customers to accomplish these benefits through utilization of the patented method."); *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 475-76 (D. Del. 2012) (concluding that the complaint adequately alleged specific intent by referring to the defendant's marketing and distribution of the accused products). Nonetheless, the FAC's insufficient allegations of direct infringement by Decco's customers are fatal to AgroFresh's causes of action for induced infringement of the '216, '849, and '068 patents.

### 2. Contributory infringement

In support of its motion to dismiss AgroFresh's causes of action for contributory infringement of the '216, '849, and '068 patents, Decco contends that AgroFresh does not adequately plead a lack of substantial non-infringing uses, and instead sets forth a "formulaic recitation" of the elements of the claim. (D.I. 132 at 8) In response, AgroFresh alleges that it is not required to plead with specificity something that does not exist. (D.I. 139 at 9-11)

For the same reasons set forth in connection with the discussion of third party direct infringement at § IV.C.1, *supra*, I recommend that the court dismiss AgroFresh's causes of action for contributory infringement. Moreover, the FAC fails to sufficiently allege that TruPick has no substantial non-infringing use. Courts within this district have held that reciting this element of the cause of action, without more, is not sufficient to survive a motion to dismiss under Rule 12(b)(6). *See Neology, Inc. v. Kapsch Trafficcom IVSH, Inc.*, C.A. No. 13-2052-LPS, 2014 WL 4675316, at *7 n.8 (D. Del. Sept. 19, 2014) (citing cases); *Valinge Innovation AB v. Halstead New England Corp.*, C.A. No. 16-1082-LPS-CJB, 2017 WL 5196379, at *4 (D. Del. Nov. 9, 2017) ("The Court does not agree with [plaintiff's] response that all it needed to do here was to track the statutory language regarding the 'no substantial non-infringing use' element.").

For these reasons, I recommend that the court dismiss AgroFresh's causes of action for contributory infringement.

### 3. Grouping of Defendants

Decco further contends that the causes of action for indirect infringement improperly lump all named defendants together, without providing sufficient notice as to which entity is accused of alleged wrongdoing. (D.I. 132 at 11) In response, AgroFresh argues that the FAC as a whole makes clear the conduct that is associated with each defendant. (D.I. 139 at 11)

Counts XIV to XVI refer to "Defendants" as a collective group, without specifying which individual defendants participated in the specific activities within the Counts. However, the causes of action also incorporate by reference the preceding paragraphs of the FAC. (D.I. 106 at ¶¶ 198, 206, 215) These earlier paragraphs establish the relationships among the defendants forming the basis of the causes of action for indirect infringement. (*Id.* at ¶¶ 6, 14, 21, 75-77) In this regard, the facts of the present case are similar to the circumstances in *Mayne Pharma Int'l PTY Ltd. v. Merck & Co., Inc.*, C.A. No. 15-438-LPS-CJB, 2015 WL 7833206, at *3 (D. Del. Dec. 3, 2015), in which the court determined that the incorporation by reference of preceding paragraphs of the complaint was sufficient to plead the elements of a cause of action for direct infringement.

The facts before the court in *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.* are distinguishable. C.A. No. 13-2052-LPS-CJB, 2014 WL 4675316, at *7 (D. Del. Sept. 19, 2014). In *Neology*, the court noted that each of three defendants "conduct different business activities, sell different products and presumably utilize different types of 'training and instructions' in the course of their business." *Id.* As a result, the court concluded that "[t]reating these Defendants as one big group for purposes of articulating how each has encouraged the induced infringement

13

at issue says nothing plausible as to what any particular one of them might have done." *Id.* In contrast, the defendants in the present case acted together to form a joint venture, and it was through the joint venture that the defendants developed and marketed TruPick. (D.I. 106 at ¶¶ 75-77)

### D. Choice of law regarding state law tort claims (Counts IX, XX-XXII)

Decco contends that Delaware law applies to AgroFresh's state law claims because the focus of the claims is on the relationship between Decco and the MirTech defendants, as illustrated by the formation and operation of Essentiv, a Delaware LLC. (D.I. 132 at 12-13) In addition, Decco explains that several of the parties are located in Delaware or conduct business there. (*Id.* at 14) Decco emphasizes the fact that agreements between AgroFresh and the MirTech defendants, as well as agreements between Decco and the MirTech defendants, consistently choose Delaware law to govern the agreements. (D.I. 140 at 6-7)

