**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AGROFRESH INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 16-00662-MN-SRF |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| ESSENTIV LLC, DECCO U.S. POST-HARVEST, INC., CEREXAGRI, INC. d/b/a DECCO POST-HARVEST, and UPL, LTD., | ) | |
| | ) | **PUBLIC VERSION** |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

Plaintiff AgroFresh Inc., for its Second Amended Complaint against Defendants Essentiv

LLC, Decco U.S. Post-Harvest, Inc., Cerexagri, Inc. d/b/a Decco Post-Harvest, and UPL Ltd.

("UPL")[1] hereby alleges as follows:

**NATURE OF THE ACTION**

1.       Nazir Mir and his company, MirTech, Inc. (collectively, "MirTech"), have

appropriated technology that they developed by exploiting their access to AgroFresh confidential

information and that belongs to AgroFresh according to the parties' unambiguous contracts.

MirTech has joined with the Decco Defendants to register and market that technology as their

own in competition with AgroFresh, all in violation of AgroFresh's contractual, common law,

and statutory rights.

2.       AgroFresh is a research-based industry leader in research, development, and sales

of technology for pre- and post-harvest freshness preservation of fruits, vegetables, and other

---

[1] Collectively, this pleading will refer to Essentiv, Decco U.S. Post-Harvest, Cerexagri, Inc. d/b/a Decco Post-Harvest, and UPL as the "Decco Defendants." This pleading will refer to Decco U.S. Post-Harvest, Inc. as "Decco."

produce.  It owns multiple patents on technologies that growers use to control the ripening of fruits and vegetables.  These technologies reduce waste and improve product quality for consumers.  AgroFresh's core lines of business include its SmartFresh, Harvista, and RipeLock products.  AgroFresh's SmartFresh product line includes various formulations (powder or tablet) that trained applicators dissolve in water or solution to treat produce in controlled environments after harvest and before it reaches consumers.  Harvista is a pre-harvest treatment to improve the quality of produce.  RipeLock is a post-harvest technology that combines SmartFresh technology with microperforated bags.

3.    Beginning in 2010, AgroFresh contracted with and agreed to pay MirTech – really Mir – $300,000 per year to help develop new technology, including RipeLock. *See, e.g.*, Exhibits A and B.  AgroFresh provided Mir access to its confidential information, including confidential research and manufacturing processes.  It set up equipment in Mir's laboratory and trained him on how to use it.  MirTech agreed not to disclose AgroFresh's confidential information without AgroFresh's consent or use that information except for AgroFresh's benefit. It further agreed that AgroFresh would automatically own any new technologies MirTech developed that related to MirTech's AgroFresh work and that it would not compete with AgroFresh.

4.    MirTech has materially breached those provisions, and, among other things, engaged in fraud, unfairly competed with AgroFresh, usurped opportunities that belong to AgroFresh, converted AgroFresh's property, and been unjustly enriched by its misappropriation of AgroFresh's property.

5.    Each of the Decco Defendants knew that MirTech had a contractual relationship with AgroFresh.  Nevertheless, they intentionally induced Mir to breach his contractual

2

obligations to AgroFresh, and conspired with MirTech to injure AgroFresh. After misappropriating trade secret information and technology that belongs to AgroFresh, the Decco Defendants used that information and misappropriated technology to interfere with AgroFresh's existing and prospective customer relationships.

6.      UPL directed the Decco Defendants' strategy for their unlawful activity that harmed AgroFresh.

7.      In addition, the Decco Defendants have infringed and continue to infringe several AgroFresh patents, including (1) a patent the Court held was automatically assigned to AgroFresh under its contracts with MirTech, and (2) two AgroFresh patents that predated AgroFresh's relationship with MirTech and form the core of AgroFresh's proprietary technology.

8.       The Decco Defendants should be ordered to stop their infringing activities; disgorge all profits they have made from their illegal exploitation of AgroFresh's confidential information and property; pay AgroFresh damages (punitive and compensatory) in an amount to be determined at trial; and pay AgroFresh its costs, attorneys' fees, and interest.

**THE PARTIES**

9.      Plaintiff AgroFresh is a corporation organized under the laws of the State of Illinois having a principal place of business at One Washington Square, 510-530 Walnut Street, Suite 1350, Philadelphia, Pennsylvania.

10.      Defendant Decco U.S. Post-Harvest is a Delaware Corporation with a principal place of business in Monrovia, California.

11.      Defendant Cerexagri d/b/a Decco Post-Harvest is a Pennsylvania Corporation with a principal place of business in King of Prussia, Pennsylvania.

12.     Essentiv is a Delaware limited liability company constituting a joint venture of MirTech and Decco.  Essentiv's members are MirTech and Decco.

13.     UPL is incorporated in India with a principal place of business in Mumbai, India.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).  This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.  In addition, the Court has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Decco U.S. Post-Harvest because, *inter alia*, it is a corporation organized under the laws of the State of Delaware.   In addition, the Court has personal jurisdiction over Decco U.S. Post-Harvest because it has consented to the jurisdiction of this Court through its active participation in this litigation.

16.     This Court has personal jurisdiction over Essentiv because, *inter alia*, it is a Delaware limited liability company.   In addition, the Court has personal jurisdiction over Essentiv because it has consented to the jurisdiction of this Court through its active participation in this litigation.

17.     This Court has personal jurisdiction over Cerexagri d/b/a Decco Post-Harvest because, on information and belief, it has conducted business in this.  In addition, the Court has personal jurisdiction over Cerexagri because it has consented to the jurisdiction of this Court through its active participation in this litigation.

18.     This Court has personal jurisdiction over UPL because, on information and belief, it conducted business in this District and controls the activity of Decco, its subsidiary that is

4

organized under the laws of the State of Delaware and also conducts substantial business in this District.  UPL also consented to the jurisdiction of this Court for any proceeding related to its participation in the Essentiv joint venture, and this proceeding so relates.  On information and belief, UPL directly participated in the negotiation and formation of Essentiv, a Delaware limited liability company. And, on information and belief, UPL has reached into and caused harm in this District. In addition, the Court has personal jurisdiction over UPL because it has consented to the jurisdiction of this Court through its active participation in this litigation.

19.     On information and belief, the Decco Defendants have conducted business and sell or attempt to sell their products in this District.  On information and belief, Defendants committed acts of infringement in this District by advertising, marketing, offering for sale, and/or selling TruPick, which infringes AgroFresh's patents, as set forth below, in this District.

20.     Venue is also proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b) because, *inter alia*, the Decco Defendants are subject to personal jurisdiction in this District.

## BACKGROUND

### *AgroFresh Uses 1-MCP to Revolutionize the Post-Harvest Treatment of Produce*

21.     Commercial growers and sellers of produce need to prevent their produce from over-ripening before it reaches consumers.  Ethylene gas is a natural byproduct of produce and is a primary cause of ripening.  Efforts to prevent produce over-ripening focus on controlling the effect of ethylene gas.

22.     In the early 1990s, researchers at North Carolina State University created a synthetic gas compound, 1-methylcyclopropene ("1-MCP"), which counteracts the effects of ethylene and slows the ripening process.  The primary patent on the 1-MCP gas compound was U.S. Patent Number 5,518,988 (the "Sisler Patent"), which expired in 2015.

5

23.     1-MCP in its gas form is extremely volatile; it is highly reactive and has been shown to dimerize and polymerize at low temperature; it is also flammable at relatively low temperatures and concentrations.  That volatility and innate reactivity created challenges for the commercial use of 1-MCP alone.

24.     To control this extreme volatility and allow for the shipping and handling necessary to commercialize 1-MCP, researchers developed an innovative way to contain (or stabilize) the gas.  This stabilization technology effectively traps individual 1-MCP molecules, which forms a foundation upon which to build different formulations of 1-MCP products (such as powder, tablets, or gels).  Among the primary patents on the 1-MCP stabilization technology are U.S. Patent Nos. 6,017,849 ("the '849 Patent") and 6,313,068 ("the '068 Patent") (attached hereto as Exhibits C and D, respectively).  Efforts to commercialize 1-MCP generally rely on the technologies taught in these patents.

25.     Since 1999, AgroFresh has been the industry leader in the research, development, and commercial use of stabilized 1-MCP to treat produce, both pre- and post-harvest. AgroFresh's technologies significantly reduce waste and improve the quality of produce on store shelves.  AgroFresh continually studies ways to improve and expand its innovative pre- and post-harvest technologies.

26.     AgroFresh owns multiple patents on 1-MCP related technologies, including the '849 Patent and the '068 Patent.  AgroFresh markets its stabilized 1-MCP products under the trade name "SmartFresh."  To treat produce with SmartFresh, a trained applicator dissolves a water soluble pouch or tablet containing a precise amount of formulated, stabilized 1-MCP in water in an enclosed storage space, allowing the 1-MCP gas to escape into the air and make

contact with the stored produce.  SmartFresh is the worldwide leading 1-MCP product on the market for post-harvest application and accounts for the majority of AgroFresh's revenue.

