**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AGROFRESH INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-662-MN |
| | ) | |
| ESSENTIV LLC, DECCO U.S. POST-HARVEST, INC., CEREXAGRI, INC. d/b/a DECCO POST-HARVEST, and UPL, LTD., | ) ) ) | **REDACTED VERSION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**[PROPOSED] FINAL PRETRIAL ORDER**

## TABLE OF CONTENTS

**Page**

I.  STATEMENT OF THE NATURE OF THE ACTION ..................................................... 1

II.  FEDERAL JURISDICTION .......................................................................................... 5

III.  STATEMENT OF FACTS THAT ARE ADMITTED AND REQUIRE NO PROOF ...... 6

IV.  ISSUES OF FACT REMAINING TO BE LITIGATED .................................................. 6

V.  STATEMENT OF ISSUES OF LAW REMAINING TO BE LITIGATED..................... 6

VI.  EXHIBITS ..................................................................................................................... 6

   Exhibits and Demonstratives for Opening Statements ....................................... 8

   Trial Exhibits for Direct Examination ................................................................. 8

   Demonstratives for Direct Examination ............................................................... 9

VII.  WITNESSES................................................................................................................ 10

VIII.  AGROFRESH'S STATEMENT OF INTENDED PROOF AND DETAILS OF
   DAMAGES CLAIMED AND OTHER RELIEF SOUGHT........................................... 12

IX.  DEFENDANTS' STATEMENT OF INTENDED PROOFS ......................................... 16

X.  AMENDMENTS TO THE PLEADINGS ...................................................................... 21

XI.  GOOD FAITH EFFORT TO RESOLVE BY SETTLEMENT....................................... 21

XII.  MOTIONS IN LIMINE ................................................................................................ 21

XIII.  OTHER ITEMS ............................................................................................................ 21

XIV.  OTHER ITEMS TO BE ADDRESSED AT THE PRETRIAL CONFERENCE............. 23

   A.  Witness Lists............................................................................................... 23

   B.  Document Branding..................................................................................... 25

   C.  Irrelevant and Undisclosed Tortious Interference Theories ....................... 26

   D.  Agrofresh's General Statement Regarding Subsections "E" And "F" ....... 26

   E.  Expanded, Withdrawn, and Non-Specific "Trade Secrets"........................ 28

   F.  Undisclosed Costs and Damages Theories................................................. 31

   G.  Scope of Rebuttal Case............................................................................... 33

## I.      STATEMENT OF THE NATURE OF THE ACTION

1.      Plaintiff AgroFresh filed its Complaint (D.I. 1) in this matter on August 3, 2016, against Defendants MirTech, Inc. and Dr. Nazir Mir ("the MirTech Defendants") as well as Essentiv, LLC, Decco U.S. Post-Harvest, Inc., and Cerexagri, Inc. d/b/a Decco Post-Harvest. AgroFresh filed claims for (a) declaratory relief, including an order declaring its ownership of U.S. Patent No. 9,394,216 (the '216 Patent) and related technology (Count I), (b) breach of contract by the MirTech Defendants (Count II), (c) fraud by the MirTech Defendants (Count III), (d) fraudulent inducement by the MirTech Defendants (Count IV), (e) rescission of certain contracts with the MirTech Defendants (Count V), (f) constructive fraud by the MirTech Defendants (Count VI), (g) unfair competition by all defendants (Count VII), (h) breach of the duty of loyalty/usurpation of corporate opportunity by the MirTech Defendants (Count VIII), (i) unjust enrichment by all defendants (Count IX), (j) a declaration of ownership of U.S. Patent Application No. 2014/0326620 and related technology (Count X), (k) a declaration of ownership of U.S. Patent No. 8,822,382 and related technology (Count XI), (l) a declaration of ownership of U.S. Patent No. 8,802,140 and related technology (Count XII), (m) a declaration of ownership of U.S. Patent No. 9,005,657 and related technology (Count XIII), (n) direct and indirect infringement of the '216 Patent by all defendants (Count XIV), (o) direct and indirect infringement of the '849 Patent[1] by all defendants (Count XV), (p) direct and indirect infringement of the '068 Patent by all defendants (Count XVI), (q) tortious interference by Essentiv, Decco, and Cerexagri (Count XVII), (r) conversion by all defendants (Count XVIII), (s) and civil conspiracy by all defendants (Count XIX).

---

[1] The '849 and '068 patents are referred to herein as the "Daly patents."

2.      On October 10, 2016, the parties jointly moved the Court to bifurcate and expedite Counts I and IV of the Complaint—AgroFresh's claim of ownership of the '216 Patent and fraudulent inducement claim.  (D.I. 18.)

3.      On October 12, 2016, the Court granted the parties' motion to bifurcate, expedited consideration of Counts I and IV, and entered a schedule with trial to begin on February 22, 2017. (D.I. 26.)

4.      In Phase I, AgroFresh tried its claims of ownership of the '216 patent technology and fraudulent inducement in a three-day bench trial before Judge Robinson from March 20 to 22, 2017.  Following the Phase I trial, Judge Robinson entered her Opinion (D.I. 97) declaring that AgroFresh is the owner of the '216 patent. More specifically, Judge Robinson held that, under the 2011 Commercial and Consulting Agreements between AgroFresh and the MirTech Defendants, "[a]ll improvements related to the Product are automatically assigned to AgroFresh" and that "[t]he '216 patent technology is an improvement related to the Product." D.I. 97 at 18-21 and 32-33. Judge Robinson further held that Mir had fraudulently induced AgroFresh into executing the "Third Extension" to the agreements "by not disclosing either the '216 patent technology or his business relationship with Decco," and deemed that extension rescinded.  *Id*. at 34.

5.      On August 8, 2017, UPL filed a request for *inter partes* review (IPR) with the USPTO, asserting that all claims of the '216 patent are unpatentable.

6.      On August 18, 2017, AgroFresh filed its First Amended Complaint.  (D.I. 106.) The First Amended Complaint added UPL Ltd. as a defendant.  The First Amended Complaint asserted the following Counts:

- Count I (Declaration of Ownership – The '216 Patent)

- Count II (Breach of Contract – The MirTech Defendants)

2

- Count III (Fraud – The MirTech Defendants)

- Count IV (Fraudulent Inducement – The MirTech Defendants)

- Count V (Rescission – The MirTech Defendants)

- Count VI (Constructive Fraud – The MirTech Defendants)

- Count VII (Unfair Competition – All Defendants)

- Count VIII (Breach of Duty of Loyalty/Usurpation of Corporate Opportunity – The MirTech Defendants)

- Count IX (Unjust Enrichment – All Defendants)

- Count X (Declaration of Ownership – '620 Application)

- Count XI (Declaration of Ownership – '382 Patent)

- Count XII (Declaration of Ownership – '140 Patent)

- Count XIII (Declaration of Ownership – '657 Patent)

- Count XIV (Direct and Indirect Infringement of the '216 Patent – All Defendants)

- Count XV (Direct and Indirect Infringement of the '849 Patent – All Defendants)

- Count XVI (Direct and Indirect Infringement of the '068 Patent – All Defendants)

- Count XVII (Defend Trade Secrets Act Violation – 18 U.S.C. § 1832 et seq. – All Defendants)

- Count XVIII (Pennsylvania Trade Secrets Act Violation – 12 Pa. C.S.A. § 5302 et seq. – All Defendants)

- Count XIX (Tortious Interference with the MirTech Agreements and Business Relationship – The Decco Defendants[2])

- Count XX (Tortious Interference with Customer Contracts – The Decco Defendants)

- Count XXI (Tortious Interference with Prospective Business Relations – The Decco Defendants)

---

[2] The Decco Defendants are Essentiv, Decco, Cerexagri, and UPL.

