IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AGROFRESH INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-662-MN |
| | ) | |
| ESSENTIV LLC, DECCO U.S. POST- | ) | |
| HARVEST, INC., CEREXAGRI, INC. d/b/a | ) | |
| DECCO POST-HARVEST, and UPL, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>PRELIMINARY JURY INSTRUCTIONS</u>**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     OVERVIEW OF THE CASE ......................................................................................... 2

III.    DUTY OF THE JURY.................................................................................................... 3

IV.     EVIDENCE.................................................................................................................... 4

V.      BENCH CONFERENCES AND RECESSES ............................................................... 6

VI.     NOTE-TAKING ............................................................................................................ 7

VII.    BURDENS OF PROOF.................................................................................................. 9

VIII.   WITNESSES................................................................................................................ 10

IX.     DEPOSITION TESTIMONY ...................................................................................... 11

X.      ADMITTED FACTS ................................................................................................... 12

XI.     DEMONSTRATIVES ................................................................................................. 13

XII.    EXPERT WITNESSES ............................................................................................... 14

XIII.   CONFIDENTIAL LABELS ........................................................................................ 15

XIV.    WHAT A PATENT IS AND HOW ONE IS OBTAINED .......................................... 16

XV.     CONDUCT OF THE JURY ........................................................................................ 19

XVI.    COURSE OF THE TRIAL .......................................................................................... 21

XVII.   TRIAL SCHEDULE.................................................................................................... 22

## I.    __INTRODUCTION__

Members of the jury: Now that you have been sworn in, I have the following preliminary instructions for guidance on your role as jurors in this case.

These instructions are intended to assist you in discharging your duties as jurors and to introduce you to the case and the law that you will apply to the evidence that you will hear.  Also, because one of the issues in this case involves patents, I will give you some preliminary instructions regarding patents as well.  I will give you more detailed instructions on the law at the end of the trial.

II.     <u>**OVERVIEW OF THE CASE**</u>

This is a civil case.  The Plaintiff in this case is AgroFresh, Inc., which I will refer to as Plaintiff or AgroFresh.  AgroFresh has sued the Defendants, Essentiv LLC, Decco U.S. Post-Harvest, Inc., Cerexagri, Inc., and UPL, Ltd.  I will refer to them collectively as "Defendants" or as "Decco."

AgroFresh is a company that develops and sells products to keep fruit fresh.  Decco is a company that develops and sells many fruit-related products.  Defendant UPL owns Decco and is an international company that has several business lines.

AgroFresh sells a product called SmartFresh, which is used to keep apples fresh in storage using a compound called 1-MCP.  In 2014, Decco began developing a competitive product called TruPick.  TruPick also keeps apples fresh in storage by using 1-MCP.  Decco sold TruPick to customers in the United States in 2016.

AgroFresh asserts claims against Decco for misappropriation of trade secrets, unfair competition, intentional interference with contractual relations, conversion, unjust enrichment, civil conspiracy, and patent infringement.  Defendants deny those claims.

### III.  <u>**DUTY OF THE JURY**</u>

It will be your duty to decide from the evidence whether the Plaintiff is entitled to a verdict against the Defendants.  From the evidence, you will decide what the facts are.  You are entitled to consider the evidence in the light of your own observations and experiences in life.  You may use reason and common sense to draw deductions from facts established by the evidence.  You will then apply those facts to the law that I give you in these and the other instructions.  In that way, you will reach your verdict.  You are the sole judges of the facts, but you must follow the law as stated in my instructions, whether you agree or disagree with the law stated in the instructions.

Do not allow sympathy or prejudice to influence you.  The law requires that your verdict be unaffected by anything except the evidence, your common sense, and the law stated in these and other instructions.

Anything that I may say or do during the trial must not be taken by you as an indication of what I think of the evidence or what I think your verdict should be.

