## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AGROFRESH INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-662-MN |
| | ) | |
| ESSENTIV LLC, DECCO U.S. POST-HARVEST, INC., CEREXAGRI, INC. d/b/a DECCO POST-HARVEST, and UPL, LTD., | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPENING BRIEF IN SUPPORT OF
## DEFENDANTS' RULE 50(A) MOTION FOR
## JUDGMENT AS A MATTER OF LAW

*OF COUNSEL*

Gerald F. Ivey
John M. Williamson
Anand K. Sharma
Rajeev Gupta
Maximilienne Giannelli
Karthik Kumar
Daniel F. Roland
FINNEGAN, HENDERSON, FARABOW
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000
gerald.ivey@finnegan.com
john.williamson@finnegan.com
anand.sharma@finnegan.com
raj.gupta@finnegan.com
max.giannelli@finnegan.com
karthik.kumar@finnegan.com
daniel.roland@finnegan.com

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Nicole K. Pedi (#6236)
RICHARDS, LAYTON, & FINGER
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Cottrell@rlf.com
Moyer@rlf.com
Pedi@rlf.com

*Attorneys for Defendants*

Dated: October 11, 2019

# TABLE OF CONTENTS

I.      LEGAL STANDARD ................................................................................................ 1

II.     NO REASONABLE JURY COULD FIND DEFENDANTS
        MISAPPROPRIATED AGROFRESH'S TRADE SECRETS ......................................... 1

        A.      AgroFresh Failed to Prove That It Owned Any Trade Secrets .............................. 2

        B.      AgroFresh Failed to Prove That Defendants Misappropriated
                Any Trade Secrets .................................................................................................. 5

        C.      No Reasonable Jury Could Find Defendants' Alleged Trade Secret
                Misappropriation Was Willful and Malicious ....................................................... 7

III.    NO REASONABLE JURY COULD FIND UNFAIR COMPETITION BY
        DEFENDANTS .......................................................................................................... 7

IV.     NO REASONABLE JURY COULD FIND INTENTIONAL
        INTERFERENCE WITH EXISTING OR PROSPECTIVE CONTRACTS ..................... 9

        A.      AgroFresh Did Not Prove Defendants Intentionally Interfered
                with Existing Contractual and Business Relationships ........................................... 9

        B.      AgroFresh Did Not Prove Defendants Intentionally Interfered
                with Prospective Contractual and Business Relationships ..................................... 13

V.      NO REASONABLE JURY COULD FIND CONVERSION OF
        AGROFRESH'S PROPERTY BY DEFENDANTS ........................................................ 14

VI.     NO REASONABLE JURY COULD FIND AGROFRESH PROVED
        CIVIL CONSPIRACY ................................................................................................ 15

VII.    NO REASONABLE JURY COULD FIND DEFENDANTS
        WILLFULLY INFRINGED THE '849 PATENT ............................................................ 18

        A.      Defendant Decco Could Not Infringe the '849 Patent Under
                the Doctrine of Equivalents as a Matter of Law .................................................... 18

        B.      No Reasonable Jury Could Find UPL Infringed the '849 Patent ........................... 19

        C.      No Reasonable Jury Could Find Decco's Alleged Patent
                Infringement Was Willful ....................................................................................... 20

VIII.   NO REASONABLE JURY COULD FIND THAT THE '849 PATENT IS
        NOT INVALID .......................................................................................................... 21

        A.      No Reasonable Jury Could Find That Claim 1 Is Not Indefinite ........................... 21

B.  No Reasonable Jury Could Find That Claim 1 Is Not Anticipated...................... 22

IX.  AGROFRESH HAS NOT PROVED DAMAGES............................................................ 23

A.  AgroFresh Failed to Prove It Is Entitled to Lost Profits ........................................ 23

B.  AgroFresh Failed to Prove Unjust Enrichment Damages Caused by Alleged Trade Secret Misappropriation............................................................ 25

C.  The Jury Should Not Be Permitted to Award Exemplary Damages.................... 28

D.  AgroFresh Failed to Prove Damages for Alleged Conversion of Its Property......................................................................................................... 28

E.  The Jury Should Not Be Permitted to Award Punitive Damages........................ 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.K. Stamping Co., Inc. v. Instrument Specialties Co., Inc.*,
106 F. Supp. 2d 627 (D. N.J. 2000) ...................................................................................8

*Accenture Global Servs. GmbH v. Guidewire Software, Inc.*,
581 F. Supp. 2d 654 (D. Del. 2008) .................................................................................5

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
561 F.3d 199 (3d Cir. 2009) .................................................................................... *passim*

*Adtile Techs. Inc. v. Perion Network Ltd.*,
No. 15-1193-SLR, 2016 WL 3457152 (D. Del. June 23, 2016) .......................................3

*Advanced Fluid Sys. Inc. v. Huber*,
28 F. Supp. 3d 306 (M.D. Pa. 2014) .........................................................................10, 11

*AMP Inc. v. Fleischhacker*,
823 F.2d 1199 (7th Cir. 1987) ........................................................................................3

*Arsenal Inc. v. Ammons*,
2014 WL 9771673 (E.D. Pa. 2014) ...............................................................................16

*In re Asbestos School Litigation*,
46 F.3d 1284 (3d. Cir. 1994) ..........................................................................................17

*In re Avaya Inc.*,
No. 17-10089 (SMB), 2018 WL 1940381 (Bankr. S.D.N.Y. Apr. 23, 2018) ...................27

*Avaya Inc. v. Cisco Sys., Inc.*,
2011 WL 4962817 (D.N.J. Oct. 18, 2011) ........................................................................5

*Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*,
1 F. Supp. 3d 224 (S.D.N.Y. 2014) ..................................................................................3

*Bro-Tech Corp. v. Thermax Inc.*,
651 F. Supp. 2d 378 (E.D. Pa. 2009) .............................................................................16

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002) .......................................................................................18

*CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*,
357 F.3d 375 (3d Cir. 2004) ...........................................................................................12

*Copperweld Corp. v. Independent Tube Corp.*,
467 U.S. 752 (1986)................................................................................................16

*Crystal Semiconductor Corp. v. TriTeach Microelectronics Inter., Inc.*,
246 F.3d 1336 (Fed. Cir. 2001).........................................................................23, 24

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009)..............................................................................18

*Dow Chem. Canada Inc. v. HRD Corp.*,
909 F. Supp. 2d 340 (D. Del. 2012).....................................................................2, 3

*Duffy v. Lawyers Title Ins. Co.*,
972 F. Supp. 2d 683 (E.D. Pa. 2013) ......................................................................17

*Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.*,
71 A.3d 923 (Pa. Super. Ct. 2013)..............................................................10, 11, 12

*Encap, LLC v. Scotts Co., LLC*,
No. 11-C-685, 2014 WL 4273302 (E.D. Wis. Aug. 28, 2014)..................................3

*Fife v. Great Atlantic & Pacific Tea Co.*,
52 A.2d 24 (Pa. 1947) .............................................................................................17

*Foster v. Pitney Bowes Corp.*,
549 F. App'x 982 (Fed. Cir. 2013) ...........................................................................2

*G. David Jang, M.D. v. Boston Scientific Corp.*,
872 F.3d 1275 (Fed. Cir. 2017)................................................................................18

*Giordano v. Claudio*,
714 F. Supp.2d 508 (E.D. Pa. 2010) ........................................................................16

*Glass v. City of Philadelphia*,
455 F. Supp. 2d 302 (E.D.Pa. 2006) ........................................................................17

*Glenn v. Point Park College*,
272 A.2d 895 (Pa. 1971) ..................................................................................10, 13

*Gomez v. Allegheny Health Servs. Inc.*,
71 F.3d 1079 (3d Cir. 1995).......................................................................................1

*Grain Processing Corp. v. Am. Maize- Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999).................................................................................23

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016)...............................................................................................20

*Hill v. Best Med. Intern., Inc.*,
Nos. 07–1709, 08–1404, 09–1194, 2011 WL 5082208 (W.D.Pa. Oct. 25, 2011) ...........................................................................................................14, 15

*IDX Sys. Corp. v. Epic Sys. Corp.*,
285 F.3d 581 (7th Cir. 2002) ...........................................................................2

*Intellectual Ventures 1, LLC v. Symantec Corp.*,
234 F. Supp. 3d 601 (D. Del. 2017)................................................................20

*Intendis GmbH v. Glenmark Pharms., Inc.*,
822 F.3d 1355 (Fed. Cir. 2016)......................................................................18

*Kerlin v. Howard*,
No. 4:18-CV-00481, 2018 WL 4051702 (M.D. Pa. Aug. 24, 2018) .....................30