In response, AgroFresh contends that choice of law issues are more appropriately addressed at a later stage in the proceedings.[6] (D.I. 139 at 13) To the extent that the court conducts a choice of law analysis, AgroFresh alleges that Pennsylvania law should apply to AgroFresh's tort claims because the injury and conduct occurred in Pennsylvania, where AgroFresh and Decco are headquartered. (*Id.* at 14-15)

"The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Delaware courts apply the conflict provisions set forth in the Restatement

---

[6] Cases from within the Third Circuit support deferring choice of law determinations at the pleadings stage. *See, e.g., Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 517 (D. Del. 2012); *Graboff v. The Collern Firm*, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010). *But see Benihana of Tokyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720 (D. Del. 2011), wherein the court resolved the choice of law issue on a motion to dismiss.

14

(Second) of Conflict of Laws to determine which state's laws govern. *See Benihana of Tokyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 725 (D. Del. 2011). With respect to tort claims, the court should apply the local law of the state that "has the most significant relationship to the occurrence and the parties." *Id.* (citing Restatement (Second) of Conflict of Laws § 145). In conducting this analysis, the court evaluates four factors: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." *Id.*

I recommend that the court defer a determination regarding choice of law until summary judgment briefing, subject to the page limitations in the original scheduling order.[7] (D.I. 122 at ¶ 11) "[T]he principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from . . . the misappropriation of trade values." Restatement (Second) of Conflict of Laws § 145, cmt. f. In the present case, however, the factual record establishing the location of the relevant conduct has not been fully established.

### E. Pennsylvania Trade Secrets Act (Count XVIII)

In view of the foregoing analysis at § IV.D, *supra*, I recommend that the court defer ruling on the viability of AgroFresh's cause of action under the Pennsylvania Trade Secrets Act.

---

[7] The parties will not receive additional pages for briefing the choice of law issue on summary judgment, unless authorized by the District Judge.

### F. Preemption under the DUTSA (Counts IX, XXII, XX, and XXI)

Decco alleges that AgroFresh's causes of action for unjust enrichment, conversion, and tortious interference with customer and prospective relations claims should be dismissed because they are preempted by the DUTSA. (D.I. 132 at 15) According to Decco, these claims are grounded in the same facts as AgroFresh's state law trade secret claim. (*Id.* at 16)

In response, AgroFresh alleges that it is premature to rule on preemption on a Rule 12(b)(6) motion. (D.I. 139 at 17) Moreover, AgroFresh contends that its claims for unjust enrichment, conversion, and tortious interference are "separate and apart from" the statutory trade secret claim. (*Id.* at 18)

I recommend that the court defer ruling on the issue of preemption in accordance with the analysis at § IV.D, *supra*. Under Pennsylvania law, courts have held that resolution of a preemption challenge under the Pennsylvania Uniform Trade Secrets Act is premature on a Rule 12(b)(6) motion to dismiss. *See Cunningham Lindsey U.S., Inc. v. Bonnani*, 2014 WL 1612632, at *5 (M.D. Pa. Apr. 22, 2014). Consequently, the issue of preemption is more appropriately addressed following the resolution of the choice of law issue.

### G. Conversion of intangible property (Count XXII)

I recommend that the court defer ruling on the viability of the conversion claim in accordance with the analysis at § IV.D, *supra*, to avoid issuing an advisory opinion at this stage of the proceedings as to whether Delaware law and Pennsylvania law recognize trade secrets as the proper object of a conversion claim.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court resolve Decco's motion to dismiss (D.I. 131) as follows:

A. DENY as moot the motion to dismiss with respect to Counts II-IV, VI, and VIII;

B. GRANT the motion to dismiss with respect to Counts X-XIII, to the extent that the causes of action extend to Decco;

C. GRANT the motion to dismiss with respect to the indirect infringement claims at Counts XIV-XVI;

D. Defer the choice of law analysis regarding Counts IX and XX-XXII until summary judgment;

E. DENY the motion to dismiss with respect to Count XVIII;

F. DENY the motion to dismiss with respect to Counts IX and XXII; and

G. DENY the motion to dismiss with respect to Counts XX and XXI.

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties should jointly submit a proposed redacted version by no later than **January 3, 2019**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The court will subsequently issue a publicly available version of its Report and Recommendation.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: December 27, 2018

Sherry R. Fallon
United States Magistrate Judge