27.    AgroFresh has also developed a pre-harvest application of stabilized 1-MCP marketed and sold under the trade name Harvista.  Harvista is used on fruits to control quality in the orchard with the goal of improving yield.

28.    More recently, AgroFresh has focused on developing a third product line called RipeLock, which combines a microperforated (more specifically, modified atmosphere package or "MAP") produce bag with SmartFresh technology.  That combination controls ripening after produce is placed into AgroFresh's engineered microperforated bags by allowing, among other things, a controlled amount of 1-MCP to contact bagged produce through the perforations.  To date, RipeLock has been used primarily on bananas but has other applications.

29.    AgroFresh's research scientists are among the global leaders in 1-MCP technology.  Aside from its patents, in the decades AgroFresh has led the market in 1-MCP products, it has developed a significant amount of know-how, proprietary information, customer information, and trade secrets concerning 1-MCP.  AgroFresh derives significant economic value from its trade secrets and other know how concerning 1-MCP.

### *AgroFresh Partners with the MirTech Defendants to Develop the RipeLock Business*

30.    Mir invented and holds a U.S. patent, No. 8,087,827, directed to the microperforation technology that allows, for example, a bag of vegetables to steam directly in the microwave.  Because of Mir's expertise with microperforated bags, AgroFresh contracted with MirTech to help AgroFresh develop new technology, with a primary focus on combining 1-MCP products with MAP.

31.    AgroFresh's partnership with Mir began in 2010, when Mir and AgroFresh entered a Consulting Services agreement related to the development of new technology. Subsequently, in January 2011, AgroFresh entered two contracts with MirTech: a Commercial Agreement and a Consulting Agreement (collectively, the "Agreements").

32.    The Commercial Agreement commenced on January 1, 2011 and continued until at least December 31, 2020 (unless terminated).  Ex. A § 1.  The Consulting Agreement commenced on January 1, 2011 and continued until December 31, 2016 (unless terminated).  Ex. B § 1.  Both Agreements permitted early termination under certain circumstances.

33.    Under those Agreements, MirTech, through Mir, agreed to provide AgroFresh specified Services including, but not limited to "research, development, marketing and sales services related to" the combination of microperforated packaging and 1-MCP (i.e., RipeLock). Exs. A & B § 2.2.  The Agreements require that Mir be actively engaged in providing the Services with the exception of vacation and holidays not to exceed 25 days per year.  *Id.*  Mir is to provide consulting services exclusively to AgroFresh under the Consulting Agreement.  Ex. B § 2.1.

34.    Attachment A to the 2011 Agreements further describes the Products and Services to include "[o]ngoing research and development of current and new technology, including the development of new intellectual property" combining microperforated packaging and 1-MCP. "Products developed using these combined technologies are 'Product' or 'Products' under [the] Agreement[s]."  Exs. A & B Attach. A.

35.    Under the Consulting Agreement, AgroFresh paid Mir $300,000 per year or a percentage of royalties, whichever was greater, while he performed the Services contemplated by that agreement.  Ex. B § 3.1.  The Commercial Agreement provided for royalties on the sales of

Products over a longer term, contemplating that Mir would earn royalties up to the time certain patents expired. Ex. A § 3.1. Payments under the two Agreements are alternative, not cumulative. Ex. A § 3.3.

### *The MirTech Defendants Agree Not to Compete with AgroFresh*

36.     The Agreements contain Non-Competition provisions, which prohibit MirTech and its employees from (1) working "in any capacity that [AgroFresh] or its Affiliates deem detrimental to the development of the Product" and (2) entering "any future relationship which may adversely impact the development or sale of the Product, or conflict with the Services." Exs. A & B § 8.1.

### *MirTech Agrees to (1) Promptly Inform AgroFresh of any Improvements Related to the Products; (2) Automatically Assign All Rights and Future Rights in Such Improvements to AgroFresh; and (3) Maintain the Confidentiality of AgroFresh's Confidential Information*

37.     Because of the parties' close relationship, AgroFresh trusted MirTech with its confidential research, product development, and manufacturing processes. MirTech also had access to AgroFresh's confidential customer information, product plans, and business plans. Due to that fact and the substantial compensation AgroFresh agreed to pay MirTech, the parties agreed that AgroFresh would own any intellectual property that MirTech developed related to the Products. Specifically, the Agreements required MirTech to "promptly inform [AgroFresh] of any and all inventions, discoveries, improvements or other modifications which are related to the Products ('Improvements'), whether patentable or not." Exs. A & B § 12.1. MirTech also agreed to automatically assign "all rights, and all future rights to such Improvements to [AgroFresh], at no additional cost to [AgroFresh] including, without limitation, any patent rights, know-how, copyrights, or other intellectual property" and agreed to "execute any documents

9

necessary to accomplish such assignment." *Id.*   MirTech agreed to obtain written agreement from all MirTech employees providing Services to AgroFresh to be bound by Section 12.1.

38.   MirTech also agreed to undertake reasonable efforts to maintain in confidence all proprietary and/or confidential information it received from AgroFresh during the Terms of the Agreements and for a period of ten (10) years thereafter.  The Agreements do not allow MirTech to use AgroFresh's confidential information "except as specifically authorized in writing."  Exs. A & B § 13.1.

### *AgroFresh Gives MirTech Access to Its Confidential Information Concerning 1-MCP*

39.   AgroFresh treated Mir as a business partner under the Agreements, providing him access to AgroFresh's confidential and proprietary information about 1-MCP stabilization and formulation technology, which AgroFresh had developed over the years.  Mir was involved in discussions with AgroFresh research and development staff (whose work largely focused on 1-MCP technologies), had badge access to AgroFresh facilities, obtained and worked with product samples, and was involved in sales of AgroFresh's RipeLock product to AgroFresh's current and prospective customers.  AgroFresh also helped Mir set up his laboratory to measure 1-MCP accurately and provided him equipment to assist in this effort.

40.   Since the primary technology used in RipeLock is effectively a combination of two parts – a MAP and 1-MCP – MirTech needed access to 1-MCP technology to do its work under the Agreements.  Given the protections contained in the Agreements and AgroFresh's special relationship with Mir, AgroFresh was not concerned about providing access to this information and did not take steps to screen Mir from its 1-MCP related scientific research and development.

### *MirTech Works on Other 1-MCP Related Patents*

41.     As noted above, MirTech worked with SmartFresh products and confidential 1-MCP research and development information in providing the Services.  In a meeting at AgroFresh facilities on or about December 12, 2013, consistent with the Agreements, Mir gave AgroFresh notice of two sets of Improvements that related to his work under the Agreements. First, Mir informed AgroFresh of two new formulation patent applications related to 1-MCP, which Mir had already filed provisionally in May 2013 without notice to AgroFresh.[2]  Those patent applications dealt with the pre-harvest treatment of produce and reflected ideas Mir developed because of his access to AgroFresh's Harvista product knowledge.  Mir could only have obtained that Harvista product knowledge from his discussions with AgroFresh scientists. Second, Mir informed AgroFresh of a purportedly new, alternative method of stabilizing 1-MCP, which he claimed to have pursued on his own while working on AgroFresh's RipeLock technology.  AgroFresh believed Mir's proposed method of stabilization was known and covered by AgroFresh's existing patents.   Several AgroFresh employees, including Mark Zettler (AgroFresh's Vice-President of Research and Development) and Ann Beaulieu (Director of Regulatory Affairs), attended the meetings where Mir presented these technologies.

42.     Mir approached Dr. Zettler several times regarding the above-described formulation patents.  Any formulation of encapsulated 1-MCP could be used for any application, including RipeLock, Harvista, and SmartFresh-related products.  The technologies Mir presented thus related to the Products.  Although AgroFresh owned the patents under Section 12.1 of the

---

[2] These patent applications ultimately became U.S. Patent No. 8,822,382 ("the '382 Patent"), U.S. Patent No. 8,802,140 ("the '140 Patent"), and U.S. Patent No. 9,005,657 B2 ("the '657 Patent") (a division of the application for the '140 Patent).  These patents are attached as Exhibits E through G.  Although Mir ultimately disclosed these Improvements, he had at the time already breached the Agreements by filing the patent applications reflecting himself as the owner rather than AgroFresh.

Agreements because the patent technology relates to the Products, AgroFresh was not interested in commercializing them.

43.     AgroFresh   now   knows   that   in   2013,   MirTech    secretly   developed   other technology related to the Products and Services that they did not share with AgroFresh, in violation of the Agreements.  On information and belief, some of this technology was based on confidential   information   MirTech   learned   through   its   relationship   with   AgroFresh.     Mir developed this technology on (and behind) the backs of AgroFresh and its scientists, who invested a considerable amount of time and financial resources enabling Mir to learn about broad 1-MCP technology.