- Count XXII (Conversion – All Defendants)

- Count XXIII (Civil Conspiracy – All Defendants)

7.     On September 15, 2017, the MirTech Defendants stipulated to the entry of judgment in favor of AgroFresh on all counts asserted against them in AgroFresh's Amended Complaint.  (D.I. 115.)  The Judgment states that "AgroFresh is hereby declared the owner of the '216 patent," which was automatically assigned to AgroFresh by operation of law pursuant to the agreements with the MirTech Defendants.115 at 7, ¶ 7(a).)  Following the entry of Judgment, the MirTech Defendants formally documented the assignment of the '216 patent to AgroFresh.

8.     On January 2, 2019, the MirTech Defendants were dismissed.  (D.I. 376.)

9.     On January 2, 2019, the Court issued an order and memorandum opinion adopting the recommended construction for the term "molecular encapsulation agent" in the Daly patents.  (D.I. 374 at 10; D.I. 247 at 5-6.)

10.     With leave of Court, AgroFresh filed its Second Amended Complaint on February 18, 2019.  (D.I. 412.)  The Second Amended Complaint asserted the following Counts against the Decco Defendants:

- Count I (Unfair Competition)

- Count II (Unjust Enrichment)

- Count III (Direct and Indirect Infringement of the '216 Patent)

- Count IV (Direct and Indirect Infringement of the '849 Patent)

- Count V (Direct and Indirect Infringement of the '068 Patent)

- Count VI (Defend Trade Secrets Act Violation)

- Count VII (Pennsylvania Trade Secrets Act Violation)

- Count VIII (Tortious Interference with the MirTech Agreements and Business Relationship)

4

- Count IX (Tortious Interference with Customer Contracts)

- Count X (Tortious Interference with Prospective Business Relations)

- Count XI (Conversion)

- Count XII (Civil Conspiracy)

11.     Decco U.S. Post-Harvest, Inc., Cerexagri, Inc., and Essentiv filed their answers and affirmative defenses to the Second Amended Complaint on March 4, 2019.  (D.I. 419.)

12.     UPL Ltd. filed its answer and affirmative defenses to the Second Amended Complaint in a separate pleading filed on the same day, March 4, 2019.  (D.I. 418.)

13.     On March 6, 2019, a three-member panel of the Patent Trial and Appeal Board issued a Final Written Decision finding all claims of the '216 patent unpatentable. Based on this opinion, Defendants moved to stay the '216 patent infringement count.  (D.I. 435.)  The Court granted the motion.  (D.I. 467.)

14.     A pretrial conference is scheduled for September 30, 2019 at 10:00 a.m.  (Docket entry dated May 28, 2019.)  A jury trial in this matter is scheduled to start on October 7, 2019. (D.I. 122.)

15.     The following motions are fully briefed and pending:

a.     Decco's Objections to the Magistrate Judge's Memorandum Order Dated December 11, 2018 (D.I. 369) and AgroFresh's Response (D.I. 383).

b.     Defendants' *Daubert* Motion to Exclude the Testimony of AgroFresh's Financial Expert Gary Kleinrichert (D.I. 447).

## II.     FEDERAL JURISDICTION

16.     This Court has federal question jurisdiction over this action because it arises under the patent laws of the United States, 35 U.S.C. § 1 et seq.

17.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.  In addition, the Court has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

18.    Venue is proper under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).

19.    Personal jurisdiction and venue are not disputed.

## III.    STATEMENT OF FACTS THAT ARE ADMITTED AND REQUIRE NO PROOF

20.    The parties' joint statement of facts that are admitted and require no proof at trial is attached as **Exhibit 1**.

## IV.    ISSUES OF FACT REMAINING TO BE LITIGATED

21.    AgroFresh's list of factual issues remaining to be litigated is attached as **Exhibit 2**.

22.    Decco Defendants' list of factual issues remaining to be litigated is attached as **Exhibit 3**.

## V.    STATEMENT OF ISSUES OF LAW REMAINING TO BE LITIGATED

23.    AgroFresh's statement of the issues of law that remain to be litigated is attached hereto as Exhibit 4.

24.    Decco Defendants' statement of the issues of law that remain to be litigated is attached hereto as Exhibit 5.

## VI.    EXHIBITS

25.    The parties will offer as exhibits at trial one or more of the exhibits set forth in their respective trial exhibit lists.  These exhibit lists may include exhibits that may not necessarily be introduced into evidence.  Except for documents used solely for impeachment, a party may not offer substantive documentary evidence not appearing on its exhibit list or the exhibit list of the

other party, unless the Court determines that the interest of justice so warrants.  These lists include the exhibit number to be used at trial, and a description sufficient to identify the exhibit to the other party, such as a production number or otherwise.  Any descriptions included in the exhibit lists are provided as a convenience only and shall not be used as an admission or as evidence.  The parties reserve the right to withdraw exhibits from their exhibit lists based on rulings from the Court.

26.     AgroFresh's list of exhibits and Defendants' objections are attached hereto as Exhibit 6.

27.     Defendants' list of exhibits and AgroFresh's objections are attached hereto as Exhibit 7.

28.     Each party reserves the right to add any exhibits used in any deposition yet to occur in this case or any additional documents subsequently produced.

29.     Each party reserves the right to offer an exhibit designated by the other party, even if not introduced by the designating party.  If the non-designating party offers into evidence an exhibit designated but not introduced by the designating party, the designating party reserves its right to object to the introduction into evidence of that exhibit, depending on the use for which it is being offered.

30.     The parties agree that exhibits to be used or offered into evidence solely for impeachment need not be included on the lists of trial exhibits.  The parties agree that exhibits to be used or offered into evidence solely for cross-examination or impeachment need not be disclosed in advance of being offered at trial but that exhibits being used or offered into evidence solely for non-impeachment purposes need to be included on the lists of trial exhibits.

31.     Any document that on its face appears to have been authored by an employee, officer, or agent of a party deposed in this case shall be deemed prima facie evidence of

authenticity, subject to the right of the party against whom such document is offered to adduce evidence to the contrary or to require that the offering party provide authenticating evidence if the party opposing the offer has a reasonable basis to believe the document is not authentic.