## IV.   <u>EVIDENCE</u>

The word "evidence" includes the testimony of witnesses; documents and other things received as exhibits; any facts that have been stipulated, that is, formally agreed to by the parties; and any facts that have been judicially noticed, that is, facts which I say you must accept as true.

Certain things are not evidence. I will list those things for you now:

1.   Statements, arguments, questions and comments by lawyers are not evidence.

2.   Exhibits that are identified by a party but not offered or received in evidence are not evidence.

3.   Objections are not evidence. Lawyers have a right and sometimes an obligation to object when they believe that the evidence being offered is improper. You should not be influenced by the objection. If I sustain an objection to a question or an exhibit, you must ignore the question or the exhibit and must not try to guess what the information might have been.

4.   Testimony and exhibits that I strike from the record or tell you to disregard are not evidence and must not be considered.

5.   Anything you see or hear about this case outside this courtroom is not evidence, unless I specifically tell you otherwise during the trial.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I will tell you when that occurs, and instruct you on the purposes for which the item can and cannot be used. You should also pay particularly close attention to such an instruction, because it may not be available to you in writing later when you are in the jury room deliberating.

Finally, some of you may have heard the phrases or terms "direct evidence" and "circumstantial evidence." Direct evidence is direct proof of a fact, such as testimony by an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. For example, the fact that it snowed overnight could be proven directly ("I saw

it snow last night") or circumstantially ("When I went to sleep the grass was green, when I woke up there was a foot of snow on the ground").  You are instructed that you should not be concerned with those terms, since the law makes no distinction between the weight to be given to direct and circumstantial evidence.

## V.     <u>BENCH CONFERENCES AND RECESSES</u>

During the trial it may become necessary for me to talk with the lawyers outside your hearing, either by having a bench conference while you are present in the courtroom, sometimes called a sidebar, or by calling a recess.  Please understand that while you are waiting, the Court and the lawyers are working and the parties are being charged for the time, *i.e.*, the time spent comes out of their total trial time.  The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence that govern the trial, and to avoid confusion and error.  We will, of course, do what we can to keep the number and length of these conferences to a minimum.

I may not always grant a lawyer's request for a sidebar.  Do not consider my granting or denying a request for a sidebar conference as any indication of my opinion of the case or of what your verdict should be.

## VI.    <u>NOTE-TAKING</u>

Before trial starts, you will be given a notebook that includes a notepad and a pen.  If you wish, you may, but are not required to, take notes to help you remember what witnesses said. Notes may be helpful to you because at the end of the trial, you must make your decision based on what you recall of the evidence.  You will not have a written transcript to consult, and it may not be practical for the court reporter to read back lengthy testimony.  Therefore, you should pay close attention to the testimony as it is given.

If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide this case.  Do not let note-taking distract you to the point that you miss hearing other testimony from the witness.

A word of caution is in order.  There is generally a tendency to attach undue importance to matters which one has written down.  Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

During the trial, documents or other physical items may be received into evidence.  At the present, however, you will not be supplied with a list of exhibits which are received in evidence. Therefore, you may wish to make notes about the exhibits, especially their description and number, so that you can refer to those exhibits while you are deliberating.

When we take our recess each day for the lunchtime break and when we take our recess each night, please take your notes to the jury room and leave your notes there.

No one will read your notes but you.  Your notes will be destroyed after the trial is over.

## VII.   __BURDENS OF PROOF__

AgroFresh has the burden of proving its case by what is called the preponderance of the evidence.  That means AgroFresh has to prove to you, in light of all the evidence, that what it claims is more likely so than not so.  To say it differently: if you were to put the evidence favorable to AgroFresh and the evidence favorable to Decco on opposite sides of the scales, AgroFresh would have to make the scales tip somewhat on its side.  If AgroFresh fails to meet this burden, the verdict must be for Decco.  If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In addition to the preponderance of the evidence standard, a different burden of proof applies to other asserted claims and defenses in this case, called the clear and convincing evidence standard.  For example, Defendants assert that the asserted patent claim is invalid.  They have the burden of proving invalidity by clear and convincing evidence.  Proof by clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden of proof than proof by a preponderance of the evidence.