*Kewanee Oil Co. v. Bicron Corp.*,
416 U.S. 470 (1974)........................................................................................4

*Latuszewski v. VALIC Fin. Advisors, Inc.*,
393 F. App'x 962 (3d Cir. 2010) .......................................................................2

*In re Lemington Home for the Aged*,
777 F.3d 620 (3d Cir. 2015)...........................................................................30

*Liberty Mut. Ins. Co. v. Gemma*,
301 F. Supp. 3d 523 (W.D. Pa. 2018)...........................................................2, 16

*Lynch v. Bridges & Co. Inc.*,
678 A.2d 414 (Pa. Super. Ct. 1996)................................................................28

*Marra v. Phila. Hous. Auth.*,
497 F.3d 286 (3d Cir. 2007).............................................................................1

*MicroStrategy, Inc. v. Bus. Objects, S.A.*,
429 F.3d 1344 (Fed. Cir. 2005)........................................................................1

*Minco, Inc. v. Combustion Engineering, Inc.*,
95 F.3d 1109 (Fed. Cir. 1996)........................................................................24

*Moore v. Kulicke & Soffa Indus.*,
318 F.3d 561 (3d Cir. 2003).............................................................................2

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)......................................................................................21

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
399 F. Supp. 2d 1064 (N.D. Cal. 2005) ..........................................................27

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    193 F.3d 781 (3d Cir. 1999)......................................................................................17

*Pfizer, Inc. v. ICI Americas, Inc.*,
    No. 7785, 1984 WL 8262 (Del. Ch. Nov. 21, 1984) ...............................................3

*Phillips v. Cricket Lighters*,
    584 Pa. 179 (2005)................................................................................................29

*Phillips v. Selig*,
    959 A.2d 420 (Pa. Super. Ct. 2008).....................................................................14

*Promega Corp. v. Life Techs. Corp.*,
    875 F.3d 651 (Fed. Cir. 2017)...............................................................................28

*Reese v. Pook & Pook, LLC*,
    158 F. Supp. 3d 271 (E.D. Pa. 2016) ...................................................................17

*Sarpolis v. Tereshko*,
    26 F. Supp. 3d 407 (E.D. Pa. 2014) .....................................................................16

*Shockley v. Arcan, Inc.*,
    248 F.3d 1349 (Fed. Cir. 2001).............................................................................23

*Spencer v. Steinman*,
    968 F. Supp. 1011 (E.D. Pa. 1997) ......................................................................17

*State Contr. & Eng'g Corp. v. Condotte Am., Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003).............................................................................23

*Synthes (U.S.A.) v. Globus Med., Inc.*,
    No. CIV.A. 04-CV-1235, 2005 WL 2233441 (E.D. Pa. Sept. 14, 2005) ...............13

*Tegg Corp. v. Beckstrom Elec. Co.*,
    650 F. Supp.2d 413 (W.D.Pa. 2008).....................................................................15

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015).............................................................................21

*Thompson Coal Co. v. Pike Coal Co.*,
    488 Pa. 198, 412 A.2d 466 (Pa. 1979) .................................................................16

*Vehicle IP, LLC v. AT & T Mobility LLC*,
    227 F. Supp. 3d 319 (D. Del. 2016) ......................................................................20

*Wechsler v. Macke Int'l Trade, Inc.*,
    486 F.3d 1286 (Fed. Cir. 2007).............................................................................23

*Wilson Sporting Goods Co. v. David Geoffrey & Assoc.,*
904 F.2d 677 (Fed. Cir. 1990), *overruled in part on other grounds*, *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993) ............................................... 18

*Win & Son, Inc. v. City of Philadelphia,*
178 F. Supp. 3d 234 (E.D. Pa. 2016) ..................................................................... 15

**Statutes**

6 Del. C. § 2001(4) ......................................................................................................... 3

12 Pa.C.S.A. § 5302 ........................................................................................................ 7

12 Pa.C.S.A. § 5304(a) ................................................................................................. 25

12 Pa.C.S.A. § 5304(b) ................................................................................................. 28

18 U.S.C. § 1836(b)(3)(B)(II) ....................................................................................... 25

18 U.S.C. § 1836(b)(3)(c) .............................................................................................. 28

18 U.S.C. § 1839(5) ........................................................................................................ 5

18 U.S.C. § 1839(5)(A), (B)(i) ........................................................................................ 5

35 U.S.C. § 102(b) ........................................................................................................ 22

35 U.S.C. § 112, ¶ 2 ..................................................................................................... 21

35 U.S.C. § 271(a) ........................................................................................................ 20

1 Melvin F. Jager, Trade Secrets Law §5:8 (Oct. 2017) ................................................ 5

**Other Authorities**

Fed. R. Civ. P. 50(a) ....................................................................................................... 1

Fed. R. Civ. P. 50(a)(1) .............................................................................................. 1, 20

Restatement (2d) of Torts § 759 ................................................................................... 14

Restatement (3d) of Unfair Competition § 1 ............................................................. 7, 8

Restatement (3d) of Unfair Competition § 1, cmt. c ..................................................... 8

Restatement of Unfair Competition .............................................................................. 7

Restatement (Second) of Torts Section 908(2) ............................................................ 30

Restatement (Second) of Torts, § 922.............................................................................................28

9B Wright & Miller, Federal Practice & Procedure § 2524 (3d ed. 2008).....................................1

After the close of the evidence and before the case has been submitted to the jury, Defendants move under Fed. R. Civ. P. 50(a) for judgment as a matter of law on the following issues.

## I.      LEGAL STANDARD

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A motion for judgment as a matter of law raises procedural issues that are not unique to patent law, and thus is reviewed under the law of the regional circuit in which the appeal from the district court would usually lie. *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1348 (Fed. Cir. 2005).

In the Third Circuit, judgment as a matter of law is granted if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). The Court may not assess the credibility of witnesses; rather, the Court must determine whether the evidence reasonably supports the jury's verdict. *See Gomez v. Allegheny Health Servs. Inc.,* 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B Wright & Miller, Federal Practice & Procedure § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury properly could find a verdict for that party.").

## II.     NO REASONABLE JURY COULD FIND DEFENDANTS MISAPPROPRIATED AGROFRESH'S TRADE SECRETS

To establish a misappropriation of a trade secret, AgroFresh had to prove four elements:

"(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Moore v. Kulicke & Soffa Indus.*, 318 F.3d 561, 566 (3d Cir. 2003) (emphasis added); *Latuszewski v. VALIC Fin. Advisors, Inc.*, 393 F. App'x 962, 965 (3d Cir. 2010); *Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 540 (W.D. Pa. 2018); *Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 989 (Fed. Cir. 2013).

### A.      AgroFresh Failed to Prove That It Owned Any Trade Secrets

To prevail on its trade secret claims, AgroFresh had to show the existence of a trade secret with a "reasonable degree of precision and specificity" such that a reasonable jury could find that plaintiff established each statutory element of a trade secret. *Dow Chem. Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012). This identification had to be "particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade." *Id.*; *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583-84 (7th Cir. 2002) ("plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition" of a trade secret).

AgroFresh failed to prove any individual trade secret with sufficient particularity. Rather than identify a specific trade secret, AgroFresh has asserted six "categories" of alleged trade secrets; namely, (1) Information in the '216 Patent, (2) Gas generator; (3) Gas sampler; (4) Treatment Tents; (5) Testing Protocols, and (6) Treatment Parameters. But other than repeated references to "SmartFresh technology," which the Court has confirmed is *not* a trade secret at issue in this case (D.I. 566 at 2), AgroFresh has not pointed to what specifically is "secret" in any of these categories. For example, AgroFresh's in-house expert, Dr. Beaulieu, provided no detail on what aspect of these categories is secret.

Courts have established that identifying a vague category of information and forcing Defendants to sift through the details in search of the alleged trade secret—as AgroFresh has done—does not meet the specificity requirement. *See Dow Chem.*, 909 F. Supp. 2d at 347-48. As the court explained, a generic statement about manufacturing, coupled with citation to numerous patents and patent applications, "is not a clear identification of a trade secret." *Id.* at 348; *see also Encap, LLC v. Scotts Co., LLC*, No. 11-C-685, 2014 WL 4273302, at *4 (E.D. Wis. Aug. 28, 2014); *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 263-66 (S.D.N.Y. 2014).

By relying on nothing but vague generalities and broad notions of secrecy, AgroFresh has failed to meet the particularity requirement. "[C]ourts have warned plaintiffs of the risks they run by failing to identify specific trade secrets." *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987) (citing *Litton Systems, Inc. v. Sundstrand Corp.*, 750 F.2d 952, 954, 956–957 (Fed. Cir. 1984)). AgroFresh has clearly failed to heed that warning, so judgment should be entered here for Defendants on these claims.