44.     Specifically,   in   August,   2013,   Mir   filed   another   patent   application,   which published as U.S. Patent Publication Number 2014/0326620 ("the '620 Application") (attached hereto as Exhibit H), and which claims priority to the provisional application he filed in May of 2013.  The '620 Application teaches "[a] package for storing or containing at least one ethylene response   manipulation   agent   such   as   [1-MCP]," which   "can   have   multiple   film   layers" and expresses a preference for a "permeable film structure."  In short, the '620 Application discloses a permeable bag (i.e. MAP with 1-MCP).  Although this application falls squarely within Section 12.1's disclosure requirement, Mir did not disclose it to AgroFresh.  Instead, he filed a patent application that did not disclose AgroFresh's ownership.

45.     Mir secretly developed other 1-MCP technologies during 2013 and 2014 that Section 12.1 required him to disclose and did not inform AgroFresh of that fact.  In November 2014, he unilaterally filed a provisional patent application in which he teaches a method to purportedly "adsorb" 1-MCP in a polymer network he calls an MCPN.  A patent claiming priority to this provisional application issued on July 19, 2016 as United States Patent No.

9,394,216 (the "'216 Patent") (attached hereto as Exhibit I).   This '216 Patent claims stabilization complexes for 1-MCP for post-harvest treatment.   As such, the technology in the '216 Patent relates to the core of AgroFresh's portfolio of 1-MCP technologies, all of which utilize stabilized 1-MCP.   The '216 Patent could be used in products that directly compete with SmartFresh products, AgroFresh's largest source of revenue, as well as products that directly compete with Harvista and RipeLock products.   The '216 Patent technology thus falls squarely within Section 12.1 of the Agreements.

46.   Indeed, Mir knew that these technologies "related to the Product," representing as much to the U.S. government in his grant applications.   Nevertheless, MirTech did not disclose the discoveries to AgroFresh or disclose AgroFresh as the rightful owner in its patent filings. Mir also discovered other technologies that directly relate to the Products but failed to disclose those technologies to AgroFresh.

### *The Decco Defendants and MirTech Join Forces to Misappropriate AgroFresh's Technology and Other Trade Secret Information*

47.   Meanwhile, the Decco Defendants, with specific efforts and support from UPL, devised a strategy to enter the 1-MCP marketplace.

48.   Decco/UPL hired Lynn Oakes, who had worked at AgroFresh and The Dow Chemical Company (when AgroFresh was a Dow subsidiary).   Oakes worked on the RipeLock product line and knew Mir from that time.   He was also aware that Mir was under contract with AgroFresh.

49.   In October 2014, MirTech signed a confidentiality agreement with Decco.

50.   In November 2014, MirTech and Decco signed a letter of intent to form a joint venture.   That joint venture's purpose was to, among other things, misappropriate AgroFresh's trade secret information and develop 1-MCP technology to compete with AgroFresh.   The letter

of intent required the parties not to disclose the 1-MCP technology to anyone, including AgroFresh.  MirTech provided the joint venture the exclusive right to the MOF technology.  All the while, Oakes (and therefore Decco) was aware of Mir's contract with AgroFresh.

51.     As the Mir/Decco relationship was getting underway, on information and belief, Mir traveled to India to meet with UPL executives.  Decco's "Chief Executive Officer," Francois Girin, reports directly to Sagar Kaushik, a UPL executive.  Mr. Kaushik was involved in various communications concerning the Decco relationship with Mir and, on information and belief, met with Mir directly in India.

52.     Mir and Oakes worked extensively to develop a product competitive to AgroFresh's SmartFresh technology using the MOF technology during the late 2014 through 2016 time period.  They conducted trials and tests and obtained product registration.  Meanwhile, with Decco's input,  MirTech continued prosecuting what became the '216 Patent.  Mir was fully engaged in his relationship with Decco at this time and had no interest in working with AgroFresh.  Indeed, in July 2015, while Mir was still under contract with AgroFresh, Decco described Mir as "transitioning" from AgroFresh.

53.     Girin asked for and obtained input and direction from UPL throughout Decco's and Mir's scheme.  He also kept top management at UPL apprised of developments in the Mir/Decco relationship, and they pressured him to ensure profitability of the new Decco/Mir joint venture.

54.     The proposed joint venture between MirTech and the Decco Defendants was designed to develop and commercialize technology that would compete directly with AgroFresh's proprietary suite of 1-MCP products and technologies, including its core SmartFresh product line.  MirTech and the Decco Defendants knew that, had they disclosed their

activities to AgroFresh, AgroFresh would have, among other things, deemed them "detrimental to the development of the Product" and a "future relationship which may adversely impact the development or sale of the Product, or conflict with the Services," all in breach of Section 8.1 of the Agreements between AgroFresh and MirTech.  In addition,  MirTech  was aware that its efforts violated multiple other provisions of the Agreements, including but not limited to Sections 12.1 and 13.1 of both Agreements and Section 2.1 of the Consulting Agreement.  Thus, it purposely kept its efforts secret from AgroFresh.  In fact, MirTech and the Decco Defendants actively concealed both their relationship and the technology.  For example, they held meetings in secret, off site, to avoid being seen together.

55.    Indeed,  MirTech continued its contractual relationships with AgroFresh unabated throughout this time frame, continuing to learn confidential information regarding 1-MCP stabilization and formulation technology and AgroFresh's research and development efforts, which, on information and belief, they then passed on to Decco.  Mir continually asked AgroFresh questions about non-public, confidential projects, and AgroFresh scientists shared that information based on the parties' longstanding relationship and in reliance on the contractual protections in place.  AgroFresh would not have continued its contractual relationships with MirTech or given them access to additional confidential information but for its deception.

56.    On information and belief, UPL, with knowledge of Mir's AgroFresh relationship, solicited AgroFresh's confidential and trade secret information from Mir directly, including information pertaining to AgroFresh's 1-MCP technology and Mir provided that information to UPL to use in India and elsewhere.  For example, on information and belief, UPL asked for and obtained information concerning how to synthesize and measure 1-MCP and how

to use a gas chromatograph, all information Mir learned from the 1-MCP experts at AgroFresh. AgroFresh set up Mir's lab at Rutgers and trained him on these measurements.

57.     In October 2015, MirTech and Decco finalized their term sheet for Decco's exploitation of the '216 Patent technology.  They submitted a completed registration package for TruPick, a product incorporating the '216 Patent technology, to the U.S. government on or about October 7, 2015.

### MirTech Made Misrepresentations and Omitted Material Facts to Secure an Amendment to the Agreements in an Effort to Insulate Their Misconduct

58.     In early October 2015, after Mir had secretly filed his applications for the '620 Application and the '216 Patent and after MirTech had entered into a relationship with Decco to commercialize those patents, MirTech and AgroFresh began discussing an amendment to the Commercial Agreement and a third extension of the Consulting Agreement.   AgroFresh concluded that the RipeLock program could no longer support a $300,000 per year consulting expense for Mir's services.  It therefore proposed reducing MirTech's consulting fee and limiting Mir's responsibilities.

59.     In addition, AgroFresh had recently begun to market microperforated produce bags without 1-MCP.  In fairness to Mir, because he was the bag expert, AgroFresh added language in Attachment A to the Agreements to clearly state that sales of microperforated bags without 1-MCP would be "Products" for which Mir would receive royalties.  Given the reduction in Mir's consulting fee, the amendments contemplated that Mir would receive royalties in addition to his consulting fee.

60.     On October 28, 2015, the day before the parties executed the Amendment to the Commercial Agreement and Third Extension of the Consultant Agreement, Mir proposed adding a new sentence to the revised Attachment A by email to Dr. Zettler.  He proposed that the

Agreements include a new "for the avoidance of doubt" clause "primarily for the benefit of AgroFresh" to make clear that he was not entitled to commission for the sales of AgroFresh's 1-MCP products, such as SmartFresh.  Mir did not tell AgroFresh that he had already filed two patent applications on 1-MCP technology (i.e., the '216 Patent and the '620 Application), that he had been funding efforts to procure registrations for such inventions globally, or that he was part of a joint venture with Decco to commercialize the technology in those patents, in direct competition with SmartFresh.

61.    The parties communicated regarding Mir's proposed "for avoidance of doubt" clause.  Dr. Zettler made it clear to Mir that AgroFresh understood that the phrase "1-MCP alone" in that clause referred solely to 1-MCP gas, and not 1-MCP plus any stabilization technology.  Mir's proposed language had little, if any, utility because the Sisler Patent on the 1-MCP molecule alone had expired, and thus anyone in the world could exploit 1-MCP alone.

62.    On October 28, 2015, Dr. Zettler further conveyed his understanding of the phrase "1-MCP alone" by editing a proposed draft that would have allowed Mir to develop, sell, and market "1-MCP alone and 1-MCP related products" by striking the reference to "1-MCP related products."

63.    Mir said nothing in response to Dr. Zettler's expressed understanding of Mir's proposed language and accepted the revision striking "1-MCP related products."  Mir again did not disclose that he, MirTech, Inc., and Decco were already preparing to compete with AgroFresh for post-harvest business with 1-MCP related products that used technology from the '216 Patent they had secretly applied for in November 2014.