32.   The parties agree that written answers to interrogatories or requests for admission served or stipulations agreed to in this case shall be treated as having been given under oath, whether or not the answers were signed or verified by the party making them.

33.   The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wished to admit the documents.  Each party reserves the right to object to the relevance or admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

**Exhibits and Demonstratives for Opening Statements**

34.   The parties agree that they shall provide the other side with notice of specific identification of exhibits expected to be used during that party's opening statement and all demonstrative exhibits expected to be used during that side's opening statement by 5:00 p.m. on the day before the first day of trial.  The other party shall identify any objections to demonstrative exhibits and any objections to the admissibility of the exhibits sought to be used during opening statements that by 8:00 p.m. that evening.  The parties shall then meet and confer regarding all objections and, to the extent the objections are not resolved by the meet and confer, they will inform the Court before opening statements of said objections for resolution as the Court sees fit. The notice provision of this paragraph does not apply to enlargement, highlighting, ballooning, or other annotations of trial exhibits or designated deposition testimony.

**Trial Exhibits for Direct Examination**

35.     A party will identify exhibits to be used in connection with each direct examination (either live or by deposition) by 7:00 p.m. ET the night before their intended use on a witness-by-witness basis (*e.g.*, the exhibits for a direct examination on Wednesday must be disclosed by 7:00 p.m. ET on Tuesday). The other party will provide its objections by 9:00 p.m. ET the same night. To the extent necessary, the parties shall meet and confer by 10:00 p.m. ET the night before the use of any exhibits in order to resolve any objections. If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall raise its objections with the Court no later than the morning of the exhibits' anticipated use, before trial begins or resumes.

**Demonstratives for Direct Examination**

36.     A party will provide demonstratives to be used in connection with each direct examination by 7:00 p.m. ET the night before their intended use (*e.g.*, the demonstratives for a direct examination on Wednesday must be disclosed by 7:00 p.m. ET on Tuesday) on a witness-by-witness basis. The other party will provide its objections by 9:00 p.m. ET the same night. To the extent necessary, the parties shall meet and confer by 10:00 p.m. ET the night before the use of any demonstratives in order to resolve any objections. If good faith efforts to resolve the objections fail, the party objecting to the demonstratives shall raise its objections with the Court no later than the morning of the demonstratives' anticipated use, before trial begins or resumes. The notice provision of this paragraph does not apply to demonstrative exhibits created in the courtroom during trial testimony or the enlargement, highlighting, ballooning, or other annotations of trial exhibits, testimony or designated deposition testimony.

## VII.    WITNESSES

37.    AgroFresh's list of witnesses to be called live or by deposition is attached hereto as **Exhibit 8**.

38.    Defendants' list of witnesses to be called live or by deposition is attached hereto as **Exhibit 9**.

39.    AgroFresh's list of deposition designations, Defendants' objections thereto, Defendants' counter-designations, and AgroFresh's objections thereto is attached hereto as **Exhibit 10**.

40.    Defendants' list of deposition designations, AgroFresh's objections thereto, Defendants' counter-designations, and AgroFresh's objections thereto is attached hereto as **Exhibit 11**.

41.    Except for witnesses called solely for rebuttal of newly raised issues, no witness called by a party in support of its case-in-chief shall be permitted to testify at trial in that party's rebuttal case unless identified in this Order or unless the Court determines that such witness should be called.

42.    The listing of a witness on a party's witness list does not require that party to call that witness to testify, either live or by deposition.

43.    The parties agree that they shall provide the other side with notice of each witness expected to be called live at trial along with specific identification of exhibits expected to be used on direct examination of that witness that have not been stipulated as admissible by 7:00 p.m. two days before the witness is to be called, including witness order where multiple witnesses are anticipated to testify on the same day.  The other party shall identify any objections to the admissibility of the exhibits sought to be used with the witness by 9:00 p.m. that same day.  The parties shall then meet and confer regarding all objections by 10:00 p.m. that night, and, to the

extent the objections are not resolved by the meet and confer, they will inform the Court before the witness is called of said objections for resolution as the Court sees fit.

44.     The pretrial order contains the maximum universe of deposition designations, counterdesignations, and objections to admission of deposition testimony; none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown. Counsel shall confer prior to trial to determine what testimony will be offered by deposition. If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than two (2) calendar days before the witness is to be called at trial, submit, on behalf of all parties: (i) A copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objection to the use of the deposition testimony. All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial. When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counterdesignations that will be read or played.  An additional copy shall be provided to the court reporter. The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

## VIII.   AGROFRESH'S STATEMENT OF INTENDED PROOF AND DETAILS OF DAMAGES CLAIMED AND OTHER RELIEF SOUGHT

45.     By way of summary, AgroFresh intends to prove the following at trial (some of which AgroFresh already established at the Phase I trial):

46.     AgroFresh, as the pioneer in the field of 1-methylcyclopropene ("1-MCP"), devoted tremendous resources to learning how to effectively commercialize this volatile gas for application to fresh produce.  Its expertise consists of knowledge accumulated over the course of many years at significant expense.  Much of its investment resulted in AgroFresh learning where not to focus its efforts – i.e., through significant research and trial and error, AgroFresh identified those crops on which 1-MCP is less effective and where commercial conditions make 1-MCP treatment impractical – as well as where to focus its efforts.  That accumulated knowledge and expertise provided AgroFresh an advantage in the market and allowed it to charge a premium for its products and services.

47.     AgroFresh developed the market for 1-methylcyclopropene ("1-MCP") treatment of fresh produce over the course of more than a decade, investing hundreds of millions of dollars to do so.  As the Court found in its Phase I Opinion, AgroFresh's 1-MCP intellectual property and know-how constitute "a key part of its competitive advantage."  AgroFresh gave Nazir Mir, its exclusive consultant for many years, access to its developed know-how and its accumulated 1-MCP knowledge.

48.     ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████

49.     Since Defendants did not want to make the investment to purchase AgroFresh for its fair market value, they turned to Robert Lynn Oakes, a former AgroFresh employee with

ongoing confidentiality obligations, to spearhead their 1-MCP efforts.  Oakes, in turn, recruited

AgroFresh's exclusive consultant, Dr. Nazir Mir, to develop Defendants' then-nonexistent 1-MCP

business.

50.     Oakes turned to Mir because he knew of Mir's importance to AgroFresh and Mir's

knowledge of AgroFresh technical trade secrets.  Oakes intended to capitalize on Mir's experience

with AgroFresh by bringing the information Mir had learned to Decco.  Oakes knew, however,

that Mir was under contract with AgroFresh.  He also understood that Mir's activities with Decco

ran afoul of that contract.