You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard of proof and it applies only to criminal cases.  It does not apply in civil cases such as this.  So, you should put it out of your mind.

## VIII.   <u>WITNESSES</u>

You are the judges of each witness's credibility.  In deciding what testimony to believe, you may consider a number of factors, including the witness's means of knowledge, the opportunity the witness had to have seen or heard the things testified about, a witness's memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things.  You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify.  What is more important is how believable the witnesses were and how much weight you think their testimony deserves.

This instruction applies to all witnesses, including expert witnesses.

## IX.  **DEPOSITION TESTIMONY**

I will now talk about the form of some of the evidence you will hear during trial.  First, you may hear witnesses testify through deposition testimony.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

In this trial, you may hear from certain "Rule 30(b)(6)" corporate witnesses for the parties via deposition.  A Rule 30(b)(6) corporate witness is a person that a corporation has chosen to speak on behalf of the corporation with respect to specific identified topics.  This type of witness must be knowledgeable or prepared to speak on the specific identified topics and is required to give complete and knowledgeable answers on the corporation's behalf.  The testimony of a Rule 30(b)(6) witness at his or her deposition is binding on the corporate party on those topics and, at trial, the party cannot contradict this earlier deposition testimony.  Before any Rule 30(b)(6) corporate witnesses testify, you will be told that the witness is a Rule 30(b)(6) witness.

## X.  <u>**ADMITTED FACTS**</u>

The parties have stipulated that certain facts are true, and those admitted facts may be read to you during trial.  You must treat these admitted facts as having been proven for purposes of this case.

## XI.   <u>DEMONSTRATIVES</u>

Certain charts and summaries may be shown to you in order to help explain the facts disclosed by the books, records, or other underlying evidence in the case.  Those charts or summaries are used for convenience.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the books, records or other underlying evidence.

## XII.    <u>**EXPERT WITNESSES**</u>

A witness who has special knowledge, skill, experience, training, or education in a particular area may testify as an expert in that area.  You determine what weight, if any, to give to an expert's testimony just as you do with the testimony of any other witness.  In weighing expert testimony, you may consider the expert's credibility as a witness, the expert's qualifications, the reliability and sources of the expert's information, the reasons given for any opinions expressed by the expert, as well as the factors I have previously mentioned for weighing testimony of all witnesses.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

## XIII.  **CONFIDENTIAL LABELS**

During this trial, you may see documents labeled with the words "Highly Confidential – Attorneys Eyes Only."  This label was added to the documents by attorneys for use in these legal proceedings.  The use of this confidentiality label, however, does not establish that a document is confidential or was confidential when originally created.  To the extent you are asked to determine whether information contained in a document was or is, in fact, confidential, you are to make that determination without regard to the labeling given by attorneys in this lawsuit.

## XIV.   WHAT A PATENT IS AND HOW ONE IS OBTAINED

An issue in this case involves a dispute relating to a United States patent.  Let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office, which is sometimes called "the PTO."  A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission.  A violation of the patent holder's rights is called infringement.  The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution.  To obtain a patent, one must first file an application with the PTO.  The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents.  The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed.  In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed.  The PTO searches for and reviews information that is publicly available

or that is submitted by the applicant.  This information is called "prior art." The Examiner reviews

this prior art to determine whether or not the invention is truly an advance over the state of the

art at the time.  Prior art is defined by law and I will give you at a later time specific instructions

as to what constitutes prior art.  However, in general, prior art includes information that

demonstrates the state of technology that existed before the claimed invention was made or before

the application was filed.  A patent lists the prior art that the Examiner considered, and this list is

called the "cited references."