AgroFresh also had to prove that the information alleged to be a trade secret derived "independent economic value by virtue of its not being generally known or readily ascertainable by proper means." 6 Del. C. § 2001(4). Information that is widely known cannot be a trade secret. *See Adtile Techs. Inc. v. Perion Network Ltd.*, No. 15-1193-SLR, 2016 WL 3457152, at *3 (D. Del. June 23, 2016); *Pfizer, Inc. v. ICI Americas, Inc.*, No. 7785, 1984 WL 8262, at *8 (Del. Ch. Nov. 21, 1984) (same).

AgroFresh has also failed to prove that the information it claims is secret was not publicly available or readily ascertainable. AgroFresh's vague identification is particularly problematic here given the vast amount of publicly available information relating to the

treatment of fruit with 1-MCP, including thousands of articles. Tr. (Beaulieu) 508:12-23; Tr. (Oakes) 640:1-2; DTXb-140; DTXb-179. The record also establishes that AgroFresh itself has disclosed a plethora of information to the public through, e.g., patent filing and EPA registrations. *See, e.g.*, Tr. (Beaulieu) 492:5-493:17.

As to the six categories of information identified by AgroFresh at trial, Dr. Walton confirmed that information in the '216 patent (item 1) is disclosed in the public domain. Tr. (Walton) 413:3-414:6; *see generally* Tr. (Beaudry) 1142:15- 1149:22. And the record also confirms that '216 patent information was known by BASF dating to 2013. *See* Tr. (McCaskey) 266:15-267:24; 270:1-3. AgroFresh's gas generator (item 2) has been publicly observed since 2002, and the gas generator used with TruPick is a mere "bait bucket" that can be purchased online. *See* Tr. (Beaudry) 1114:10-1116:2; Tr. (Oakes) 605:13-23; DTXb-168. On gas sampling (item 3), Dr. Beaudry testified that he has 40 years' experience with gas sampling, and the record establishes that AgroFresh itself disclosed gas sampling in its SmartFresh registration. Tr. (Beaudry) 1095:23-1096:3, 1117:4-1119:18; Tr. (Beaulieu) 492:8-493:4. Treatment tents (item 4) were detailed in a publication by 2014 and publicized in a brochure by AgroFresh. Tr. (Beaudry) 1121:15-1125:12; Tr. (Beaulieu) 513:4-12; DTXb-142; DTXb-1086. Regarding testing protocols (item 5), Dr. Beaudry testified that he developed and published testing protocols. Tr. (Beaudry) 1096:4-18; *see* DTXb-131. On treatment parameters (item 6), Dr. Beaudry explained that the hundreds of articles cited in DTXb-140 all contain treatment parameters, and the record establishes that AgroFresh's "dosage chart" was available in an EPA label. Tr. (Beaudry) 1134:10-18; Tr. (Oakes) 690:5-22; DTXb-573 at 8-9. In sum, there has been no showing that the information alleged to be a trade secret derives independent economic value by virtue of it not being generally known or readily ascertainable by proper means. *Kewanee Oil*

*Co. v. Bicron Corp.*, 416 U.S. 470, 484 (1974).

Consistent with its failure to identify a specific trade secret and/or distinguish the trade secret information from what is publicly available, AgroFresh has also failed to take reasonable measures to protects its trade secrets. Other than the dosage chart, which was publicly available, AgroFresh has identified no trade-secret information that was marked "confidential." There was no showing that AgroFresh's applicators signed confidentiality agreements. There was no showing that the many consultants AgroFresh worked with signed confidentiality agreements. In fact, the record shows that, instead of taking reasonable measures to protect its trade secrets, AgroFresh used to share information related to 1-MCP "internally and externally freely" because it had a related patent. Tr. (McCaskey) 262:13-23.

**B.    AgroFresh Failed to Prove That Defendants Misappropriated Any Trade Secrets**

To establish misappropriation of its alleged trade secrets, AgroFresh also had to prove that the trade secret was improperly used or disclosed by Defendants. *Accenture Global Servs. GmbH v. Guidewire Software, Inc.*, 581 F. Supp. 2d 654, 662 (D. Del. 2008) (citing *Savor, Inc. v. FMR Corp.*, 2004 WL 1965869, at *5 (Del. Super. July 15, 2004)); 18 U.S.C. § 1839(5)(A), (B)(i); *see also Avaya Inc. v. Cisco Sys., Inc.*, 2011 WL 4962817, at *3 (D.N.J. Oct. 18, 2011); see also DTSA, 18 U.S.C. § 1839(5) (requiring actual "acquisition" or "disclosure" of a trade secret). Thus, "mere knowledge" of a trade secret is not sufficient to maintain a trade secret misappropriation claim. 1 Melvin F. Jager, Trade Secrets Law §5:8 (Oct. 2017).

There is no evidence that any alleged trade secret was ever acquired, disclosed, or used by Defendants, and no evidence that *any* trade secret was obtained by Defendants through improper means. *E.g.*, Tr. (Oakes) 604:20-22, 608:13-18, 605:21-606:1. Dr. Beaulieu even testified that she was aware of no direct evidence that any of the information in AgroFresh's

"secured database" was ever shared with any Decco or UPL employee or representative. Tr. (Beaulieu) 485:4-21. While AgroFresh offered into evidence a "dosage chart" that was allegedly marked confidential, the record establishes that Dr. Oakes developed his own dosage chart and submitted it to EPA about six months before receiving the purportedly confidential chart. Tr. 636:19-22; *see also* Tr. 662:3-13-665:16.

As for the '216 patent, the record establishes that Dr. Mir gave Defendants oral and written assurances that he owned the rights to the technology could share it with Defendants. Tr. (Girin) 744:5-20. For example, the Decco-MirTech joint-venture agreement included express representations from Dr. Mir that he owned the technology and was free to share it with Decco. Tr. (Girin) 749:13-750:11. Although AgroFresh disclosed Dr. Mir's contract with AgroFresh to Decco, Defendants did not know at the time that AgroFresh owned the '216 patent. *See, e.g.*, Tr. (Oakes) 590:18-591:5. It was not until June 30, 2017, that Defendants learned the '216 patent belonged to AgroFresh. *See* D.I. 544 at ¶ 12 (Phase II Stipulation). There is no showing that Defendants used or disclosed the '216 patent after that date. Given Dr. Mir's representations and warranties to Decco, although AgroFresh provided Dr. Mir's contract with AgroFresh to Decco, that alone is not substantial evidence that Defendants knew or had reason to know that Dr. Mir had a duty to maintain the '216 patent a secret. In addition, while the parties stipulated that the relevant provisions of the Agreements were "unambiguous," they did not stipulate that it was clear to Defendants prior to June 30, 2017, that such provisions were unambiguous. Nor did the parties stipulate regarding which interpretation of the Agreements is unambiguous. Finally, although Dr. Mir testified "on advice of counsel" that he misappropriated trade secrets and conspired with Defendants to do the same, Tr. (Mir) 551:10-552:2, there is no evidence that the trade secrets he referenced are those at issue, that Defendants misappropriated any trade secrets,

or that Defendants had the same state of mind regarding the conspiracy Dr. Mir testified about.

### C.   No Reasonable Jury Could Find Defendants' Alleged Trade Secret Misappropriation Was Willful and Malicious

The PUTSA defines "willful and malicious appropriation" as "[s]uch intentional acts or gross neglect of duty as to evince a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the person at fault is conscious of the consequences of his carelessness." 12 Pa.C.S.A. § 5302. AgroFresh did not provide sufficient evidence to prove that any alleged misappropriation was willful and malicious. There is no showing that Defendants sought to harm AgroFresh. Despite AgroFresh's attempt to elicit testimony from Dr. Oakes on this point, Dr. Oakes did not testify that Decco intended to harm AgroFresh. Tr. (Oakes) 655:11-19; Tr. (Oakes) 612:4-16. The record further demonstrates that Defendants made a concerted effort to ensure that they did *not* misappropriate trade secrets by, e.g., obtaining repeated verbal assurances from Dr. Mir and written representations from Dr. Mir that he owned the '216 patent technology. Tr. (Girin) 744:5-20. There is no evidence to prove that Defendants acted intentionally, with gross negligence, recklessly, or with an entire want of care to misappropriate trade secrets.