64.     On October 29, 2015, the parties executed the Third Extension of the Consultant Agreement, which extended the term of the Consulting Agreement through December 31, 2016, and the Amendment to the Commercial Agreement.

65.     The "for avoidance of doubt" clause in Attachment A to the Consulting Agreement, as executed, provided:

> For the avoidance of any doubt, the development, patenting, sales and marketing by one or both of MirTech and Mir, alone or in collaboration with others of 1-MCP alone are not part of and will not violate this or original agreement, including, without limitation, Section 8.1 of the Agreement.

The Amendment to the Commercial Agreement, as executed, contained virtually the same clause.

66.     Dr. Zettler would not have signed the First Amendment or the Third Extension had he known that Mir was working with Decco to develop and register a competing product.

***Defendants Publicly Announce Plans to Market a New 1-MCP Product Against SmartFresh***

67.     In or around June 2016, AgroFresh began hearing rumors about Decco – which is not a research and development company – partnering with someone on the technology side to develop and market a post-harvest treatment product, competitive to SmartFresh.

68.     During a phone call in mid-June, Dr. Zettler mentioned these rumors to Mir.  Mir denied there was any relationship between him and Decco.

69.     On June 27, 2016, the Decco Defendants learned that the EPA had formally approved TruPick's registration.  Oakes touted the accomplishment, emphasizing the novelty of the '216 Patent technology.

70.     On June 28, 2016, after the Decco Defendants had been working with  MirTech for over a year and a half, Mir met with Dr. Zettler and disclosed the '216 Patent technology for the first time.  That revelation shocked Dr. Zettler.

71.     Effective June 30, 2016, MirTech signed various joint venture documents with the Decco Defendants.  UPL signed a side letter with MirTech as part of the joint venture package and, on information and belief, UPL was involved in negotiating the joint venture.

72.     On July 11, 2016, Decco and MirTech announced the EPA registration of a 1-MCP product, TruPick, for the post-harvest treatment of produce.  According to the press release, Decco/UPL and MirTech had partnered to develop and market TruPick through a joint venture, Essentiv.  The press release describes TruPick as a novel gel form of 1-MCP that can be applied – like SmartFresh – to delay ripening in produce.  On information and belief, UPL was involved in reviewing and authorizing the press release.  The '216 Patent disclosure matches the description of TruPick.  TruPick is an embodiment of what the '216 Patent discloses and claims.

73.     The press release identified Lynn Oakes as the Global Project Manager for Decco Worldwide and General Manager for Essentiv.  Oakes is a former AgroFresh employee who worked with Mir under the Agreements and was therefore aware of the Agreements.  Indeed, Oakes viewed Decco as competing with AgroFresh for Mir's services, despite his knowledge that Mir was under contract with AgroFresh.

74.     The Decco/MirTech announcement was AgroFresh's first notice of MirTech's association with the Decco Defendants and MirTech's attempts to commercialize a 1-MCP product outside of AgroFresh.  At the time AgroFresh learned of the press release,  MirTech continued to work for AgroFresh. Thus, MirTech – despite its contractual obligations to AgroFresh – secretly partnered with Decco to bring TruPick to market in direct competition with SmartFresh, all while AgroFresh continued to pay MirTech under the Agreements. MirTech and the Decco Defendants relied on AgroFresh's data, which AgroFresh funded and developed, to

secure an expedited registration for the TruPick product, allowing them to bring their competing product to market faster.

75.     Following the press release, AgroFresh searched for patents MirTech had filed. AgroFresh discovered that Mir had paid extra to fast-track his application for the '216 Patent in May 2015 and that Decco had registered the trademark for "TruPick" in December 2015.

### *AgroFresh Asks  MirTech to Cure Their Multiple Breaches of the Agreements*

76.     Based on these circumstances, on July 18, 2016, AgroFresh sent a letter to MirTech asking it to cure its multiple breaches of the Agreements and expressing disappointment in its conduct.  AgroFresh informed MirTech that its secret development of 1-MCP technology and its intent to commercialize that technology with Decco violated Sections 8, 12, 13, and 16, among others, of the Agreements and that AgroFresh owned all related patents pursuant to Section 12.1.  AgroFresh informed MirTech that it intended to terminate the Agreements absent immediate efforts to cure these breaches.

77.     On July 19, 2016, MirTech, through counsel, responded to AgroFresh's correspondence.  While it implicitly admitted working with the Decco Defendants to compete with AgroFresh,  MirTech claimed that the October 29, 2015 amendment to the Agreements that Mir originally represented was "for AgroFresh's benefit" gave MirTech the right to "develop, patent, sell and market 1-MCP alone or in collaboration with others."  That quotation misstates the language of the 2015 amendment in a way that does not accurately reflect the intent of the parties.

78.     AgroFresh owns each of the patents and patent applications recounted herein, as well as any technology MirTech has not yet disclosed, related to the Products as defined in the Agreements.  MirTech and the Decco Defendants' practice of the '216 Patent, in particular,

which AgroFresh owns by operation of law, constitutes an infringement and theft of trade secrets.

79.     In addition, on information and belief, the Decco Defendants' making of, use, offer for sale, and sale of the TruPick products infringes other AgroFresh patents, including the '849 Patent and the '068 Patent, which cover stabilization agents and methods associated with stabilization agents.

80.     The Decco Defendants' unlawful making of, use, offer for sale, and sale of the TruPick products has interfered with AgroFresh's contractual relationships with its current customers, and the Decco Defendants have further harmed AgroFresh by preventing relationships between AgroFresh and certain prospective customers.   The Decco Defendants were aware of AgroFresh's customer contracts and prospective business relationships from, among other things, Oakes' and Mir's work with AgroFresh.

81.     In brief, the Decco Defendants should be prevented from using AgroFresh's property for their benefit and ordered to disgorge to AgroFresh any profits they have made from their illegal, infringing activity.

82.     After AgroFresh filed its initial Complaint in this matter, the parties agreed to bifurcate the proceedings and tried Counts I and IV to the Court in March 2017.  Following a three day bench trial, the Court entered an Order and Opinion declaring that AgroFresh owned the '216 Patent technology and rescinding the October 2015 revisions to the Agreements as procured by fraud.

83.     On August 8, 2017, following the Court's ruling, UPL filed an *Inter Partes* Review of the '216 Patent, claiming it is invalid.  UPL's filing of that action was wrongful for

many reasons, including that it had signed an agreement seeking to benefit from the technology and that it had approved statements to the market touting the novelty of the technology.

84.    AgroFresh and MirTech are parties to the Agreements which, with the exception of the Amendment and Third Extension thereto, are valid and binding contracts.[3]

85.    In Section 12.1 of the Agreements, "MirTech hereby assigns *automatically* all rights, and all future rights" to "inventions, discoveries, improvements or other modifications which are related to the Products ('Improvements')."  Exs. A & B § 12.1 (emphasis added). MirTech further agrees to "execute any documents necessary to accomplish such assignment." *Id.*  Mir agreed to be personally bound by Section 12.1.  *Id.* § 12.5.

86.    On December 12, 2013, Mir recognized that different ways to contain and/or encapsulate 1-MCP were related to the Products under the Agreements and constituted "Improvements" by presenting an alternative method of encapsulating 1-MCP.

87.    On November 10, 2014, Mir filed a provisional application to which the '216 Patent claims priority.  Mir did not disclose this filing to AgroFresh, and expedited its consideration by the United States Patent Office so that it would issue quickly.

88.    The '216 Patent, like the purported alternative solution Mir presented in December 2013, teaches stabilization of 1-MCP.  If validated by AgroFresh, it could be used for RipeLock in conjunction with a microperforated bag.  It therefore relates to the Products and is an "Improvement" under Section 12.1 of the Agreements.

---

[3] As detailed below, AgroFresh claims the Amendment to the Commercial Agreement and the Third Extension to the Consultant Agreement are unenforceable due to the MirTech Defendants' fraudulent inducement and failure to disclose facts basic to the transaction.  However, regardless whether or not the Amendment and Third Extension are enforceable, AgroFresh believes the MirTech Defendants have breached the Agreements.

89.     Because the '216 Patent is an "Improvement" related to the Products, it was automatically assigned by operation of law to AgroFresh pursuant to Section 12.1 of the Agreements and 35 U.S.C. § 261.

90.     The patent application indicates that MirTech is the purported assignee of the '216 Patent. The Decco Defendants' press release indicates that their TruPick technology is patented and that Mir developed it.

91.     MirTech and the Decco Defendants have treated the '216 Patent as their own and are bringing a product to market that, on information and belief, embodies the claims of the '216 Patent.

92.     In the Agreements, MirTech agreed, among other things, not to compete with AgroFresh, to maintain AgroFresh's proprietary information in confidence, and to promptly disclose all Improvements related to the Products.  MirTech automatically assigned all such Improvements to AgroFresh.