51.     Mir's value to Decco stemmed from his broad access to AgroFresh's technology.

Mir and AgroFresh worked on extending the application of AgroFresh's core competency, 1-MCP

stabilization and delivery, to additional crops.  As part of Mir's work for AgroFresh—compensated

at $300,000 annually—he had frequent interaction with AgroFresh employees, and access to

AgroFresh's facilities and commercial and technical information.  For example, AgroFresh's

analytical chemists provided Dr. Mir support in setting up his lab to measure 1-MCP accurately.

Mir also gained an understanding of the efficacy of the SmartFresh delivery system through his

work with AgroFresh.



52.                                                                                    Conversely, "going alone later" (without

Mir) would require "a steeper learning curve for Decco" and "flatter MCP sales and profits," especially given the poor quality of 1-MCP products produced by other companies that had tried to compete with AgroFresh.

53.     By inducing Mir to share AgroFresh's trade secret information with them, Defendants hoped to create a highly profitable business while avoiding the investment AgroFresh had made in its technology.  Defendants themselves recognized that AgroFresh spent more than twenty years and over $100 million developing that technology.  ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

54.     Despite their minimal investment, ████████████████████

████████████████████████████████████████████████

█████████████████████

55.     If Defendants had chosen instead to enter the market lawfully, they would have incurred the costs of full-blown product development, as AgroFresh did.  Defendants' own contemporaneous documents recognize that they did not do so, instead choosing to short-circuit the development process by relying on Nazir Mir.   After Phase I, Mir confessed to misappropriating AgroFresh's trade secrets and engaging in a civil conspiracy with Defendants.

56.     The difference between AgroFresh's development costs and the costs Defendants incurred to develop TruPick is an appropriate way to measure the costs Defendants avoided by misappropriating AgroFresh's trade secrets.

57.     In March 2017, the parties tried AgroFresh's claim to ownership of the technology that Mir and Decco misappropriated and disclosed to the world through the '216 Patent.  After a bench trial, the Court declared AgroFresh the owner of the '216 Patent technology, holding that the technology had been automatically assigned to AgroFresh under the parties' agreements at the time Mir discovered it (i.e., before he filed a patent application on it).  As the Court noted, the agreements were unambiguous on this point.

58.     In its opinion, the Court recognized that "a broad assignment of intellectual property rights was a condition to allowing access by Dr. Mir to all of AgroFresh's 1-MCP-related research and information."   Mir and AgroFresh "worked on extending the application of AgroFresh's core competency, 1-MCP stabilization and delivery, to additional crops."  As part of Mir's work for AgroFresh – compensated at $300,000 annually – he "had frequent interaction with AgroFresh employees, and access to AgroFresh's facilities and commercial and technical information.  For example, AgroFresh's analytical chemists provided Dr. Mir support in setting up his lab to measure 1-MCP accurately."  Mir also "gained an understanding of the efficacy of the SmartFresh delivery system."  The Court recognized that AgroFresh's know-how constitutes "a key part of its competitive advantage."

59.     The Court also acknowledged the confidential relationship that existed between Mir and AgroFresh.  Specifically, the Court found that a "special relationship" existed given that "Dr. Mir had been under contract with AgroFresh for over five years, and had repeatedly emphasized the need to be forthright with one another."

60.     After the Court entered its Opinion and Order, Mir confessed to a consent judgment establishing that he misappropriated AgroFresh's trade secrets and conspired with Defendants to commercialize them.

61.     Based on these facts and others, AgroFresh intends to prove at trial facts fully supporting each of the Counts in its Second Amended Complaint, except the '216 Patent infringement Count, which the Court has stayed.

62.     AgroFresh also intends to prove that all of the factual issues identified by either party in this pretrial order should be decided in AgroFresh's favor.

63.     Defendants' actions have caused immense harm and damages to AgroFresh.  At trial, AgroFresh intends to present fact and expert testimony to establish its entitlement to compensatory damages, punitive damages, treble damages, exemplary damages, lost profits, price erosion damages, and damages due to the cost of development that Defendants avoided by misappropriating AgroFresh's technology.  The details of these damages have been disclosed to Defendants during discovery.

64.     In addition to damages, AgroFresh seeks permanent injunctive relief, its costs, pre- and post-judgment interest, attorneys' fees, disgorgement of any ill-gotten gains, and all other just and proper relief.

65.     AgroFresh objects to Defendants' Statement of Intended Proofs below as including much inadmissible and irrelevant evidence and reserves the right to object to the admission of these purported facts at trial.

## IX.     DEFENDANTS' STATEMENT OF INTENDED PROOFS

66.     Below is a brief statement of what Defendants intend to prove as part of their defenses:

67.     UPL is a global company providing agricultural solutions to the market to enhance food security world-wide.  UPL has acquired many companies over the years.  At the request of AgroFresh's then-parent company Dow, UPL submitted a conditional bid on AgroFresh despite serious questions about AgroFresh's value.

68.     UPL's subsidiary Decco U.S. Post-Harvest focuses on postharvest solutions in the agricultural market.  Decco's history in the United States traces back to the 1930s.  Decco offers a broad array of products, such as fungicides, waxes, and coatings designed to prolong the life of postharvest produce.  Decco and Pace International were the primary marketers of postharvest products in the United States before 2002, when AgroFresh entered the market with a niche product (SmartFresh) used primarily on postharvest treatment of apples, which has 1-MCP as its active ingredient.

69.     A pertinent patent covering the treatment of produce with 1-MCP expired in 2014.  Decco was also aware that the Daly patents covered 1-MCP encapsulated in α-cyclodextrin, and determined that it would not market a product that included 1-MCP encapsulated in α-cyclodextrin in any country where the Daly patents (or their foreign counterparts) were in force.

70.     Decco used a recruiting firm to find qualified candidates with experience in the 1-MCP market, and ultimately hired Dr. Lynn Oakes in October 2014.  Dr. Oakes had previously worked at AgroFresh and Dow.  During October 2014, Dr. Oakes attended a conference on behalf of Decco, where he reconnected with Dr. Mir, a colleague he had worked with at Dow on a project called RipeLock.

71.     Dr. Mir presented Decco with an opportunity to potentially enter the U.S. market before the Daly patents expired.  Decco engaged in discussions with Dr. Mir and signed several agreements with him.   At all times during the parties' negotiations over their potential collaboration (both verbally and in writing), Dr. Mir represented that (1) he owned the technology that he was offering to Defendants, including the technology related to TruPick, (2) he was free to work with companies such as Decco on projects outside of RipeLock (his sole project with AgroFresh), and (3) he wanted to work with Decco to bring his technology to market.

72.     Dr. Mir's representations were consistent with the understanding of Dr. Oakes, who knew first-hand that Dr. Mir's collaboration with AgroFresh involved only RipeLock.  Decco was further aware that during the period of negotiations between Decco and Dr. Mir, which spanned roughly from October 2014 to June 30, 2016, Dr. Mir continued activities unrelated to AgroFresh/RipeLock, including work at Rutgers University, where Dr. Mir serves as an adjunct professor, and other companies such as FreshTech.  Decco was also aware that Dr. Mir had filed a patent application (for the '216 patent) covering the technology he sought to develop with Decco, which again identified Dr. Mir as the sole inventor and identified MirTech as the owner of the technology.  Decco also understood that it was common for university professors and entrepreneurs such as Dr. Mir to work on multiple projects at the same time, with various collaborators.