After the prior art search and examination of the application, the Examiner informs the

applicant in writing of what the Examiner has found and whether the Examiner considers any

claim to be patentable and, thus, would be "allowed."  This writing from the Examiner is called

an "Office Action."  If the Examiner rejects the claims, the applicant has an opportunity to

respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the

claims or to submit new claims.  This process may go back and forth for some time until the

Examiner is satisfied that the application meets the requirements for a patent and the application

issues as a patent, or that the application should be rejected and no patent should issue.

Sometimes, patents are issued after appeals within the PTO or to a court.  The papers generated

during these communications between the Examiner and the applicant are called the "prosecution

history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed

in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have

had available to it all other prior art that will be presented to you.  A person accused of

infringement has the right to argue here in federal court that a claimed invention in the patent is

invalid because it does not meet the requirements for a patent.  It is your job to consider the

evidence presented by the parties and determine independently whether or not Decco has proven that the patent is invalid.

## XV.   <u>CONDUCT OF THE JURY</u>

Now a few words about your conduct as jurors, which you heard previously during jury selection.

First, during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you, nor you with them.  In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided.  If anyone should try to talk to you about the case, please bring it to the Court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.  By that, I mean that if there is a newspaper or internet article or television or radio report relating to this case, do not read the article or watch or listen to the report.

Third, do not try to do any research or investigate the case on your own.  Let me elaborate.  During the course of the trial, you must not conduct any independent research about the case, the matters in the case, or the individuals or entities involved in the case.  In other words, you should not consult dictionaries or reference materials (in print, electronic, or other format) or search websites or blogs on the internet.  Also, again, should there happen to be a newspaper article or television or radio report relating to this case, do not read the article or watch or listen to the report.  It is important that you decide this case based solely on the evidence presented in the courtroom.  Please do not try to find out information from any other sources.

I know that many of you use cell phones, iPhones and other smartphones, iPads and other tablets, the internet, and other forms of technology.  You must not talk to anyone about this case

or use these tools to communicate electronically with anyone about the case.  This includes your family and friends.  You may not communicate with anyone about the case on your cell phone or smartphone, through e-mail, your tablet, text messaging, on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking web sites, including but not limited to Facebook, Twitter, Instagram, LinkedIn, and YouTube.

Finally, you should not form any opinion until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.  You will receive detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

## XVI.   <u>COURSE OF THE TRIAL</u>

The case will begin shortly.

First, Plaintiff's counsel may make an opening statement outlining its case.   Next Defendants' counsel may make an opening statement outlining their case.   What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.

After the opening statements, the parties will present their evidence.   Plaintiff will go first and present witnesses that support its claims, and the Defendants may cross-examine those witnesses.   When Plaintiff is finished, Defendants may present evidence, and Plaintiff may cross-examine any witnesses presented by the Defendants.   Both parties may also present rebuttal witnesses and evidence.

After all the evidence is presented, the attorneys will offer closing arguments.   The closing arguments are not evidence.   Their purpose is to summarize and interpret the evidence for you. The judge will give you instructions on the law and describe for you the matters you must resolve.

After that you will retire to the jury room to deliberate on your verdict.

## XVII.  **TRIAL SCHEDULE**

Though you have heard this before, I want to again outline the schedule I will maintain during the course of this trial.

As mentioned previously, once trial begins, this case is expected to take up to five business days to try, between now and Friday, October 11, 2019.

The trial will normally begin each day at 9:00 A.M, will go until around 12:30 P.M., when there will be about a forty-five-minute break for lunch, before continuing until 4:30 or 4:45 P.M. There will be a fifteen-minute break in the morning and another fifteen-minute break in the afternoon.

What I have just outlined is the general schedule.  It is possible there will be some interruptions if I need to attend to other matters.

The only significant exception to this schedule may occur when the case is submitted to you for your deliberations.  At that point, you will be permitted to deliberate as late as you wish.

Please keep in mind that this is a timed trial.  That means that I have allocated each party a maximum number of hours in which to present all portions of its case.  This allows me to assure you that the case is expected to be completed by Friday.

Of course, you can help us stay on schedule by being here promptly each morning and being ready to proceed at the end of each break.