## III.   NO REASONABLE JURY COULD FIND UNFAIR COMPETITION BY DEFENDANTS

AgroFresh has not presented a legally sufficient evidentiary basis to prove its claim of unfair competition by Defendants. Under § 1 of the Third Restatement of Unfair Competition, the tort of unfair competition includes those forms and methods of competition which have been declared unlawful by the federal and state statutory law and state common law, as well as a residual category encompassing other business practices which, while not unlawful under current law, have been determined to be unfair. Restatement (3d) of Unfair Competition § 1; *see Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 227 & n.29 (3d Cir. 2009) ("[W]e will

assume without deciding that Pennsylvania courts would follow [Restatement (3d) of Unfair Competition § 1].").

A defendant is liable for unfair competition if: (1) he engages in deceptive marketing, infringement of trademark or other protectable intellectual property, misappropriation of trade secrets, or acts or practices that are actionable under federal or state statutes; and (2) his conduct causes harm to the plaintiff's commercial relations. Restatement (3d) of Unfair Competition § 1. AgroFresh has provided no evidence of deceptive marketing, and for the reasons explained in this motion, has not provided a legally sufficient evidentiary basis to prove that trade secret misappropriation, or any other unlawful act occurred. State law claims of unfair competition must be based on acts beyond patent infringement, or they will be preempted by federal patent law. *A.K. Stamping Co., Inc. v. Instrument Specialties Co., Inc.*, 106 F. Supp. 2d 627, 647 (D. N.J. 2000). Infringement of patent rights is not generally recognized as coming within the rubric of unfair competition. *Mars Inc. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed. Cir. 1994). AgroFresh had to demonstrate conduct distinct from patent infringement to sustain its state law claims. *A.K. Stamping*, 106 F. Supp. 2d at 647. It has not done so. Under the rule stated in § 1 of the Restatement, "an actor who causes harm to another merely by engaging in a business or trade is not subject to liability regardless of motive. Liability is thus determined by an analysis of the business methods employed by the actor and not by the actor's motivation." Restatement (3d) of Unfair Competition § 1, cmt. c.

AgroFresh has not proven that Plaintiffs engaged in anything other than business or trade. Decco was merely seeking to do business with its existing customer base at current market pricing. Tr. (Mowry) 1048:21-1049:6; 1049:17-1050:1; 1060:9-13; 1062:10-1063:7; DTXb-0974. Indeed, the evidence demonstrates the contrary. AgroFresh called two of Defendants

employees and officers during its case-in-chief, Robert Lynn Oakes and Francois Girin. Both testified that they had not engaged in any wrongdoing, but were merely engaging in business. For example, despite AgroFresh's allegations that Defendants wrongfully obtained AgroFresh customer information, Dr. Oakes testified that Defendants did not receive confidential AgroFresh customer information and further that Defendants already knew the identity and location of potential customers. Tr. (Oakes) 665:17-668:17. Defendants' potential customers for the accused TruPick system were already existing customers that used Defendants' other non-accused products. See *e.g.*, Tr. (Oakes) 630:22-631:4.

Moreover, AgroFresh has not provided any evidence that meets its burden for proof of harm to AgroFresh's commercial relationship. Although AgroFresh introduced evidence that generally they dropped their prices in 2016 and that they lost some sales, there is no evidence linking this to Defendants' alleged acts. To the contrary, the evidence demonstrates that, to the extent AgroFresh did lose sales or lower prices, such was caused by a third party competitor Pace entering the market a year before Decco started selling TruPick. Tr. (Harker) 810:2-815:12; *see also* Tr. (Mulhern) 1208:11-1209:9.

## IV.   NO REASONABLE JURY COULD FIND INTENTIONAL INTERFERENCE WITH EXISTING OR PROSPECTIVE CONTRACTS

### A.   AgroFresh Did Not Prove Defendants Intentionally Interfered with Existing Contractual and Business Relationships

AgroFresh has failed to provide evidence that satisfies the standard for tortious interference with existing contractual and business relationships.

To establish tortious interference with existing contractual and business relationships, AgroFresh had to establish: (1) the existence of a contractual relation between it and a third party; (2) an intent on the part of the Defendants to harm AgroFresh by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of Defendants;

9

and (4) the occasioning of actual legal damage as a result of the Defendants' conduct. *Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 933 (Pa. Super. Ct. 2013); *accord Acumed LLC v. Advanced Surgical Svcs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009); *see also Glenn v. Point Park College*, 272 A.2d 895, 898 (Pa. 1971) (emphasizing that tortious interference requires that the actor interfere "[f]or the purpose of causing harm to the plaintiff").

With respect to the first element, AgroFresh has failed to establish an existing business or contractual relationship with which Defendants allegedly interfered. Although AgroFresh has presented general evidence regarding sales losses based on the belief and understanding of AgroFresh employees (*see, e.g.*, Tr. (Harker) 803:10-23), there is no evidence that AgroFresh had to renegotiate any specific contract in response to any alleged wrongful act by Defendants, as opposed to the expiration of the Sisler patent and/or Pace's market activity. Tr. (Harker) 792:4-19, 795:23-796:4, 805:6-7, 821:3-9. Within the context of this competition privilege, a determination of "wrongful means" requires establishing that the defendant has engaged in conduct that is "actionable on a basis independent of the interference claim." *Acumed LLC*, 561 F.3d at 215-16, *see, e.g., Advanced Fluid Sys. Inc. v. Huber*, 28 F. Supp. 3d 306, 338 (M.D. Pa. 2014) (noting that "a defendant cannot be held liable if the conduct underlying the interference claim is not separately actionable in tort"). In this case, AgroFresh has not established the requisite wrongful means (i.e., conversion, unfair competition, misappropriation, or other tortious or illegal actions). Indeed, AgroFresh has not offered sufficient evidence that Decco engaged in illegal selling of TruPick before it received an EPA registration. The only evidence supporting AgroFresh's allegation is an unsubstantiated rumor within AgroFresh. Tr. (Beaulieu) 540:18-20. On the other hand, Defendants' employees have confirmed that they did not sell or offer to sell the TruPick product prior to EPA approval. Tr. (Oakes) 631:1-15.

10

In addition, AgroFresh must demonstrate that Defendants had the intent to harm AgroFresh by interfering with the alleged contractual relationship. AgroFresh has presented no evidence of intent. Decco was merely seeking to do business with its existing customer base at current market pricing. Tr. (Mowry) 1048:21-1049:6; 1049:17-1050:1; 1060:9-13; 1062:10-1063:7; DTXb-0974. Indeed, AgroFresh's questioning of Defendant's witnesses regarding intent to harm demonstrated the opposite—that Defendants held no intent to harm AgroFresh. Tr. (Oakes) 655:11-19. When AgroFresh questioned Dr. Oakes specifically as to whether Defendants realized that they were interfering with existing contractual customer relationships with AgroFresh, he adamantly denied it. As Dr. Oakes explained, the contracts that AgroFresh held only addressed a preset forecast number of rooms for treatment. Tr. (Oakes) 633:6-634:1. The existing contracts did not cover any rooms that exceeded the number in the forecast. *Id.* To the extent Defendants approached any AgroFresh customers, it was regarding the surplus rooms that were not covered in the contract. *Id.* There is no other evidence addressing this issue at all, let alone evidence demonstrating that this essential element is met by a preponderance of the evidence.

Moreover, a business may be shielded from liability for a claim of tortious interference with contractual and business relationships under a "competition privilege." The Third Circuit has explained that this privilege exists to protect legitimate competition between businesses in the free market: "if more than one party seeks to sell similar product to prospective purchasers, both necessarily are interfering with the other's attempt to do the same thing." *Acumed LLC*, 561 F.3d at 215. "[W]hen the purpose of the defendant's conduct is, in whole or in part, to protect a legitimate right or interest that conflicts with the interests of the plaintiff, 'a line must be drawn and the interests evaluated.'" *Empire Trucking Co. v. Reading Anthracite Coal Co.*, 71 A.3d 923,

934 (2013) (citation omitted). "Although this evaluation of interests is not always susceptible of 'precise definition,' it is clear that the central inquiry is whether the defendant's conduct is sanctioned by the 'rules of the game' which society has adopted." *Id.* (internal quotation marks and citations omitted).