93.     Mir agreed to be personally bound by the provisions of Sections 12.1 and 8.1 of the Agreements.

94.     MirTech materially breached the Agreements by, among other things:

a.      Secretly developing and failing to disclose Improvements related to the Products to AgroFresh;

b.      Filing patent applications on certain of these Improvements, depriving AgroFresh of the ability to choose whether or not to patent those Improvements or maintain them as trade secrets;

c.      Failing to execute the proper paperwork to reflect the automatic assignment of the patent applications and patents to AgroFresh;

      d.      Failing to maintain AgroFresh's proprietary information in confidence and using that proprietary information to develop competing products;

      e.      Partnering with a competitor to market a competing product; and

      f.      Failing to work exclusively as a consultant to AgroFresh.

MirTech's  multiple breaches of the parties' Agreements have damaged AgroFresh.

95.     MirTech  had a special, fiduciary relationship with AgroFresh.  The parties had a close, multi-year business partnership, and AgroFresh treated Mir as one of its most trusted advisors given his expertise in packaging.  He was effectively treated as a key employee, paid more than many senior executives and invited to holiday functions.  The Agreements themselves recognize the special nature of the relationship by giving AgroFresh the discretion to prevent competition it deems detrimental to the development of the Product and by prohibiting the MirTech Defendants from entering any relationship that could "adversely affect the development or sale of the Product, or conflict with the Services."  Exs. A & B § 8.1.  Mir communicated directly with customers on AgroFresh's behalf and held himself out as AgroFresh's "Global Leader."  MirTech's website described RipeLock as "commercialized in partnership" with AgroFresh.  In addition, Mir and MirTech owed special duties given his access to AgroFresh confidential information.

96.     Both by virtue of the parties' contract and the special nature of the business relationship, MirTech had a duty to disclose all Improvements relating to the Products to AgroFresh and refrain from using those Improvements to compete with AgroFresh.  It recognized this obligation by disclosing other patents and applications related to the Products as well as a modified method of stabilization to AgroFresh in its presentation on December 12,

2013.  Having chosen to present other Improvements, MirTech gave AgroFresh a reasonable expectation that MirTech had presented all of the Improvements related to the Products.

97.     MirTech knew that it was obligated to disclose all potential Improvements to AgroFresh and intentionally failed to do so.  MirTech further knew that its prior representations that the 1-MCP Improvements it had presented constituted its only Improvements related to the Products was false.  Having chosen to speak regarding its development of technologies related to the Products,  MirTech had an obligation to make full disclosure so as not to render its prior statements misleading.

98.     MirTech further had a duty to disclose its work with a competitor, which it knew to be material and basic to the transaction.  Indeed, Decco itself recognized that AgroFresh would "certainly" cut Mir off as a consultant if it learned of his activities.  Instead, MirTech and the Decco Defendants took active steps to conceal their activities, including holding meetings at off site locations to avoid being seen together.

99.     MirTech knew that AgroFresh would terminate the relationship if it learned MirTech was developing 1-MCP technology to compete with SmartFresh, particularly in partnership with a competitor.  Thus, it selectively disclosed its Improvements so that AgroFresh would continue the parties' contractual relationships and MirTech would have continued access to AgroFresh's confidential and proprietary information (i.e., technology, customer lists, etc.) and other benefits of the Agreements.

100.    Mir misrepresented his existing intentions.  He told AgroFresh in October 2015 he was committed to the success of RipeLock while, just a month earlier, he had discussed with the Decco Defendants a plan to give AgroFresh notice he would not continue as a consultant.

101.   These misstatements and omissions were material and essential to the transaction. AgroFresh would have terminated the relationship if it had learned that MirTech had partnered with a competitor to compete with SmartFresh or that MirTech had secretly developed Improvements without disclosing them to AgroFresh.

102.   AgroFresh did not terminate the Agreements and continued making payments to MirTech based on its justifiable reliance that MirTech was following its contractual obligations and disclosing to AgroFresh all of its Improvements and had no plans to compete with AgroFresh.

103.   MirTech's  omissions and misrepresentations damaged AgroFresh by allowing MirTech to continue receiving payment under the Agreements and by permitting MirTech to obtain a head start in registering and marketing its competing product, among other things.

104.   MirTech's fraud was gross, oppressive, aggravated, involved acts of vindictiveness, malice, and a wanton disregard for AgroFresh's rights, and involved a severe breach of trust and confidence.

105.   In October 2015, the parties began negotiating an amendment to the Commercial Agreement and a Third Extension to the Consultant Agreement.  By that point, MirTech had already filed a provisional patent application for the '216 Patent and filed the '620 Application.

106.   As described above, the parties had a special relationship that gave rise to a duty to disclose material facts in connection with these discussions.

107.   MirTech knew that it was obligated to disclose all Improvements to AgroFresh and intentionally failed to do so.  Instead, MirTech selectively disclosed certain Improvements to AgroFresh that were of no commercial value and failed to disclose other Improvements it secretly intended to commercialize in competition with AgroFresh.  Having chosen to speak

regarding its development of technologies related to the Products, MirTech had an obligation to make full disclosure regarding all such technologies.

108.    In addition, on October 28, 2015, Mir proposed revisions to Attachment A to the Agreements that he intended to insulate his misconduct, claiming that they were interposed for "AgroFresh's benefit."  That statement was materially and intentionally misleading.

109.    By only selectively disclosing its Improvements related to the Products and misrepresenting the intention of its proposed revisions to the Agreements,  MirTech intended to induce AgroFresh to extend and alter the parties' contractual relationships so it could reap the significant financial benefits of the Agreements.  MirTech knew that AgroFresh would decline to extend the relationship if it learned MirTech was developing technology to compete with SmartFresh, particularly in connection with a competitor.   In addition, MirTech knew that AgroFresh would never agree to Mir's proposed revisions to the extent they were intended to insulate his prior misconduct.

110.    These misstatements and omissions were material and essential to the transaction. AgroFresh executed the Amendment to the Commercial Agreement and the Third Extension to the Consultant Agreement based on its justifiable reliance upon the representation that MirTech (1) was acting for AgroFresh's benefit, (2) had disclosed all of its Improvements related to the Products, and (3) had no plans to compete with AgroFresh.

111.    MirTech's  omissions and misrepresentations damaged AgroFresh by extending the Consulting Agreement, by allowing MirTech to continue receiving payment under the Agreements, and by permitting MirTech and the Decco Defendants to obtain a head start in registering and marketing their competing product, among other things.

112.    AgroFresh would not have entered into the Amendment or the Third Extension had MirTech disclosed its intentions and/or itssecret partnership with the Decco Defendants.

113.    As set forth herein, MirTech failed to disclose material facts surrounding the 2015 Amendment to the Commercial Agreement and the Third Extension to the Consultant Agreement, including but not limited to the fact that they had secretly filed the application for the '216 Patent and entered a commercial venture with the Decco Defendants.  These facts were basic to the transaction.  MirTech knew that AgroFresh would not have extended the Consulting Agreement or executed the amendment to the Commercial Agreement had it known of MirTech's secret activities.

114.    MirTech knew that its failure to disclose these facts would justifiably induce AgroFresh to execute the Amendment and Third Extension and to continue the parties' contractual relationship.

115.    MirTech had a duty to exercise reasonable care to disclose the material facts in connection with the Amendment and the Third Extension.

116.    MirTech knew that AgroFresh entered the Amendment and Third Extension under a mistake as to these critical facts.

117.    Because of the parties' relationship, the customs of the trade, and other circumstances, AgroFresh would have expected MirTech to disclose these facts.

**COUNT I**
**(Unfair Competition – All Defendants)**

118.    AgroFresh incorporates paragraphs 1 through 117 by reference as if restated fully herein.

119.     AgroFresh and the Decco Defendants are engaged in business or trade.   The TruPick product offered by the Decco Defendants competes directly with AgroFresh's SmartFresh product.

120.     On information and belief, the Decco Defendants have engaged in unfair competition by, among other things, misappropriating AgroFresh's confidential information, from which AgroFresh derives independent economic value, and its technology for their commercial advantage, using that information to develop, market, and sell TruPick, and infringing AgroFresh's patents.

121.     The Decco Defendants have engaged in unfair competition through their tortious, intentional interference with the MirTech Agreements, forcing AgroFresh to compete with its own technology (TruPick), and most recently, through UPL's predatory filing of an Inter Partes Review of the '216 Patent.

122.     It would be unjust to allow the Decco Defendants to retain the benefit of AgroFresh's technology without paying fair value for it.

123.     The Decco Defendants' unfair competition has damaged AgroFresh.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus costs, interest, punitive damages, and attorneys' fees, require the Decco Defendants to compensate AgroFresh or disgorge any ill-gotten gains, enter permanent injunctive relief, and enter all other just and proper relief.

## COUNT II
### (Unjust Enrichment – All Defendants)

124.     AgroFresh incorporates paragraphs 1 through 123 by reference as if restated fully herein.

29

125.    AgroFresh's technology has conferred a benefit on the Decco Defendants, which are using that technology to take sales and market share from AgroFresh.