73.     Based on Dr. Mir's representations, Decco invested in Dr. Mir's technology, providing him with ████████████████████████████████████████ ████████████████████████████

74.     At the end of the negotiations, on June 30, 2016, Decco and MirTech signed a series of agreement that resulted in (among other things) (i) the formation of Essentiv, a 50-50 joint venture that would market TruPick (technology that was undisputedly developed by Dr. Mir) and (ii) a license agreement providing Essentiv with exclusive rights to the '216 patent technology.

75.     In parallel to their negotiations, Decco and Dr. Mir sought registration from the EPA to market TruPick in the United States.  To obtain such registration, Decco had several of its own studies performed and also cited data that AgroFresh had previously submitted to EPA to demonstrate the safety of 1-MCP.  As required by law, Decco offered to compensate AgroFresh

18

for the use of its data, and the parties engaged in negotiations to arrive at the proper sum, ███

████████████████████████████████

76.     EPA approved TruPick on July 1, 2016, after which Decco announced to the market

its 1-MCP technology and collaboration with Dr. Mir.

77.     AgroFresh then accused Dr. Mir of wrongdoing, despite that AgroFresh had no role

in developing the technology related to TruPick.   Dr. Mir assured Decco that AgroFresh's

allegations were baseless.  ████████████████████████████████

████████████████████████████████████████

██████████████████████████

78.     Decco entered the market in September 2016, becoming the third entrant to the

postharvest 1-MCP market, following AgroFresh and Pace (which entered under an Experimental

Use Permit in 2014 and under a full registration in 2015).  ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

79.     In 2016, the only season in which Decco sold the Accused Products, Defendants

reasonably believed they had a legal path to market, including a joint venture with the developer

of the technology (Dr. Mir), a license to the technology (the '216 patent), and an EPA-approved

product registration.  And, as noted, the patent covering the use of 1-MCP on produce had expired

in 2014, paving the way for legal competition for products like TruPick that did not involve any

of the formulations claimed in the Daly patents.

80.     About a year later the Court issued its decision in Phase I, concluding that

AgroFresh owned the '216 patent technology instead of MirTech, the owner and assignee

identified on the face of the patent. Decco immediately stopped its plans to sell TruPick in 2017 and sought dissolution of Essentiv. Decco made $0 in sales in 2017, and TruPick has not been marketed or sold since.

81.     Defendants intend to show through fact and expert testimony that AgroFresh did not possess any trade secrets, including any purported trade secrets related to the '216 patent.

82.     Defendants also intend to prove though fact and expert testimony that AgroFresh's allegations of patent infringement fail both factually and as a matter of law.

83.     Based on the facts, exhibits, public records, expert disclosures, and anticipated testimony at trial, Defendants intend to prove their defenses against each of the applicable Counts in AgroFresh's Second Amended Complaint.

84.     Defendants intend to prove that the factual issues identified by either party in this pretrial order should be decided in Defendants' favor.

85.     Defendants also intend to prove that their actions have not caused harm and damages to AgroFresh. Defendants intend to present testimony establishing that AgroFresh is entitled to no compensatory damages, punitive damages, treble damages, or exemplary damages, including no damages based on lost profits, price erosion, or unjust enrichment.

86.     Defendants also intend to show that AgroFresh is not entitled to permanent injunctive relief, costs, pre- and post-judgment interest, attorneys' fees, disgorgement of any ill-gotten gains, or any other relief.

87.     Defendants object to AgroFresh's above Statement of Intended Proofs as including much inadmissible and irrelevant evidence and reserves the right to object to the admission of these purported facts at trial.

## X.      AMENDMENTS TO THE PLEADINGS

88.     Each side reserves the right to amend its pleadings to conform to proof.  AgroFresh seeks to amend its complaint to make express that the confidential information appropriated under the tortious interference counts was also converted.  Defendants object to AgroFresh's motion as untimely and prejudicial.

## XI.     GOOD FAITH EFFORT TO RESOLVE BY SETTLEMENT

89.     The parties certify that two-way communication has occurred between persons having authority in a good faith effort to explore the resolution of the controversy by settlement. The parties have been unable to reach a settlement.

## XII.    MOTIONS IN LIMINE

90.     AgroFresh's Motions in Limine, Defendants' Responses, and AgroFresh's replies are attached as **Exhibit 12**.

91.     Defendants' Motions in Limine, AgroFresh's Responses, and Defendants' replies are attached as **Exhibit 13**.

## XIII.   OTHER ITEMS

92.     This case is scheduled for a five-day jury trial beginning on October 7, 2019, with jury selection to take place on Friday, October 4, 2019 with Magistrate Judge Jennifer Hall.

93.     The Court shall rule at trial on objections to expert testimony as outside the scope of prior expert disclosures, taking time from the parties' trial presentation to argue and decide such objections.

94.     There shall be eight jurors and two alternates.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually in Chambers or at sidebar and there addressing any challenges for cause, and concluding with peremptory strikes.  Jury trial days

21

generally run from 9:00 a.m. to 4:30 p.m. with two 15-minute breaks (morning and afternoon) and a lunch break.

95.     The parties agree that the jurors shall be permitted to write notes by hand on their notepads during the trial, and that jurors be permitted to bring their notepads into the deliberation room.  The parties further propose that the jurors' notes be collected by the clerk each evening after daily recess, and collected and destroyed without review after the jury's discharge.

96.     On the first day of trial, each party shall provide a completed AO Form 187 exhibit list to the Courtroom Deputy.  All exhibits shall be pre-marked and include the prefix PTXa, PTXb, DTX, DTXb, or JTX, the exhibit number, as well as the Civil Action Number.  Because the PTX and DTX prefixes were used during the Phase I trial in this action, exhibits marked for the first time in the second phase trial will use the PTXb and DTXb prefixes, and exhibits from Phase I will use the PTXa and DTXa prefixes.

97.     The parties do not agree that demonstrative exhibits may be admitted.

98.     The parties request that the Court grant them access to the Courtroom on Friday, October 4, 2019, the business day before trial begins, to allow them to set up electronic and computer devices to be used during the trial.

99.     The jury trial will be timed. Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by the other party, deposition designations as agreed-to above, and closing argument. Time will not be charged for jury voir dire. The Courtroom Deputy will keep a running total of trial time used by counsel.

100.    Pursuant to Federal Rule of Evidence 615, fact witnesses, other than witnesses who have already testified and been excused, shall be sequestered and prevented from hearing the

testimony of other witnesses or opening statements.   Pursuant to provision (2) of Rule 615, this exclusion rule will not apply to the one officer or employee designated by each party as its representative.