The competition privilege protects a business from liability for a claim of tortious interference with contractual or business relations where "(a) the relation concerns a matter involved in the competition between the actor and the other," "(b) the actor does not employ wrongful means," "(c) his action does not create or continue an unlawful restraint of trade," and "(d) his purpose is at least in part to advance his interest in competing with the other." *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 388 (3d Cir. 2004*); see also Acumed LLC*, 561 F.3d at 215 ("Pennsylvania . . . recognizes that competitors, in certain circumstances, are privileged in the course of competition to interfere with others' prospective contractual relationships."). The activities identified by AgroFresh as evidence of wrongdoing (*e.g.*, possessing competitive intelligence, launching the TruPick product) were within the "rules of the game." The record reflects that the AgroFresh information in Defendants' possession was acquired through publicly available sources and was only for the purpose of advancing the Defendants' interests in competing in the now open market for the use of 1-MCP. AgroFresh possessed the same type of information regarding competitors Pace and Decco, but much of the information AgroFresh acquired was demonstrably confidential to those competing companies. Tr. (Beaulieu) 517:7-519:7, 520:6-527:3 (demonstrating AgroFresh's acquisition and possession of Pace confidential information).

The above analysis applies similarly for AgroFresh's agreements and relationship with MirTech. Not only does the evidence establish Decco believed it could work with Dr. Mir (*see,*

*e.g.*, DTXb-0677.1 (¶ 4); DTXb-0680.1; DTXb-0493.6 (§ 6.1); DTXb-0491.1-2 (§ 3.1), .17-18 (§§ 19.1-19.2); PTXa-0071.6 (§ 7); Tr. (Girin) 744:17-753:15; 562:22-566:14), but it also demonstrates AgroFresh was transitioning away from Dr. Mir, (Tr. (Balasubramanian) 1072:20-1074:3). Thus, there is insufficient evidence of an intent to harm AgroFresh, the absence of privilege for working with Dr. Mir, or any harm to AgroFresh's contractual relationship with Dr. Mir caused by Defendants' conduct. *See* Tr. (Oakes) 594:15-21; 612:4-16.

### B.   AgroFresh Did Not Prove Defendants Intentionally Interfered with Prospective Contractual and Business Relationships

Pennsylvania law distinguishes between claims of tortious interference with existing contractual relations and claims of tortious interference with prospective contractual relations. *Acumed LLC v. Advanced Surgical Svcs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). The only additional element for intentional interference with "prospective" contractual or business relationships is that there must be a reasonable likelihood that the relationship would have occurred but for the Defendants' interference. *Id.*; *see also Glenn v. Point Park College*, 272 A.2d 895, 898 (Pa. 1971) (emphasizing that tortious interference requires that the actor interfere "[f]or the purpose of causing harm to the plaintiff").

"In determining whether there is a prospective contractual relationship in a tortious interference case, Pennsylvania courts have considered whether the evidence supports a finding that there was an objectively 'reasonable likelihood or probability' that the contemplated contract would have materialized absent the defendant's interference." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 213 (3d Cir. 2009). "The Pennsylvania Supreme Court has defined a 'prospective contractual relation' as 'something less than a contractual right, but something more than a mere hope.'" *Synthes (U.S.A.) v. Globus Med., Inc.*, No. CIV.A. 04-CV-1235, 2005 WL 2233441, at *7 (E.D. Pa. Sept. 14, 2005) (*quoting Thompson Coal Co. v. Pike*

*Coal Co.*, 488 Pa. 198, 412 A.2d 466, 471 (Pa. 1979)); *Phillips v. Selig*, 959 A.2d 420, 428 (Pa. Super. Ct. 2008).

The reasonable likelihood cannot be met based merely upon evidence of an existing contractual relationship. *See Phillips v. Selig*, 959 A.2d 420, 428 (2008). AgroFresh has presented no information regarding prospective contractual or economic relationships that were lost as a result of Defendants' actions. AgroFresh identified no 2017 agreements and no 2018 agreements; yet, it contends that Defendants' actions in 2016 interfered with contracts not yet entered into. The limited testimony provided by AgroFresh employees related to sales and purchase agreements did not present any lost sales or customers as a result of Defendants' alleged acts. Additionally, AgroFresh presented no evidence regarding a loss in sales or customers for any specific prospective contracts or business relationships by name, entity, or otherwise that met this essential element. For the additional reasons described above, AgroFresh has also failed to meet its burden with respect to the four remaining elements identified above for "existing" contracts. *See Acumed*, 561 F.3d at 212 (reciting the requirements for claims under each theory by listing four elements and a contingent fifth element applicable only for prospective contracts).

## V.   NO REASONABLE JURY COULD FIND CONVERSION OF AGROFRESH'S PROPERTY BY DEFENDANTS

To establish a claim for conversion of confidential information, AgroFresh had to show that Defendants, "for the purpose of advancing a rival business interest, procure[d] by improper means information about [plaintiff's] business" and that "harm [was] caused by [the defendant's] possession, disclosure or use of the information." Restatement (2d) of Torts § 759; *Hill v. Best Med. Intern., Inc.*, Nos. 07–1709, 08–1404, 09–1194, 2011 WL 5082208, *15-16 (W.D.Pa. Oct. 25, 2011). AgroFresh had to prove that it possessed non-trade-secret yet confidential information

and that Defendants acquired that information through improper means. *Hill*, 2011 WL 5082208 at *16. AgroFresh has failed to meet its burden of proof on either element. "Pennsylvania law clarifies that withholding possession of goods is only an act of conversion if done unreasonably and after the owner has made a demand for them." *Win & Son, Inc. v. City of Philadelphia*, 178 F. Supp. 3d 234, 243 (E.D. Pa. 2016) (emphasis in original) (concluding it was reasonable for defendants to "delay tendering the property" until they were able to confirm who actually owned the property). AgroFresh contends that Defendants appropriated the technology in the '216 Patent as the basis for its conversion claim. D.I. 106 at Count XXII. AgroFresh now owns the '216 patent, so it has not been denied its property right in the patent. AgroFresh failed to provide any evidence that Defendants unreasonably continued to withhold the '216 patent after they made a demand for it.

To the extent that AgroFresh rests its conversion claim on the "technology in the '216 patent," separate and apart from the '216 patent itself, AgroFresh again cannot meet its burden. AgroFresh has not identified any "technology" in the '216 patent beyond what is disclosed in the patent itself. Thus, there is not sufficient evidence for a jury to find that Defendants interfered with AgroFresh's right to use or possess either the '216 patent or "technology" in the '216 patent. AgroFresh likewise has not met its burden with respect to "improper means" for the reasons described herein.

## VI. NO REASONABLE JURY COULD FIND AGROFRESH PROVED CIVIL CONSPIRACY

The elements of civil conspiracy are similar under Pennsylvania and Delaware law. AgroFresh had to show: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.

*Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp.2d 413, 425-26 (W.D.Pa. 2008). "Proof of malice, i.e., an intent to injure, is essential in proof of conspiracy. . . . This unlawful intent must be absent justification." *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211 (1979) (finding no civil conspiracy occurred where accused acts were done to advance legitimate business interests). A defendant is said to have acted with malice only when the sole purpose of the agreement underlying the purported conspiracy was to injure the plaintiff. *Id.*; *see, e.g., Arsenal Inc. v. Ammons*, 2014 WL 9771673, at *4-5 (E.D. Pa. 2014) (dismissing plaintiff's civil conspiracy claims in part because it failed to plead that defendants acted solely to injure the plaintiff"). Furthermore, "a showing that a [defendant] acted for professional reasons, and not solely to injure the plaintiff, negates a finding of malice." *Liberty Mutual Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 545 (W.D. Pa. 2018 citing *DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 247-48 (E.D. Pa. 2017); *see also Giordano v. Claudio*, 714 F. Supp.2d 508, 534 (E.D. Pa. 2010); *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 423-24 (E.D. Pa. 2014) (declining to find malice where plaintiff alleged that "all parties reaped financial or career benefits, at Plaintiff's expense" as a result of the alleged conspiracy); *Bro-Tech Corp. v. Thermax Inc.*, 651 F. Supp. 2d 378, 419 (E.D. Pa. 2009) (holding that plaintiff's allegations that defendants acted in the interest of their business precluded a civil conspiracy claim).

Officers or employees of the same company cannot provide the plurality of actors that is required for civil conspiracy. *Copperweld Corp. v. Independent Tube Corp.*, 467 U.S. 752, 769 (1986). Similarly, a subsidiary and parent company are not two or more separate entities for purposes of a civil conspiracy claim, and cannot be found to conspire amongst themselves. *Id.* at 770-771. The only possible claim that AgroFresh can assert is that Defendants and Dr. Mir acted with a common purpose to commit an unlawful act. AgroFresh failed to make the required

showing for all elements of this claim. The intent to do an unlawful act, or to do a lawful act by unlawful means, must be common to all members of the conspiracy, "and each must understand that the other has that purpose." *Fife v. Great Atlantic & Pacific Tea Co.*, 52 A.2d 24, 26 (Pa. 1947). It is not enough that the members of the conspiracy were in "pursuit of the same object." *Id.* The intent must also amount to more than mere "conscious parallelism" to satisfy this intent requirement. *In re Asbestos School Litigation*, 46 F.3d 1284, 1292 (3d. Cir. 1994). As explained herein, there is no evidence that Defendants possessed any intent to commit an unlawful act or to take steps to committing such an act. *See, e.g.*, Tr. (Mowry) 1049:17-1050:1; Tr. (Oakes) 655:11-19. To the extent AgroFresh alleges that Dr. Mir held such an intent, there is no evidence that Defendants understood that Dr. Mir had such a purpose.