126.    The Decco Defendants are aware of AgroFresh's rights in the technology, are aware of the benefit they have received, and have taken the benefit of AgroFresh's technology for their own.

127.    Under these circumstances, it would be inequitable for the Decco Defendants to retain the benefit without paying AgroFresh fair value for it.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus costs and interest, require the Decco Defendants to disgorge any ill-gotten gains, and enter all other just and proper relief.

## COUNT III
### (Direct and Indirect Infringement of the '216 Patent – All Defendants)

128.    AgroFresh incorporates paragraphs 1 through 127 by reference as if restated fully herein.

129.    As set forth, AgroFresh is the owner by operation of law and by assignment of all right, title, and interest in the '216 Patent.

130.    On information and belief, by making, using, selling, and/or offering for sale the TruPick product, the Decco Defendants have infringed and continue to infringe at least one claim of the '216 Patent in violation of 35 U.S.C. § 271(a), (b), and (c).

131.    The Decco Defendants have actual notice of the patent and, on information and belief, that their product infringes the '216 Patent, having marketed it as, *inter alia*, "1-methylcyclopropene (1-MCP) in a novel microadsorbent technology" purportedly "the first gel

formulation in water soluble pouches" and having included the '216 patent number on the label of TruPick.

132.    On information and belief, by making, using, offering for sale and/or selling the TruPick product, the Decco Defendants directly infringe at least claims 1 and 6, and contributorily infringe at least claim 13, by selling a material for use in practicing a patented process, constituting a material part of the invention, knowing the same to be made or especially adapted for use in infringement of the '216 Patent, and not a staple article or commodity of commerce suitable for a substantial non-infringing use.

133.    The claims of the '216 patent, including claims 1, 6, and 13, are not limited to any particular use. Claim 1 is drawn to an adsorption complex; claim 6 is drawn to a kit; and claim 13 is drawn to a method. If a party makes, uses, sells, offers to sell, or imports the adsorption complex of claim 1, it infringes claim 1 without regard to how or even whether the adsorption complex is used. If a party makes, uses, sells, offers to sell, or imports the kit of claim 6, it infringes claim 6 without regard to how or even whether the kit is used. If a party uses the method of claim 13, it infringes claim 13 without regard to the purpose for which the method is used. Thus, there is no substantial non-infringing use of the inventions claimed in claims 1, 6, and 13.

134.    In response to an Interrogatory served in this case asking Decco to state any and all reasons it does not infringe the Asserted Patents, Decco did not state either (1) the absence of direct infringers or (2) a substantial non-infringing use of TruPick as a reason that it does not infringe the '216 patent. Based on Decco's sworn response, it is at least a reasonable inference that third parties (as described in more detail further below) directly infringe the '216 patent and that TruPick does not have any substantial non-infringing uses.

31

135.    The Decco Defendants' marketing literature and other documents do not propose any non-infringing use for TruPick, substantial or otherwise. Rather, the only proposed use for TruPick identified in the Decco Defendants' marketing literature and other documents is its use to delay ripening of produce. In other words, TruPick is marketed solely for use in delaying the ripening of produce, an infringing use.

136.    With knowledge of the patent and AgroFresh's ownership thereof, moreover, the Decco Defendants have actively and specifically intended to induce third party applicators and customers to infringe these and/or other claims.

137.    The Decco Defendants use third party applicators to apply TruPick to produce, in particular to apples. The third party applicators directly infringe the '216 Patent when they apply TruPick, both by using the product and by following the claimed methods. The Decco Defendants give the third party applicators training and detailed instructions on how to apply TruPick, which training and instructions induce the applicators to follow the claimed methods of the '216 patent.

138.    The Decco Defendants sold TruPick to at least the specific third party customers identified in DECCO-83535 of Exhibit J and the customers directly infringed the '216 Patent by using TruPick to delay ripening of their produce, in particular apples.

139.    The Decco Defendants' infringement of the '216 Patent, with knowledge of AgroFresh's ownership of the '216 Patent and that the technology contained therein was developed in blatant disregard of the MirTech Defendants' confidential relationship with AgroFresh, has been and continues to be willful.  Such willful infringement entitles AgroFresh to enhanced damages pursuant to 35 U.S.C. § 284.

140.    The Decco Defendants' willful infringement and blatant disregard of the MirTech Defendants' confidential relationship with AgroFresh, among other things, render this case exceptional and justify the award of attorneys' fees pursuant to 35 U.S.C. § 285.

141.    AgroFresh has been damaged by Defendants' infringement of the '216 Patent and has suffered and will continue to suffer irreparable injury unless and until this Court enjoins the infringement.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus costs, interest, treble damages, attorneys' fees, and interest, require the Decco Defendants to disgorge any ill-gotten gains, enter permanent injunctive relief, and enter all other just and proper relief.

### COUNT IV
**(Direct and Indirect Infringement of the '849 Patent – All Defendants)**

142.    AgroFresh incorporates paragraphs 1 through 141 by reference as if restated fully herein.

143.    AgroFresh is the owner of all right, title, and interest in the '849 Patent.

144.    On information and belief, by making, using, selling, and/or offering for sale the TruPick product, the Decco Defendants have infringed and continue to infringe at least one claim of the '849 Patent, in violation of 35 U.S.C. § 271(a), (b), and (c).

145.    On information and belief, the Decco Defendants have actual notice of the '849 Patent and that their product infringes the '849 Patent, having marketed it as, *inter alia*, "1-methylcyclopropene (1-MCP) in a novel microadsorbent technology."

146.    On information and belief, the Decco Defendants infringe at least claim 1 under the doctrine of equivalents.  With knowledge of the '849 Patent and their infringement of this

33

patent, the Decco Defendants also specifically intend and have induced third party applicators and customers to infringe at least claim 1 of the '849 Patent.

147.    Claim 1 of the '849 patent is drawn to a complex and is not limited to any particular use. If a party makes, uses, sells, offers to sell, or imports the complex of claim 1, it infringes claim 1 without regard to how or even whether the complex is used. Thus, there is no substantial non-infringing use of the inventions claimed in claim 1.

148.    The Decco Defendants also contributorily infringe at least claim 10, by selling a material for use in practicing a patented process, constituting a material part of the invention, knowing the same to be made or especially adapted for use in infringement of the '849 Patent, and not a staple article or commodity of commerce suitable for a substantial noninfringing use.

149.    Claim 10 of the '849 patent is drawn to a method of inhibiting an ethylene response in a plant. The Decco Defendants' marketing literature and other documents do not propose any non-infringing use for TruPick, substantial or otherwise. Rather, the only proposed use for TruPick identified in the Decco Defendants' marketing literature and other documents is to inhibit an ethylene response in a plant. In other words, TruPick is marketed solely for use in inhibiting an ethylene response in a plant, an infringing use.

150.    In response to an Interrogatory served in this case asking Decco to state any and all reasons it does not infringe the Asserted Patents, Decco did not state either (1) the absence of direct infringers or (2) a substantial non-infringing use of TruPick as a reason that it does not infringe the '849 patent. Based on Decco's sworn response, it is at least a reasonable inference that third parties (as described in more detail further below) directly infringe the '849 patent and that TruPick does not have any substantial non-infringing uses.

151.    The Decco Defendants use third party applicators to apply TruPick to produce, in particular to apples. The third party applicators directly infringe the '849 Patent when they apply TruPick, both by using the product and by following the claimed methods. The Decco Defendants give the third party applicators training and detailed instructions on how to apply TruPick, which training and instructions induce the applicators to follow the claimed methods of the '849 patent.

152.    The Decco Defendants sold TruPick to at least the specific third party customers identified in DECCO-83535 of Exhibit J  and the customers directly infringed the '849 Patent by using TruPick to inhibit the ethylene response in a plant, in particular apples.

153.    The Decco Defendants' infringements of the '849 Patent have been and continue to be willful.  The Decco Defendants are aware that the TruPick product includes a complex of 1-MCP and the equivalent of a molecular  encapsulation agent, as set forth in claim 1 and that, as such, there is infringement.  Such willful infringement entitles AgroFresh to enhanced damages pursuant to 35 U.S.C. § 284.

154.    The Decco Defendants' willful infringement and blatant disregard of MirTech's confidential relationship with AgroFresh, among other things, render this case exceptional and justify the award of attorneys' fees pursuant to 35 U.S.C. § 285.

155.    AgroFresh has been damaged by the Decco Defendants' infringements of the '849 Patent and has suffered and will continue to suffer irreparable injury unless and until this Court enjoins the infringement.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus costs, interest, treble damages, attorneys' fees, and interest, require the Decco Defendants to

disgorge any ill-gotten gains, enter permanent injunctive relief, and enter all other just and proper relief.

## COUNT V
### (Direct and Indirect Infringement of the '068 Patent – All Defendants)

156.     AgroFresh incorporates paragraphs 1 through 155 by reference as if restated fully herein.

157.     AgroFresh is the owner of all right, title, and interest in the '068 Patent.

158.     On information and belief, by making, using, selling, and/or offering for sale the TruPick product, the Decco Defendants have infringed and continue to infringe at least one claim of the '068 Patent, in violation of 35 U.S.C. § 271(a), (b), and (c).