101.   Expert witnesses disclosed under Federal Rule of Civil Procedure 26(a)(2)(B) shall not be excluded for either fact or expert testimony or opening statements.

## XIV.   OTHER ITEMS TO BE ADDRESSED AT THE PRETRIAL CONFERENCE

102.   AgroFresh requests the Court's assistance to resolve issues relating to Defendants' rampant over use of the "Highly Confidential-Attorneys' Eyes Only" designation under the case protective order.   Defendants disagree with AgroFresh's allegation and note that AgroFresh has not identified any exhibits on any party's exhibit list that it believes should be de-designated.

103.   Consistent with Local Rule 16.3(a)(13), Defendants have identified a non-exhaustive list of issues that, if not resolved between the parties, should be addressed by the Court before trial.   A brief statement of the issue and Defendants' position is below.

104.   AgroFresh objects to the inclusion of Defendants' list in this Pretrial Order as another improper attempt to seek additional motions in limine in excess of the Court's maximum of three.   Defendants had all of the materials needed to raise the issues below, including AgroFresh's witness list, trial exhibits, and draft pretrial order, well before the agreed upon deadline for exchanging motions in limine.   Defendants chose not to raise these issues in their motions in limine.

105.   Recognizing this, the Court recently rejected Defendants' attempt to file additional motions in limine.   D.I. 515.

### A.   Witness Lists

106.   In regard to AgroFresh's Trial Witness List (Ex. 8), Defendants object to the improper attempt to introduce any testimony from Defendants' counsel, Mr. Sharma.   AgroFresh

has proposed a stipulation on the following terms: it will not call Mr. Sharma at trial if Defendants agree that Defendants' privilege log is admissible.  Because AgroFresh has no basis for calling Mr. Sharma at trial to testify on the privilege log or any other matter, Defendants do not agree to this stipulation.

107.    AgroFresh responds that it plans to call Mr. Sharma only for the limited purpose of admitting Defendants' privilege log into evidence.  Mr. Sharma was the architect of the privilege log, and he defended the log in open Court.  *See generally* Hearing Tr., May 15, 2018. The privilege log is undoubtedly relevant, especially as to establishing UPL's involvement in the matters at issue here.  For example, it identifies more than one hundred (100) entries where Mr. Kumar, UPL's General Counsel, provided guidance on joint venture related matters before execution of the Mir agreement.  *See* D.I. 392 at Ex. 73 (summary of relevant privilege log entries). If Defendants simply stipulate to the admissibility of the privilege log, AgroFresh would have no reason to call Mr. Sharma.  But Defendants refuse to so stipulate.

108.    Defendants object to the attempt to introduce any testimony from Defendants' experts, William Jordan or Randy Beaudry, in AgroFresh's case-in-chief.

109.    AgroFresh responds that William Jordan's deposition testimony is admissible.  For instance, it is admissible under Fed. R. Civ. P. 32.

110.    Defendants object to the attempt to introduce any testimony from identified fact witnesses Nance Dicciani, as AgroFresh failed to identify Ms. Dicciani in its Rule 26(a)(1)(A) disclosures during fact discovery in this phase of the litigation, failed to identify her in any discovery responses, and failed to make her available for deposition during the fact discovery period or at any time before the relevant deadlines in this case.

111.    AgroFresh responds that its inclusion of Ms. Dicciani is proper because she was deposed in the first phase of this case and Defendants put her on their own witness list for this phase of the case.

**B.      Document Branding**

112.    Defendants note that AgroFresh's proposed trial exhibits include the confidentiality designations added by counsel during the pretrial/discovery phase.  The original documents do not contain those confidentiality markings.  In this case the parties will be asking the fact finder to determine whether specific documents were in fact originally marked as "CONFIDENTIAL," whether they were treated as confidential, and whether they were understood by recipients as containing confidential information.  As such, Defendants contend that the jury should not be presented with trial exhibits marked "CONFIDENTIAL" by counsel as part of the litigation process when in fact the original documents do not contain any confidentiality markings.  To avoid prejudicing Defendants and confusing or misleading the jury, all confidentiality designations added by counsel should be removed from the exhibits that are actually published to the jury or admitted into evidence.

113.    AgroFresh responds that the removal of confidentiality designations is contrary to the Protective Order entered by the Court and administratively and procedurally unreasonable and impractical. This issue was especially appropriate for a motion in limine, and Defendants chose not to move in limine on this issue. AgroFresh received Defendants' first correspondence regarding this matter **before** Defendants served their motions in limine—on a deadline that Defendants proposed.   In this correspondence, Defendants cited two cases—both of which resolved this issue as a motion in limine.  Defendants waived this issue by not filing a motion in limine, and the Court should not effectively grant Defendants additional motions in limine through the Pretrial Order.  Further, any purported prejudice can be cured by a routine jury instruction,

25

which AgroFresh invited Defendants to propose.   AgroFresh has not yet received a proposed instruction.

### C.      Irrelevant and Undisclosed Tortious Interference Theories

114.     In regard to AgroFresh's Statement of Issues of Fact that Remain to be Litigated (Ex. 2), Defendants object to the attempt to introduce evidence or argument that "Defendants committed economic espionage under 18 U.S.C. § 1831 and/or violated FIFRA Section 12(a)(1)(A) and/or 40 C.F.R. § 168.22."  As noted in Defendants' Motion *in Limine* No. 2, any reference to criminal activity or criminal statutes should be excluded.  Defendants also served a contention interrogatory seeking the legal and factual basis for AgroFresh's tortious interference claims, but AgroFresh never disclosed that its claim was based on § 1831 or FIFRA.  Moreover, because there are no counts in this case under § 1831 or FIFRA, those laws are irrelevant and cannot properly serve as the predicate underlying "wrongful conduct" necessary for a tortious interference claim.  To refer to Defendants' conduct as criminal or violative of FIFRA, or even to reference statutes that are not at issue, would be unfairly prejudicial, misleading, and confusing to the jury.

115.     In response, AgroFresh refers the Court to its response to Defendants' Motion in Limine No. 2. Defendants' Motion did not address FIFRA, so Defendants have waived this issue. Furthermore, AgroFresh also notes that these violations have long been the topic of discovery in this case, including detailed discussion in numerous depositions.

### D.      Agrofresh's General Statement Regarding Subsections "E" And "F"

116.     On September 16, 2019, Defendants filed a motion for leave to file additional motions in limine.  D.I. 514.  Fourteen hours later, the Court denied the motion.  D.I. 515.  And for good reason—Defendants, after having served four motions in limine (ignoring the Court's limit of three) on August 28 (a deadline Defendants proposed and AgroFresh agreed to), regretted

their decision and tried to add two more.   Their fifth motion in limine would have been on AgroFresh's cost of development damages theory, and their sixth on AgroFresh's Updated Disclosure of Trade Secrets. The Court rejected this proposal. Defendants try to reincarnate these exact same motions in limine in sections E and F below.