AgroFresh also had to prove a violation of an independently actionable tort. *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 362 (E.D.Pa. 2006). Specifically, a civil conspiracy "must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.'" *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999); *see also Duffy v. Lawyers Title Ins. Co.*, 972 F. Supp. 2d 683, 698 (E.D. Pa. 2013) ("Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."). To prevail on a claim of civil conspiracy, a plaintiff must "make factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." *Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 292 (E.D. Pa. 2016) (citing *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) (internal quotations omitted). It is not sufficient that the "end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Spencer*, 968 F. Supp.

at 1020. There is no evidence that an unlawful act was committed or that there was a common

purpose to commit such an act. As explained above, AgroFresh has not met its burden of proof

with respect to any of its claims and has provided no evidence of any other unlawful act.

## VII.   NO REASONABLE JURY COULD FIND DEFENDANTS WILLFULLY INFRINGED THE '849 PATENT

### A.   Defendant Decco Could Not Infringe the '849 Patent Under the Doctrine of Equivalents as a Matter of Law

To prove infringement under the doctrine of equivalents, the patentee must prove that

"the accused device contains an equivalent for each limitation not literally satisfied." *Catalina*

*Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). In this case,

AgroFresh argues that the accused TruPick product's magnesium formate metal-organic

framework ("MOF") is equivalent to the claimed "molecular encapsulation agent" because it

stabilizes 1-methylcyclopropene by adsorption. Tr. (Walton) 354:12-24, 355:12-356:22. But in

doing so, AgroFresh ensnares the prior art Sisler Patent, U.S. Patent No. 5,518,988 (DTXb-

0563), which at Col. 5, ll. 14-21 discloses other carriers like TruPick's MOF that stabilize 1-

methylcyclopropene by adsorption. Tr. (Walton) 369:24-371:24; Tr. (Dincă) 1175:14-1176:17.

One of the various "legal limitations" on the doctrine of equivalents is the ensnarement

defense. *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir.

2009). Under the ensnarement defense, a theory of equivalence cannot be asserted if it would

encompass or "ensnare" the prior art. *G. David Jang, M.D. v. Boston Scientific Corp.*, 872 F.3d

1275, 1285 (Fed. Cir. 2017). "[A] patentee should not be able to obtain, under the doctrine of

equivalents, coverage which he could not lawfully have obtained from the PTO by literal

claims." *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 684 (Fed. Cir.

1990), *overruled in part on other grounds*, *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83

(1993). Thus, there can be no infringement if the scope of the equivalency would cover what is

considered prior art. *Intendis GmbH v. Glenmark Pharms., Inc.*, 822 F.3d 1355, 1363 (Fed. Cir. 2016).

There is no dispute that the Sisler patent is prior art. The Daly '849 patent credits the Sisler patent with disclosing 1-methylcyclopropene as an active compound to inhibit ethylene binding. PTXa-0453 at 3:20-22. But the Sisler patent also disclosed carriers that stabilize 1-methylcyclopropene by adsorption. For example, Dr. Walton testified that diatomaceous earth, DTXb-0563 at 5:17, is "[a]n old-fashioned adsorbant" that adsorbs 1- methylcyclopropene. Tr. (Walton) 371:2-7. And she testified that other carriers listed in col. 5, ll. 14-21 of the Sisler patent attach 1-methylcyclopropene molecules by adsorption. *Id*. at 371:20-24; *see* Tr. (Dincă) 1175:14-1176:17.

AgroFresh could not have obtained literal claims from the Patent Office covering the Sisler patent's carriers that stabilize 1-MCP by adsorption. Thus, it cannot assert an equivalence theory that ensnares them. But this is precisely what its equivalence theory against TruPick's MOF does because the theory broadly covers adsorbents of 1-methylcyclopropene. Tr. (Walton) 366:19-367:1. Dr. Walton's conclusory re-direct testimony that the Sisler patent's carriers are structurally different from the '849 patent's molecular encapsulation agents is irrelevant because her equivalence theory is based *not* on structural similarity, but on alleged *functional* equivalence between molecular encapsulation agents and adsorbents in general. *See id*. at 425:17-426:1. Thus, Decco could not infringe the '849 patent under the doctrine of equivalents as a matter of law.

## B.    No Reasonable Jury Could Find UPL Infringed the '849 Patent

AgroFresh has proffered *no* evidence that UPL Ltd.—the Indian parent company of the other U.S.-based defendants—ever made, used, offered to sell, or sold the accused TruPick product within the United States, or imported it into the United States. In its case-in-chief,

AgroFresh pursued only direct infringement of the '849 Patent. *See* Tr. (Walton) 345:14-17, 346:14-18. To establish liability for direct infringement, the plaintiff must show that the defendant "makes, uses, offers to sell, or sells [the] patented invention, within the United States or imports into the United States [the] patented invention." 35 U.S.C. § 271(a).

Here, there is no evidence that UPL made, used, offered to sell, or sold TruPick within the United States, or imported TruPick into the United States. Nor has AgroFresh advanced any theory under which the other U.S.-based defendants' infringing acts may be attributed to UPL. Thus, even if the TruPick product practices the '849 patent's claim 1 as AgroFresh contends, no reasonable jury would have a sufficient evidentiary basis to find for AgroFresh that UPL is liabile for patent infringement. *See* Fed. R. Civ. P. 50(a)(1).

Thus, UPL requests that the Court enter judgment as a matter of law that no reasonable jury could find infringement of the '849 Patent by UPL.

### C. No Reasonable Jury Could Find Decco's Alleged Patent Infringement Was Willful

AgroFresh has failed to proffer substantial evidence that Decco's alleged infringement of the '849 patent under the doctrine of equivalents was willful. Willful infringement is conduct that it is "willful, wanton, malicious, bad faith, deliberate, consciously wrong, or flagrant." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). Mere awareness of an asserted patent does not constitute willful misconduct. *See Intellectual Ventures 1, LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 611-12 (D. Del. 2017) (no willful infringement where plaintiff "identifie[d] no evidence of behavior beyond typical infringement"); *Vehicle IP, LLC v. AT & T Mobility LLC*, 227 F. Supp. 3d 319, 331 (D. Del. 2016) (no willfulness where the patentee "[did] not identify other evidence, beyond pre-suit knowledge of the patent, that could show that [the accused infringer's] infringement was 'egregious,' 'deliberate,' [or] 'wanton'").

In its case-in-chief, AgroFresh proffered no evidence that Decco deliberately chose TruPick's magnesium formate MOF because of its equivalence to the '849 patent's claimed "molecular encapsulation agent." The evidence shows that the opposite is true: Decco chose the TruPick MOF upon belief that it is not the equivalent of a molecular encapsulation agent. *See* Tr. (Oakes) 698:24-699:16; PTXa-168 at 11.  Dr. Oakes is the only witness who addressed Decco's state of mind, and he testified to Decco's belief that it was not infringing the '849 patent. Tr. (Oakes) 698:24-699:13. On this record, no reasonable jury could find that Decco's alleged infringement of the '849 patent under the doctrine of equivalents was willful.

## VIII.   NO REASONABLE JURY COULD FIND THAT THE '849 PATENT IS NOT INVALID

### A.     No Reasonable Jury Could Find That Claim 1 Is Not Indefinite

Section 112 of the Patent Statute requires that a patent claim "particularly point[] out and distinctly claim[ its] subject matter." 35 U.S.C. § 112, ¶ 2. Whether the claim satisfies this definiteness requirement is a question of law. *Teva Pharms. USA, Inc. v. Sandoz, Inc*., 789 F.3d 1335, 1341 (Fed. Cir. 2015). The claim is invalid as indefinite if it fails to inform persons skilled in the art about the scope of the invention with reasonable certainty. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

Claim 1 of the '849 patent fails to so inform persons skilled in the art. It recites a "molecular encapsulation agent." The Court ordered that this claim term means: "a compound that has *a lock and key structure similar to an enzyme* whereby a substrate selectively fits into the encapsulation site." D.I. 375 at 1 (emphasis added). AgroFresh's own experts could not agree what the "lock and key structure" encompasses For example, Dr. Walton, with 19 years of experience, testified that zeolites *do not* have a "lock and key structure." Tr. (Walton) 361:20-23. But Dr. Thompson, with 25 years of experience, directly contradicted her. Tr. (Thompson)

1259:5-7, 1259:19-1260:1.