159.     On information and belief, the Decco Defendants have actual notice of the '068 Patent and that their product infringes the '068 Patent, having marketed it as, *inter alia*, "1-methylcyclopropene (1-MCP) in a novel microadsorbent technology."

160.     On information and belief, the Decco Defendants infringe at least claim 1 under the doctrine of equivalents.  With knowledge of the '068 Patent and their infringement of this patent, the Decco Defendants also specifically intend and have induced third party customers to infringe at least claim 1 of the '068 Patent.

161.     The Decco Defendants also contributorily infringe at least claim 6, by selling a material for use in practicing a patented process, constituting a material part of the invention, knowing the same to be made or especially adapted for use in infringement of the '068 Patent, and not a staple article or commodity of commerce suitable for a substantial non-infringing use.

162.     Claim 1 of the '068 patent is drawn to a complex and is not limited to any particular use.  If a party makes, uses, sells, offers to sell, or imports the complex of claim 1, it

infringes claim 1 without regard to how or even whether the complex is used. Thus, there is no substantial non-infringing use of the inventions claimed in claim 1.

163.    Claim 6 of the '068 patent is drawn to a method of inhibiting an ethylene response in a plant. The Decco Defendants' marketing literature and other documents do not propose any non-infringing use for TruPick, substantial or otherwise. Rather, the only proposed use for TruPick identified in the Decco Defendants' marketing literature and other documents is to inhibit an ethylene response in a plant. In other words, TruPick is marketed solely for use in inhibiting an ethylene response in a plant, an infringing use.

164.    In response to an Interrogatory served in this case asking Decco to state any and all reasons it does not infringe the '068 Patent, Decco did not state either (1) the absence of direct infringers or (2) a substantial non-infringing use of TruPick as a reason that it does not infringe the '068 patent. Based on Decco's sworn response, it is at least a reasonable inference that third parties (as described in more detail further below) directly infringe the '068 patent and that TruPick does not have any substantial non-infringing uses.

165.    The Decco Defendants use third party applicators to apply TruPick to produce, in particular to apples. The third party applicators directly infringe the '068 Patent when they apply TruPick, both by using the product and by following the claimed methods. The Decco Defendants give the third party applicators training and detailed instructions on how to apply TruPick, which training and instructions induce the applicators to follow the claimed methods of the '068 patent.

166.    The Decco Defendants sold TruPick to at least the specific third party customers identified in DECCO-83535 of Exhibit J and the customers directly infringed the '068 Patent by using TruPick to inhibit the ethylene response in a plant, in particular apples.

167.    The Decco Defendants' infringements of the '068 Patent have been and continue to be willful.  The Decco Defendants are aware that their TruPick product offers a product that includes a complex of 1-MCP and the equivalent of a molecular encapsulation agent, as set forth in claim 1, and that, as such, there is infringement.  Such willful infringement entitles AgroFresh to enhanced damages pursuant to 35 U.S.C. § 284.

168.    The Decco Defendants' willful infringement and blatant disregard of MirTech's confidential relationship with AgroFresh, among other things, render this case exceptional and justify the award of attorneys' fees pursuant to 35 U.S.C. § 285.

169.    AgroFresh has been damaged by the Decco Defendants' infringements of the '068 Patent and has suffered and will continue to suffer irreparable injury unless and until this Court enjoins the infringement.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus costs, interest, treble damages, attorneys' fees, and interest, require the Decco Defendants to disgorge any ill-gotten gains, enter permanent injunctive relief, and enter all other just and proper relief.

## COUNT VI
## DEFENDANTS' TRADE SECRETS ACT VIOLATION
### (18 U.S.C. § 1832 et seq. – All Defendants)

170.    AgroFresh incorporates paragraphs 1 through 169 by reference as if restated fully herein.

171.    AgroFresh is the rightful owner of the '216 Patent technology.   Under the Agreements, MirTech should have disclosed the '216 Patent technology prior to filing the '216 Patent provisional application, leaving to AgroFresh the decision whether to disclose the

technology through a patent application or hold it as a trade secret.

172.    Had AgroFresh decided to maintain the '216 Patent technology as a trade secret, it would have provided AgroFresh an advantage over competitors who do not know or use that technology.   The technology was not known or readily ascertainable by others.   AgroFresh would have derived independent economic value from the '216 Patent technology but for MirTech and the Decco Defendants' misappropriation and disclosure of the technology.   In addition, had AgroFresh maintained the '216 Patent technology as a trade secret, it would have taken reasonable steps to guard the secrecy of that information.

173.    In addition, AgroFresh has a significant amount of know how concerning the process for working with 1-MCP, as well as industry information and customer lists that are not readily ascertainable.   AgroFresh derives independent economic value from this information.   It takes reasonable steps to guard the secrecy of that information, including, among other things, by requiring those with access to sign confidentiality agreements, protecting its lab space by only allowing those with badges to enter, and requiring visitors to be escorted.

174.    Without permission, MirTech and the Decco Defendants wrongfully conveyed AgroFresh's trade secret information and later made disclosures to the general public by filing patent applications around the world disclosing the trade secrets.   The Decco Defendants also misappropriated AgroFresh's trade secret information by soliciting that information from Mir and using it to build their competing 1-MCP business.

175.    The Decco Defendants acted through unlawful means by breaching and soliciting MirTech to breach the Agreements, among other things.

176.    Upon information and belief, such conduct continues to the present day.

177.    The Decco Defendants' actions were and are malicious and willful and have

substantially harmed AgroFresh.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus costs and interest, treble damages, and attorneys' fees and interest, impose the statutory fine set forth in 18 U.S.C. § 1832(b) for AgroFresh's expenses for research and design, require the Decco Defendants to disgorge any ill-gotten gains, enter permanent injunctive relief, and enter all other just and proper relief.

**COUNT VII**
**PENNSYLVANIA TRADE SECRETS ACT VIOLATION**
**(12 Pa. C.S.A. § 5302 et seq. – All Defendants)**

178.    AgroFresh incorporates paragraphs 1 through 177 by reference as if restated fully herein.

179.    AgroFresh is the rightful owner of the '216 Patent technology.   Under the Agreements, MirTech should have disclosed the '216 Patent technology prior to filing the '216 Patent provisional application, leaving to AgroFresh the decision whether to disclose the technology through a patent application or hold it as a trade secret.

180.    Had AgroFresh decided to maintain the '216 Patent technology as a trade secret, it would have provided AgroFresh an advantage over competitors who do not know or use that technology.   The technology was not known or readily ascertainable by others.   AgroFresh would have derived independent economic value from the '216 Patent technology but for MirTech and the Decco Defendants' misappropriation and later disclosure of the technology.   In addition, had AgroFresh maintained the '216 Patent technology as a trade secret, it would have taken reasonable steps to guard the secrecy of that information.

181.    In addition, AgroFresh has a significant amount of know how concerning the

process for working with 1-MCP, as well as industry information and customer lists that are not readily ascertainable. AgroFresh derives independent economic value from this information. It takes reasonable steps to guard the secrecy of that information, including, among other things, by requiring those with access to sign confidentiality agreements, protecting its lab space by only allowing those with badges to enter, and requiring visitors to be escorted.

182.    Without permission, MirTech and the Decco Defendants wrongfully conveyed AgroFresh's trade secret information to the general public by filing patent applications around the world disclosing the trade secrets. The Decco Defendants also misappropriated AgroFresh's trade secret information by soliciting that information from Mir and using it to build their competing 1-MCP business.

183.    The Decco Defendants acted through unlawful means by breaching and soliciting MirTech to breach the Agreements and their duty to maintain secrecy, among other things.

184.    Upon information and belief, such conduct continues to the present day.

185.    The Decco Defendants' actions were and are malicious and willful and have substantially harmed AgroFresh.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus costs interest, exemplary damages, and attorneys' fees and interest, require Defendants to disgorge any ill-gotten gains, enter injunctive relief to eliminate the Decco Defendants' commercial advantage, and enter all other just and proper relief.

**COUNT VIII**
**(Tortious Interference with the MirTech Agreements and Business Relationship – The Decco Defendants)**

186.    AgroFresh incorporates paragraphs 1 through 185 by reference as if restated fully herein.

187.    The Agreements, with the exception of the Third Extension to the Consultant Agreement and Amendment to the Commercial Agreement, are valid and binding contracts.[4]

188.    Each of the Decco Defendants was aware of the Agreements between AgroFresh and MirTech by virtue of Oakes' former employment with AgroFresh and its then-parent, The Dow Chemical Company.  The Decco Defendants were also aware of AgroFresh's existing contractual relationship and its prospective, advantageous future business relationships with Mir and MirTech. Specifically, Sagar Kaushik, then-Chief Operating Officer of UPL, directed Decco to move forward with the joint venture with Mir and MirTech despite its knowledge of the AgroFresh relationship.