117.    Defendants have waived the opportunity to raise point E below relating to the Updated Trade Secret Disclosure.  Critically, Defendants had AgroFresh's Updated Trade Secret Disclosure before serving their motions in limine.  They chose not to address the updated disclosure in their motions in limine.  Instead, they waited a week and filed unauthorized "objections."  D.I. 506.  They then asked the Court to entertain additional motions in limine.  D.I. 514.  The Court denied the request.  D.I. 515.  This point E below is an attempt at a third bite at the apple.

118.    With respect to point F below (also waived), AgroFresh disclosed its cost of development unjust enrichment theory of damages on November 6, 2018—before the close of fact discovery and 295 days before Defendants' chosen motion in limine deadline.  And on December 19, 2018, AgroFresh reminded Defendants of this theory of damages, and notified them that AgroFresh's damages total at least $250 million.  A month later, on January 23, 2019, AgroFresh served its expert report of Gary Kleinrichert, which calculated AgroFresh's cost of development. On March 20, 2018, Defendants' expert, Carla Mulhern, served her report, which outlined responsive testimony on the "avoided cost" theory of unjust enrichment.  During the deposition of Ms. Mulhern on May 8, 2019—with Defendants' lead trial counsel present—AgroFresh walked through the standard of comparison method in painstaking detail, including marking exemplar standard of comparison jury instructions as an exhibit.  All of this occurred well before the motion

in limine deadline.  Thus, Defendants have waived these arguments or the argument should be rejected as incorrect.

### E.      Expanded, Withdrawn, and Non-Specific "Trade Secrets"

119.    In accordance with the Court's instructions during the September 5, 2019 hearing, the parties have met and conferred regarding AgroFresh's response to the Court's *sua sponte* Order requiring AgroFresh to "provide the Court with an updated version of the disclosure of trade secrets that identifies with REASONABLE PARTICULARITY the alleged trade secrets that remain for trial." (D.I. 503.)  AgroFresh refused to modify its August 27, 2019 Updated Disclosure of Trade Secrets (D.I. 505) to address any of the concerns stated by the Court (Sept. 5 Hr'g. Tr. at 128:5-129:14) or reflected in Defendants' Objections (D.I. 506).  Instead, AgroFresh (1) filed a supplemental trial exhibit list in which it simply added its Updated Disclosure of Trade Secrets to its proffered trial exhibits without modification and (2) threatened counsel for Defendants—in writing—with sanctions and attorneys fees should Defendants pursue any further objections to the trade secret disclosure.

120.    Defendants respectfully submit that AgroFresh should be ordered to disclose the trade secrets it intends to present at trial with reasonable particularity.  AgroFresh should not be permitted to proceed to trial with a "disclosure" characterizing its alleged trade secrets in a wholly unbounded fashion (e.g., "Information derived from over twenty years of experience of working with 1-MCP, including the know-how related to, for example, research and development, countless trials, product formulation, commercialization, and application to fruits and vegetables.").  Defendants submit that AgroFresh should be compelled to respond to the request set forth in Defendants' proposed verdict form highlighted below (or to make a similar good-faith Court Ordered disclosure):

(Special Interrogatory Form No. 1)
**TRADE SECRET MISAPPROPRIATION**

We, the jury, unanimously find as follows:

<u>Question No. 1:</u>

For the following ALLEGED TRADE SECRET NO. 1 set forth below:

| | |
|---|---|
| ALLEGED TRADE SECRET NO. 1 | [Plaintiff to complete this box by stating its ALLEGED TRADE SECRET NO. 1 that it intends to try to the jury with reasonable particularity in accordance with Magistrate Judge Fallon's 11/27/18 Oral Order and D.I. Nos. 122, 409-410, 441, 503.[1] |

<u>Question No. 1(a):</u>

Do you find that Plaintiff has proven by a preponderance of the evidence that Plaintiff possessed ALLEGED TRADE SECRET NO. 1 at the time of the alleged misappropriation?

| Yes | No |
|---|---|
| | |

<u>Question No. 1(b):</u>

Do you find that Plaintiff has proven by a preponderance of the evidence that Plaintiff took reasonable measures to keep ALLEGED TRADE SECRET NO. 1 secret?

| Yes | No |
|---|---|
| | |

---

[1] Defendants maintain their objection that Plaintiff failed to identify any trade secrets with reasonable particularity.

**Question No. 1(c):**

Do you find that Plaintiff has proven by a preponderance of the evidence that ALLEGED TRADE SECRET NO. 1 is different from both (a) matters of general knowledge in the trade and (b) special knowledge of persons skilled in the trade?

| Yes | No |
|-----|-----|
|     |     |

**ANSWER QUESTION NUMBER 1(D) BELOW ONLY IF YOU ANSWERED "YES" TO EACH OF QUESTION NOS. 1(A), 1(B), and 1(C)**

**OTHERWISE DO NOT ANSWER QUESTION NUMBER 1(D)**

**Question No. 1(d):**

Do you find that Plaintiff has proven by a preponderance of the evidence that Defendants misappropriated ALLEGED TRADE SECRET NO. 1?

| Yes | No |
|-----|-----|
|     |     |

**ANSWER QUESTION NO 1(E) BELOW ONLY IF YOU ANSWERED "YES" TO QUESTION NUMBER 1(D)**

**OTHERWISE DO NOT ANSWER QUESTION NUMBER 1(E)**

**Question No. 1(e):**

Do you find that Plaintiff has proven by clear and convincing evidence that Defendants' misappropriation of ALLEGED TRADE SECRET NO. 1 was willful and malicious?

| Yes | No |
|-----|-----|
|     |     |

[REPEAT QUESTION NOS. 1(A) – 1(E) FOR EACH ALLEGED TRADE SECRET PLAINTIFF ELECTS TO ASSERT]

121.    Defendants also object to AgroFresh's attempt to rely on catchall language and vague references to "other information" and to expand its alleged trade secrets beyond what was specifically disclosed in its Amended Disclosure of Trade Secrets (as modified by Judge Fallon), including AgroFresh's attempt to re-insert purported trade secrets that it specifically withdrew. (Apr. 24, 2019 Hr'g Tr. at 38:5–13; D.I. 300 at 2 n.1; D.I. 506; D.I. 514 at Ex. A (128:5-129:14), Ex. C.) Defendants maintain their objection to AgroFresh's disclosure of purported trade secrets as lacking specificity, particularly in view of AgroFresh's attempt to redefine its "accumulated knowledge" as an entirely new, undefined, and non-specific category of technology unrelated to the arguments presented by AgroFresh to the Court on this issue. (*See* D.I. 363 at 4-5; D.I. 409 at 7-8; D.I. 441 at 2-3.)

122.    Defendants understand that the Court did not grant their motion for leave to address these issues through a motion *in limine*. (D.I. 514; D.I. 515.) Defendants note the issues again here because Defendants preserve and maintain their positions on the issues and intend to raise and preserve the issues at trial.