When two highly experienced experts in the field look at the exact same compound (zeolite) and cannot determine whether it has a "lock and key structure" or not, this shows that the scope of the "lock and key structure" is not reasonably certain to persons skilled in the art. Decco's expert Dr. Dincă testified to his confusion as well on the issue. Tr. (Dincă) 1180:8-20. Under these circumstances, no reasonable jury could find that the scope of "molecular encapsulation agent" is reasonably certain. Thus, the Court should enter judgment as a matter of law that claim 1 of the '849 patent is invalid as indefinite.

### B.    No Reasonable Jury Could Find That Claim 1 Is Not Anticipated

Section 102 of the Patent Statute mandates that a patent claim is invalid as anticipated if, among other reasons, it was patented in the U.S. more than one year before the application for the patent claim was filed. 35 U.S.C. § 102(b). That is the case with claim 1 of the '849 patent.

U.S. Patent No. 5,321,014 ("Janz," DTXb-0562) issued on June 4, 1994, about four years before the application for the '849 Patent was filed. Janz discloses a complex formed from α-cyclodextrin and 1-methylcyclopropene, just like claim 1 of the '849 Patent. First, Janz discloses the α-cyclodextrin "molecular encapsulation agent." DTXb-0562 at 21:50-51; Tr. (Thompson) 1260:18-1261:3; Tr. (Dincă) 1178:5-1179:4. Next, it discloses 1-methylcyclopropene. DTXb-0562 at 22:10-15 (disclosing cyclic alkenes including 1-methylcyclopropene); Tr. (Thompson) 1260:3-17; Tr. (Dincă) 1179:5-9. Finally, it discloses that α-cyclodextrin encapsulates molecules like 1-methylcyclopropene that are smaller than benzene. DTXb-0562 at 21:50-51; Tr. (Thompson) 1261:4-10; Tr. (Dincă) 1178:5-1179:9. Thus, according to the testimony of both sides' experts, Janz anticipates claim 1 of the '849 Patent.

AgroFresh's expert, Dr. Thompson, testified that a person of ordinary skill in the art of inhibiting the ethylene response in plants would not have been aware of or considered Janz when

looking for a solution to inhibit the ethylene response. Tr. (Thompson) 1246:15-21. But that is legally irrelevant. "[A] reference may be from an entirely different field of endeavor than that of the claimed invention or may be directed to an entirely different problem from the one addressed by the inventor, yet the reference will still anticipate if it explicitly or inherently discloses every limitation recited in the claims." *State Contr. & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1068 (Fed. Cir. 2003) (quoting *In re Schreiber*, 128 F.3d 1327, 1478 (Fed. Cir. 1997)). The Court should enter judgment as a matter of law that no reasonable jury could find that claim 1 of the '849 patent is not invalid as anticipated.

## IX.   AGROFRESH HAS NOT PROVED DAMAGES

### A.   AgroFresh Failed to Prove It Is Entitled to Lost Profits

Whether AgroFresh has satisfied its burden to demonstrate it is entitled to lost profit damages is a question of law for the Court. *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007). "Only after the court has decided, as a matter of law, that lost profits are available does the jury then get to determine the amount of those lost profits." *Id.* at 1293.

To recover lost profits, AgroFresh had to show "causation in fact" in a "but for" analysis where, absent Defendants' accused conduct, there was a reasonable probability it would have made the Defendants' sales. *Grain Processing Corp. v. Am. Maize- Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). "An award of lost profits may not be purely speculative." *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1362 (Fed. Cir. 2001).

To prove price erosion, AgroFresh had to show that, "but for" Defendant's accused conduct, it would have sold its product at higher prices. *Crystal Semiconductor Corp. v. TriTeach Microelectronics Inter., Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001). AgroFresh also had to present evidence of the (presumably reduced) amount of product it would have sold at the higher price. *Id.* To show causation with "reliable evidence," AgroFresh had to produce "credible

economic evidence to show the decrease in sales, if any, that would have occurred at the higher hypothetical price." *Id.* Evidence of price fluctuations in the relevant market as well as other reasons for cutting prices can render price erosion damages too speculative. *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996).

AgroFresh has not proven its entitlement to lost profits because it has not proven liability for any of its claims. It has asserted the same compensatory damages theory for trade secret misappropriation, unfair competition, intentional interference, conversion, and patent infringement. However, AgroFresh has not shown that its damages (either lost profits in the form of lost sales or price erosion) are linked to the alleged misconduct. AgroFresh instead assumes that the damages would be the same regardless of the type of liability and regardless of the extent of the liability. For example, whether AgroFresh proves that Defendants misappropriated one or all of AgroFresh's alleged trade secrets, its proffered damages amount would remain the same. Mr. Thomas offered no testimony on how the damages would differ based on which, if any, underlying claim is proven. Tr. (Thomas) 1012:14-1013:6.

On lost profits, Mr. Thomas confirmed that he failed to properly analyze whether there were no accepted, noninfringing alternatives (*Panduit* factor two). AgroFresh offered no expert testimony on acceptable noninfringing alternatives. Mr. Thomas likewise did not rely on a technical expert. Instead of relying on competent expert evidence, Mr. Thomas merely made the conclusory assertion that no such alternatives existed. Tr. (Thomas) 954:9-17. He therefore did not properly establish that other products, like Fysium, were not noninfringing alternatives to TruPick. *See* Tr. (Mulhern) 1215:20-1216:4. AgroFresh offered no additional testimony on the subject. AgroFresh also failed to establish that it had the capacity to exploit the additional demand for its lost sales (*Panduit* factor three). He again merely offered the conclusory assertion

24

that AgroFresh had such capacity. Tr. (Thomas) 954:18-955:2.

On price erosion, AgroFresh's damages claim is too speculative. It offered no reliable evidence that the prices of SmartFresh were changed for any specific customer because of Defendants' conduct. Although AgroFresh offered the expert testimony of Mr. Thomas, who discussed specific customers (*see, e.g.*, Tr. 950:22-951:15), he did not point to sufficient evidence that these specific contracts were changed because of Decco's entrance with TruPick. Mr. Thomas also failed to account for other factors leading to price declines, such as competition from Pace. *See, e.g.*, Tr. (Mulhern) 1204:14-25; 1208:16-23. He simply attributed 100% of the price erosion for SmartFresh to Defendants' conduct, notwithstanding evidence of prior competition from Pace and AgroFresh's already declining prices before the TruPick entrance. Tr. (Thomas) 944:3-22. Mr. Thomas's testimony that, absent Decco's entry into the market with TruPick, Pace would not have caused any erosion in SmartFresh prices was based on pure speculation and was wholly unsupported. AgroFresh provided no Pace documents and no testimony from anyone with actual knowledge of the reasons for Pace's market activity. Compounding the speculative nature of Mr. Thomas's testimony was his reliance on contracts signed in 2018. There is no evidence that *any* of these contracts were entered into *before* the Daly patent expired. Tr. (Thomas) 940:15-22. The failure to consider whether damages for post-patent expiration sales was appropriate renders his testimony unreliable. With no competent evidence on price erosion, AgroFresh's damages claim fails as a matter of law.

**B.      AgroFresh Failed to Prove Unjust Enrichment Damages Caused by Alleged Trade Secret Misappropriation**

Under the DTSA, a plaintiff may recover "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss." 18 U.S.C. § 1836(b)(3)(B)(II). The PUTSA allows the same recovery. 12 Pa.C.S.A.

§ 5304(a).  AgroFresh has not proven its entitlement to unjust enrichment damages for misappropriation because it has not proven liability for misappropriation. But even if it had, its claim for damages must fail because it has offered no evidence that any unjust enrichment was *caused by the misappropriation of the trade secret*. AgroFresh offered no expert testimony on the costs of development of its alleged trade secrets, and it offered no expert testimony that the trade secrets at issue actually benefitted Defendants' financially. In fact, as Mr. Girin testified, Defendants costs for TruPick exceeded its revenues, so it lost money on the commercialization of TruPick. Tr. (Girin) 762:25-763:13. Rather than proceed with an expert (or even a lay witness) who could identify the specific development costs for each specific trade secret, AgroFresh simply compiled its costs for SmartFresh over a 14-year period. The testimony of AgroFresh's trio of financial witnesses (and the concomitant documentary evidence) on development costs is irrelevant to unjust enrichment. *See also* Tr. (Mulhern) 1198:5-14; 1203:3-8.