189.    The Decco Defendants intentionally and improperly interfered with the Agreements and with AgroFresh's business relationship and prospective business relationships with Mir and MirTech, and in doing so, intended to harm AgroFresh.

190.    This interference was independently wrongful because, among other things, it involved misappropriation of AgroFresh's property, theft of trade secrets, conversion, conspiracy to commit fraud, filing a predatory *Inter Partes* Review, and economic espionage in violation of federal criminal law, including 18 U.S.C. § 1831.  The Decco Defendants specifically intended to harm the relationship between AgroFresh and MirTech and to cause MirTech to breach the

---

[4] Although the Third Extension to the Consulting Agreement and the Amendment to the Commercial Agreement are invalid and induced by fraud, the Decco Defendants induced Mir to breach before those documents were executed.  This claim thus does not turn on the validity, invalidity, or interpretation of the Third Extension or the Amendment.

42

Agreements.  Indeed, Oakes viewed the Decco Defendants as competing for Mir's services even though Decco knew Mir was under contract with AgroFresh.

191.    The Decco Defendants' actions lacked privilege or justification and were undertaken for the purpose of causing MirTech to breach the Agreements and discontinue the business relationship.

192.    The Decco Defendants' wrongful interference induced MirTech to breach the Agreements.  MirTech would have continued performing under the Agreements and would have continued its business relationship with AgroFresh, and AgroFresh would have benefitted from that performance and the future business relationships, but for the Decco Defendants' wrongful interference.

193.    The Decco Defendants' interferences have damaged AgroFresh.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus costs, interest, punitive damages, attorneys' fees, and interest, require the Decco Defendants to disgorge any ill-gotten gains, and enter all other just and proper relief.

## COUNT IX
### (Tortious Interference with Customer Contracts – The Decco Defendants)

194.    AgroFresh incorporates paragraphs 1 through 193 by reference as if restated fully herein.

195.    AgroFresh had valid, enforceable, and valuable contracts with its customers to sell them its 1-MCP products including SmartFresh, RipeLock, and Harvista.  Upon information and belief, each of the Decco Defendants was aware of the contracts between AgroFresh and its customers by virtue of Oakes' former employment with AgroFresh and its then-parent, The Dow Chemical Company.

43

196.    Additionally, through Mir's work with AgroFresh and his involvement with sales to AgroFresh customers, Mir learned of AgroFresh's customer contacts.  Upon information and belief, Mir disclosed those contractual relations to Decco and UPL and unlawfully used that information through their joint venture.

197.    The Decco Defendants intentionally and improperly interfered with the contractual relationships AgroFresh had with its customers by seeking those customers out for the marketing, trial testing, and sale of TruPick products, and in doing so, intended to harm AgroFresh.

198.    This interference was independently wrongful because, among other things, it involved misappropriation of AgroFresh's property, theft of trade secrets, conversion, conspiracy to commit fraud, filing a predatory *Inter Partes* Review, and economic espionage in violation of federal criminal law, including 18 U.S.C. § 1831.

199.    The Decco Defendants' actions lacked privilege or justification and were undertaken for the purpose of causing AgroFresh customers to discontinue the business relationship with AgroFresh.

200.    The Decco Defendants' wrongful interference induced the AgroFresh customers to breach or terminate their contracts. AgroFresh customers would have continued their business relationship with AgroFresh but for the Decco Defendants' wrongful interference.

201.    The Decco Defendants' interference has damaged AgroFresh.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus costs, interest, punitive damages, attorneys' fees, and interest, require the Decco Defendants to disgorge any ill-gotten gains, and enter all other just and proper relief.

**COUNT X**
**(Tortious Interference with Prospective Business Relations – The Decco Defendants)**

202.    AgroFresh incorporates paragraphs 1 through 201 by reference as if restated fully herein.

203.    AgroFresh had prospective business relations with certain potential customers, to whom it had offered its 1-MCP products for sale and who expressed an intent to enter a contract with AgroFresh.

204.    Each of the Decco Defendants was aware of the prospective contracts between AgroFresh and its customers by virtue of Oakes' former employment with AgroFresh and its then-parent, The Dow Chemical Company.

205.    Additionally, through Mir's work with AgroFresh and his involvement with sales and marketing to AgroFresh customers and potential customers, Mir learned of AgroFresh's potential customers. Upon information and belief, Mir disclosed those prospective relations to Decco and UPL who then unlawfully used that information through their joint venture.

206.    The Decco Defendants intentionally and improperly interfered with the prospective relationships AgroFresh had nurtured with customers and potential customers by Decco's seeking out those third parties for the marketing and sale of TruPick products, and in doing so, intended to harm AgroFresh.

207.    This interference was independently wrongful because, among other things, it involved misappropriation of AgroFresh's property, theft of trade secrets, conversion, conspiracy to commit fraud, and economic espionage in violation of federal criminal law, including 18 U.S.C. § 1831.

208.    But for the Decco Defendants' wrongful interference, certain potential customers would have entered into contractual business relationships with AgroFresh.

209.    The Decco Defendants' actions lacked any business competitors' privilege or other justification because their actions were undertaken with wrongful means, including fraud and theft of AgroFresh's proprietary information.

210.    Additionally, UPL has engaged in predatory means through pursuing, in bad faith, *Inter Partes* Review of the '216 Patent. Despite UPL's support of Mir during prosecution of the '216 Patent and its public professions touting the novelty of the technology, UPL aims to destroy the '216 Patent's value since it is now owned by AgroFresh by this Court's order.

211.    The Decco Defendants' interference has damaged AgroFresh.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus costs, interest, punitive damages, attorneys' fees, and interest, require the Decco Defendants to disgorge any ill-gotten gains, and enter all other just and proper relief.

## COUNT XI
### (Conversion – All Defendants)

212.    AgroFresh incorporates paragraphs 1 through 211 by reference as if restated fully herein.

213.    AgroFresh is the rightful owner of the '216 Patent.

214.    The Decco Defendants have appropriated the technology in the '216 Patent for their own and are acting to deprive AgroFresh of AgroFresh's right, use, and ownership of the '216 Patent through Defendants' development, marketing, and sale of TruPick.

215.    The Decco Defendants' deprivation of AgroFresh's ownership rights and interests is without AgroFresh's consent and without legal justification.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus

costs, interest, punitive damages, attorneys' fees, and interest, require the Decco Defendants to disgorge any ill-gotten gains, and enter all other just and proper relief.

**COUNT XII**
**(Civil Conspiracy – All Defendants)**

216.    AgroFresh incorporates paragraphs 1 through 215 by reference as if restated fully herein.

217.    The Decco Defendants and MirTech have combined or agreed to develop, market, and sell TruPick.  Further, UPL executives engineered the Decco/Mir joint venture and the TruPick strategy.

218.    The Decco Defendants' agreement to develop, market, and sell TruPick is unlawful for the reasons set forth herein, including but not limited to the fact that it constitutes unfair competition, conversion, infringes AgroFresh's patents, and is built on fraud and misappropriation of AgroFresh's confidential information.

219.    The Decco Defendants' intended to do an unlawful act with malice, i.e., with the intent and purpose to injure AgroFresh's business, and without justification.

220.    The Decco Defendants have taken numerous overt acts in furtherance of the conspiracy, including, but not limited to, registering TruPick and soliciting customers.

221.    The Decco Defendants' conspiracy has damaged AgroFresh.

WHEREFORE, AgroFresh respectfully requests that the Court enter judgment against the Decco Defendants and in favor of AgroFresh for the full amount of AgroFresh's damages, plus costs, interest, punitive damages, attorneys' fees, and interest, require the Decco Defendants to disgorge any ill-gotten gains, and enter all other just and proper relief.

**JURY DEMAND**

AgroFresh demands a trial by jury on all claims so triable.

47

Dated:  February 18, 2019
**Public Version filed on February 25, 2019**

Respectfully submitted,

*/s/  Chad S.C. Stover*
Chad S.C. Stover (No. 4919)
Regina S.E. Murphy (No. 5648)
BARNES & THORNBURG LLP
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone:  (302) 300-3474
Facsimile:  (302) 300-3456
E-mail:  cstover@btlaw.com
         gigi.murphy@btlaw.com

Of counsel:

Robert D. MacGill (admitted *pro hac vice*)
Lynn C. Tyler (admitted *pro hac vice*)
Deborah Pollack-Milgate (admitted *pro hac vice*)
Joseph T. Wendt (admitted *pro hac vice*)
Jessica M. Lindemann (admitted *pro hac vice*)
Matthew T. Ciulla (admitted *pro hac vice*)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:  (317) 236-1313
Facsimile:  (317) 231-7433
E-mail: rmacgill@btlaw.com
         ltyler@btlaw.com
         dmilgate@btlaw.com
         jwendt@btlaw.com
         jessica.lindemann@btlaw.com
         matthew.ciulla@btlaw.com

*Attorneys for AgroFresh Inc.*