123.    AgroFresh incorporates by reference its General Statement in Section D above, as Defendants have simply pasted a stricken motion in limine into the pretrial order. AgroFresh also objects to arguing about proposed verdict forms here, which wastes the Court's time.  If the Court ignores Defendants' waiver of this issue, which it should not, AgroFresh will be prepared to answer all of Defendants' incorrect assertions at the pretrial conference.

### F.    Undisclosed Costs and Damages Theories

124.    Defendants object to AgroFresh's attempt to advance an unjust enrichment damages theory or rely on any undisclosed theory, facts, or witnesses allegedly supporting its damages.  As first disclosed during the hearing on Defendants' *Daubert* motion, AgroFresh intends to call Mr. Cassidy, Mr. Chandramouli, Dr. Beaulieu, and "perhaps" Dr. Zettler to support some

theory on unjust enrichment damages.   However, the undisclosed theory, the documents these witnesses will rely on, and the testimony they will presumably offer are objectionable because it is irrelevant, it is prejudicial, AgroFresh failed to comply with its disclosure obligations during discovery, the documents are objectionable on numerous grounds, and the witnesses who were identified on costs of development could not identify how or why any specific costs were incurred to develop the asserted trade secrets, as would be required under the statutory mandate for causation (and as would be expected in a fully developed, properly disclosed, expert-supported damages theory).   Defendants submit that AgroFresh should not be permitted to present the jury with shocking "damages" numbers despite no prior disclosure or foundation.

125.    Defendants understand that the Court did not grant their motion for leave to address these issues through a motion *in limine*.  (D.I. 514; D.I. 515.)  Defendants note the issues again here because Defendants preserve and maintain their positions on the issues and intend to raise and preserve the issues at trial. (*See* D.I. 514 at Ex. B.)

126.    AgroFresh incorporates by reference its General Statement in Section D above, as Defendants have simply pasted a stricken motion in limine into the Pretrial Order.   Defendants are completely wrong.  This theory has been disclosed for more than 300 days.  Defendants' own expert has discussed it at length.  Counsel for Defendants has discussed it open court and has examined AgroFresh's witnesses on it.  AgroFresh has worked tirelessly to meet Defendants' ever-shifting goalpost with respect to foundation—providing records custodian declarations and even offering a records custodian deposition, which was declined.  There is nothing more to be done. The foundation for these documents is strong, and the long-disclosed theory is ripe for jury consideration.  Again, if the Court ignores Defendants' waiver of this issue, which it should not,

AgroFresh will be prepared to answer all of Defendants' incorrect assertions at the pretrial conference.

### G.    Scope of Rebuttal Case

127.    AgroFresh requests that the trial proceed normally, with AgroFresh presenting its case in chief, Defendants presenting their responsive case, and AgroFresh presenting its rebuttal case.  There is no basis for limiting AgroFresh's rebuttal case to the issue of patent validity as Defendants propose.

128.    Defendants submit that AgroFresh's rebuttal case should be limited to a rebuttal to issues on which Defendants' bore the burden, i.e., the invalidity of the Daly patents. AgroFresh bears the burden of proof on all other issues, including the existence of any trade secrets, and Defendants maintain that AgroFresh should be required to present any evidence on those issues in its case-in-chief. *See* April 24, 2019 Hr'g Tr. at 34:7-21 ("Plaintiff bears the burden of proof on the trade secrets issue and it chose, for whatever reasons, not to submit expert reports on the issues . . . Plaintiff's decision to rethink its strategy and submit later reports on the issue on which it bears the burden of proof and to, in effect, extend expert discovery prejudices Defendants.").

### H.    Zettler Deposition

129.    On September 22, 2019, AgroFresh issued a notice to take a trial deposition of Mark Zettler at 2:00pm in Indianapolis, IN on October 1, 2019 (the day after the Final Pretrial Conference in Wilmington, DE).   AgroFresh did not seek leave of Court.  Before AgroFresh unilaterally issued its deposition notice, Defendants requested specific information regarding the need for the deposition and the parameters of the deposition.  Specifically, Defendants requested (1) assurances that Dr. Zettler would not testify beyond the subject matter for which he was disclosed in discovery, (2) assurances that Dr. Zettler would not be offering expert testimony, (3) assurances that Dr. Zettler would not be testifying as to information for which he does not have

percipient knowledge and  (4) an explanation as to why AgroFresh cannot designate testimony from Dr. Zettler's five days of prior testimony (deposition and trial) in the matter instead of conducting another deposition.  AgroFresh did not respond to these requests.  Accordingly, Defendants object to the deposition.

130.    Dr. Zettler cannot attend trial because his wife is having an urgent, major medical procedure on October 7, 2019, the first day of trial.  The procedure will take 12 hours and requires multiple weeks of recovery.  October 7th was the surgeon's first available date.  Despite what AgroFresh believes are unreasonable requests from Defendants (some of which are noted above), AgroFresh continues to work with Defendants to schedule a trial deposition of Mark Zettler.  If the parties cannot work out this issue on their own, they may need the Court's assistance.

    **IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

Dated:  September 23, 2019

_____
Honorable Maryellen Noreika
U.S. District Court Judge

34

**APPROVED AS TO FORM AND SUBSTANCE:**

BARNES & THORNBURG LLP

/s/  Chad S.C. Stover
Chad S.C. Stover (No. 4919)
Regina S.E. Murphy (No. 5648)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone:  (302) 300-3474
E-mail:  chad.stover@btlaw.com
E-mail:  gigi.murphy@btlaw.com

OF COUNSEL:

Robert D. MacGill
Lynn C. Tyler
T. Joseph Wendt
Jessica M. Lindemann
Matthew Ciulla
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:  (317) 236-1313
E-mail: rmacgill@btlaw.com
E-mail: lynn.tyler@btlaw.com
E-mail: jwendt@btlaw.com
E-mail: jessica.lindemann@btlaw.com
Email:  matthew.ciulla@btlaw.com

*Attorneys for Plaintiff AgroFresh Inc.*

RICHARDS, LAYTON & FINGER, P.A.

/s/  Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Nicole K. Pedi (#6236)
One Rodney Square
920 N. King Street
Wilmington, Delaware  19801
(302) 651-7700
Cottrell@rlf.com
Moyer@rlf.com
Pedi@rlf.com

OF COUNSEL:

Gerald F. Ivey
John M. Williamson
Anand K. Sharma
Rajeev Gupta
Maximilienne Giannelli
Karthik Kumar
Daniel F. Roland
Aidan Skoyles
FINNEGAN, HENDERSON, FARABOW
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
gerald.ivey@finnegan.com
john.williamson@finnegan.com
parmanand.sharma@finnegan.com
raj.gupta@finnegan.com
max.giannelli@finnegan.com
karthik.kumar@finnegan.com
daniel.roland@finnegan.com
aidan.skoyles@finnegan.com

*Attorneys for Defendants*