The Court made clear in granting Defendants' *Daubert* motion that "SmartFresh" is "*not* [a] particular trade secret[] allegedly misappropriated by Defendants." (D.I. 566 at 3.) But "SmartFresh" is plainly the only thing these costs relate to. Just as it did with Mr. Kleinrichert, AgroFresh collected historical "product" and "market" costs for *SmartFresh*, added them up, and presented the jury with a big, irrelevant number. If Mr. Kleinrichert's "summation of costs from two general aspects of Plaintiff's business" (SmartFresh and 1-MCP products) was not helpful to the jury, neither was Mr. Cassidy's "summation" of one of those two general aspects; i.e., SmartFresh.

Although the Court's *Daubert* order explained that AgroFresh may proceed with fact witnesses if they have "the requisite financial knowledge," Mr. Cassidy clearly did not and the cost records he testified about were unreliable. Mr. Cassidy confirmed that AgroFresh had a

"significant deficiency" and a "material weakness" related to its internal financial controls, Tr. (Cassidy) 875:5-13; 876:8-25, that at least certain records he relied on were "wrong" (882:20-883:7), that his cost inputs were not fully reconciled with other records on the same data (883:20-884:8; 894:15-18), and that he arbitrarily selected "higher numbers" (894:7-14). He also confirmed that he did not know *any* specific costs for any of the alleged trade secrets and that the documents he relied on did not separately break out costs for each trade secret. (*E.g.*, 906:3-22, 909:22-910:5.) Mr. Cassidy testified that AgroFresh had no other trade secrets relating to SmartFresh other than the six categories presently identified (900:4-13), notwithstanding that AgroFresh has already withdrawn trade secrets in this case on manufacturing, stabilization technology, and accumulated knowledge (among others) related to SmartFresh. He also conceded his compilation includes costs for publicly available information (900:19-902:11) and that the $180 million in marketing costs were wholly unrelated to the trade secrets (897:21-25). Because Mr. Cassidy was not knowledgeable about the *actual* costs of developing the trade secrets at issue and because he is not an expert, his testimony on how the costs of a non-trade secret (SmartFresh) allegedly related to the asserted trade secrets lacked all probative value. *See also* Tr. (Mulhern) 1195:25-1196:3; 1198:5-14; 1203:3-8. The same flaws are true for Mr. Zettler (293:25-295:13) and Mr. Chandramouli (713:17-717:25).

AgroFresh also offered no evidence on apportionment. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005) (concluding expert's testimony regarding damages for misappropriation of *all* trade secrets was "useless to the jury" because expert failed to provide a reasonable basis for the jury to apportion damages after awarding damages for misappropriation of only one trade secret); *In re Avaya Inc.*, No. 17-10089 (SMB), 2018 WL 1940381, at *8–9 (Bankr. S.D.N.Y. Apr. 23, 2018) (rejecting damages theory for

failure to apportion because it assumed that every dollar defendant saved was attributable to the misappropriated trade secrets).

Because AgroFresh provided no evidence linking (much less sufficiently linking) the historical costs for "SmartFresh"—which is *not* a trade secret—to the actual trade secrets asserted in this case, the Court should reject AgroFresh's invitation to have the jury speculate on unjust enrichment. *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017) ("Damages 'must not be left to conjecture by the jury. They must be proved, and not guessed at.'").

**C.      The Jury Should Not Be Permitted to Award Exemplary Damages**

Both the DTSA and PUTSA allow an award of "exemplary damages" in an amount not more than 2 times the amount of compensatory damages, if the trade secret is willfully and maliciously misappropriated. 18 U.S.C. § 1836(b)(3)(c); 12 Pa.C.S.A. § 5304(b). An award of exemplary damages is inappropriate here because AgroFresh has not proven misappropriation. Exemplary damages are also improper here because the record contains no evidence of willful and malicious misappropriation. *See* Section II.C., *supra*.

**D.      AgroFresh Failed to Prove Damages for Alleged Conversion of Its Property**

In general, "[t]he measure of damages in an action for conversion is the market value of the converted property at the time and place of conversion." *Northcraft*, 466 A.2d at 628. Replacement cost, however, is a long-established exception to this general rule, particularly where the market value of the converted property is unascertainable. *Lynch v. Bridges & Co. Inc.*, 678 A.2d 414, 415 (Pa. Super. Ct. 1996). Under the Restatement, "the amount of damages for the conversion of a chattel is diminished by its recovery or acceptance by a person entitled to its possession." Restatement (Second) of Torts, § 922 (see comment b, explaining that when the person entitled to the chattel recovers it by legal process, the damages recoverable are

"diminished to the extent of the value of the chattel at the time of its recovery or return).

AgroFresh's damages claim for conversion fails. AgroFresh's conversion claim relates only to confidential information in the '216 patent technology. D.I. 508 at 5 & n.2; D.I. 412 (Count XI). AgroFresh offered no evidence on the value of this information at the time and place of conversion, much less on the value of the information at any point in time. The record also is silent as to the specific time(s) when the '216 patent was converted by Defendants. Without such evidence, AgroFresh cannot show the market value of the converted property *at the time* of the conversion. And although AgroFresh is now the owner of the '216 patent (i.e., it has been returned to AgroFresh), AgroFresh failed to provide evidence on the value of the '216 patent technology on the date of its return. The record is simply silent on the value of the confidential information in the '216 patent at the time of the conversion, at the time of the return, or even today. Although AgroFresh's damages expert testified that his lost profits and price-erosion damages could apply to conversion (Tr. (Thomas) 1012:14-1013:6), that is inconsistent with the law.

### E.     The Jury Should Not Be Permitted to Award Punitive Damages

AgroFresh is seeking punitive damages only for its claims of unfair competition, intentional interference, conversion, and conspiracy. Since AgroFresh has failed to prove any these claims with sufficient evidence, the jury should not be permitted to consider punitive damages.

Even if the jury were to find for AgroFresh on one of these claims, no reasonable jury could find that AgroFresh is entitled to any punitive damages. Pennsylvania case law makes clear that "punitive damages are an extreme remedy" available in only the most exceptional matters." *Phillips v. Cricket Lighters*, 584 Pa. 179, 188 (2005). Punitive damages are appropriate only where the underlying tortious conduct is "outrageous, because of the defendant's evil

motive or his reckless indifference to the rights of others." *In re Lemington Home for the Aged*, 777 F.3d 620, 633 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984) ). Under Pennsylvania law, punitive damages are only available to compensate "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Kerlin v. Howard*, No. 4:18-CV-00481, 2018 WL 4051702, *1 (M.D. Pa. Aug. 24, 2018). Pennsylvania has adopted Section 908(2) of the Restatement (Second) of Torts, which permits punitive damages only for conduct that is "outrageous because of the defendant's evil motive or his reckless indifference to the rights of others." *Id.* Accordingly, a punitive damages claim must be supported by sufficient evidence to establish: (1) that the defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed; and (2) that he acted or failed to act in conscious disregard of that risk. *Kerlin*, 2018 WL 4051702 at *1.

The record does not contain sufficient evidence to award punitive damages. There is no showing that Defendants sought to harm AgroFresh or that Defendants subjectively appreciated the risk of harm and consciously disregarded that risk. The record shows the opposite. Despite AgroFresh's attempt to elicit testimony from Dr. Oakes on this point, Dr. Oakes did not testify that Decco intended to harm AgroFresh. Tr. (Oakes) 655:11-19. The record further demonstrates that Defendants made a concerted effort to ensure that they did *not* violate the law, as they obtained verbal and written representations from Dr. Mir that he owned the '216 patent technology. Tr. (Girin) 744:5-20; DTXb-680; DTXb-493; DTXb-491; and PTXa-71.

30

*OF COUNSEL*

Gerald F. Ivey
John M. Williamson
Anand K. Sharma
Rajeev Gupta
Maximilienne Giannelli
Karthik Kumar
Daniel F. Roland
FINNEGAN, HENDERSON, FARABOW
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000
gerald.ivey@finnegan.com
john.williamson@finnegan.com
anand.sharma@finnegan.com
raj.gupta@finnegan.com
max.giannelli@finnegan.com
karthik.kumar@finnegan.com
daniel.roland@finnegan.com

Dated: October 11, 2019

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Nicole K. Pedi (#6236)
RICHARDS, LAYTON, & FINGER
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Cottrell@rlf.com
Moyer@rlf.com
Pedi@rlf.com

*Attorneys for Defendants*