IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AGROFRESH INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-662 (MN) |
| | ) | |
| ESSENTIV LLC, DECCO U.S. POST- | ) | |
| HARVEST, INC., CEREXAGRI, INC. d/b/a | ) | |
| DECCO POST-HARVEST, and UPL, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**FINAL JURY INSTRUCTIONS**

# TABLE OF CONTENTS

I.     GENERAL ........................................................................................................... 1

    A.    INTRODUCTION ...................................................................................... 1

    B.    JURORS' DUTIES .................................................................................... 2

    C.    EVIDENCE DEFINED .............................................................................. 3

    D.    DIRECT AND CIRCUMSTANTIAL EVIDENCE .................................... 4

    E.    CONSIDERATION OF EVIDENCE .......................................................... 5

    F.    STATEMENTS OF COUNSEL .................................................................. 6

    G.    CREDIBILITY OF WITNESSES .............................................................. 7

    H.    EXPERT WITNESSES .............................................................................. 8

    I.    DEPOSITION TESTIMONY ..................................................................... 9

    J.    USE OF NOTES ...................................................................................... 10

    K.    BURDENS OF PROOF ............................................................................ 11

II.    MISAPPROPRIATION OF TRADE SECRETS ............................................ 13

    A.    DEFINITION OF "TRADE SECRET" .................................................... 13

    B.    "SECRECY" REQUIREMENT ................................................................ 14

    C.    "REASONABLE MEASURES" REQUIREMENT.................................... 15

    D.    "INDEPENDENT ECONOMIC VALUE" ............................................... 16

    E.    DEFINITION OF "MISAPPROPRIATION"........................................... 17

    F.    DEFINITION OF "IMPROPER MEANS" ............................................... 18

    G.    WILLFUL AND MALICIOUS CONDUCT ............................................ 20

III.    UNFAIR COMPETITION............................................................................... 21

IV.    INTENTIONAL INTERFERENCE ................................................................ 22

    A.    INTENTIONAL INTERFERENCE WITH AN EXISTING CONTRACT (AGROFRESH CUSTOMERS AND MIRTECH) ..................................... 22

    B.    INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS.................................................................................... 23

    C.    "WRONGFUL MEANS" ........................................................................ 25

V.    CONVERSION................................................................................................ 26

VI.    CIVIL CONSPIRACY.................................................................................... 27

VII.    PATENT JURY INSTRUCTIONS ................................................................ 28

    A.    THE CLAIMS OF A PATENT ................................................................ 29

    B.    INFRINGEMENT GENERALLY............................................................ 30

    C.    DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS...................................................................................... 31

i

D.     WILLFUL INFRINGEMENT ............................................................. 33

E.     INVALIDITY – BURDEN OF PROOF ................................................. 34

F.     INVALIDITY – INDEFINITENESS .................................................... 35

G.     PRIOR ART ....................................................................................... 36

H.     ANTICIPATION ................................................................................ 37

VIII.  DAMAGES ..................................................................................................... 38

A.     DAMAGES GENERALLY .................................................................. 38

B.     DAMAGES ON MULTIPLE LEGAL THEORIES ............................... 39

C.     COMPENSATORY DAMAGES – GENERALLY ................................ 40

D.     COMPENSATORY DAMAGES – PATENT INFRINGEMENT ....................... 43

     1.     LOST PROFITS – "BUT FOR" TEST ...................................... 44

     2.     LOST PROFITS – DEMAND .................................................. 45

     3.     LOST PROFITS – NONINFRINGING SUBSTITUTES –
          ACCEPTABILITY ................................................................ 46

     4.     LOST PROFITS – NONINFRINGING SUBSTITUTES –
          AVAILABILITY ................................................................... 47

     5.     LOST PROFITS – CAPACITY ................................................ 48

     6.     LOST PROFITS – AMOUNT OF PROFIT ............................... 49

     7.     LOST PROFITS – MARKET SHARE ....................................... 50

     8.     LOST PROFITS – PRICE EROSION ....................................... 51

E.     COMPENSATORY DAMAGES – UNJUST ENRICHMENT
       (AVOIDED COSTS) .......................................................................... 52

F.     COMPENSATORY DAMAGES – CONVERSION ............................. 53

IX.    PUNITIVE DAMAGES ................................................................................. 54

A.     GENERALLY .................................................................................... 54

B.     AMOUNT OF PUNITIVE DAMAGES .............................................. 55

X.     PREJUDGMENT INTEREST ........................................................................ 56

XI.    DELIBERATIONS AND VERDICT ............................................................. 57

A.     DELIBERATION AND VERDICT – INTRODUCTION ...................... 57

B.     UNANIMOUS VERDICT ................................................................... 58

C.     DUTY TO DELIBERATE ................................................................... 59

D.     COURT HAS NO OPINION ............................................................... 60

# I.    **GENERAL**

## A.    **INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case.  Then we will hear the closing arguments.    After that, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

**B.**     **JURORS' DUTIES**

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

## C.      EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed. Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.

Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

### D.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.

The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### E.    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**F.      STATEMENTS OF COUNSEL**

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

### G.       CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you. You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

**H.     EXPERT WITNESSES**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

## I.   DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through the excerpts from a deposition. The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the depositions may appear to have been edited. Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

### J.    USE OF NOTES

You may have taken notes during trial to assist your memory. As I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.

Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

### K.      BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." Here, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

As you know, the Plaintiff in this case is AgroFresh, Inc., which I will refer to in these instructions as Plaintiff or AgroFresh. AgroFresh has sued the Defendants, Essentiv LLC, Decco U.S. Post-Harvest, Inc., Cerexagri, Inc., and UPL, Ltd. I will refer to them in these instructions collectively as "Defendants" or as "Decco" and "UPL".

AgroFresh asserts claims against Decco and UPL for misappropriation of trade secrets, unfair competition, intentional interference with contractual and business relations, conversion, and civil conspiracy, and against Decco for patent infringement. Defendants deny those claims.

AgroFresh has the burden of proving its claims and the amount of monetary damages by a preponderance of the evidence. This means AgroFresh has to produce evidence which, when considered in light of all the facts, leads you to believe that what AgroFresh claims is more likely true than not. To put it differently, if you were to put AgroFresh's and the Defendants' evidence on the opposite sides of the scale, the evidence supporting AgroFresh's claims would have to make the scales tip somewhat to its side. If the scale should remain equal or tip in favor of the Defendants, you must find for the Defendants.

AgroFresh also has the burden of proving that any patent infringement, trade secret misappropriation, tortious interference, conversion, unfair competition, and civil conspiracy was willful by a preponderance of the evidence.

11

The Defendants assert that all of the asserted patent claims are invalid.  The Defendants have the burden of proving that the asserted claims are invalid and have to do so by clear and convincing evidence.  Proof by clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden of proof than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases.  That requirement is the highest burden of proof in our judicial system.  It applies in criminal cases, but does not apply to civil cases, like this one, and, therefore, you should put it out of your mind.

## II.     MISAPPROPRIATION OF TRADE SECRETS

### A.     DEFINITION OF "TRADE SECRET"

In deciding the misappropriation of trade secrets issue, you must first decide whether AgroFresh owned an identifiable trade secret or trade secrets.  The term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

1.     the information is indeed secret;

2.     the owner of the information has taken reasonable measures to keep such information secret; and

3.     the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

## B.     "SECRECY" REQUIREMENT

To determine that a trade secret exists, you must first decide whether the information was indeed secret when Defendants' allegedly wrongful conduct occurred. Matters that are generally known to the public at large or to people in a trade or business are not trade secrets. Nor can information be considered a trade secret if it would be ascertainable with reasonable ease from publicly available information. In addition, a trade secret must possess enough originality so that it can be distinguished from everyday knowledge.

Absolute secrecy is not necessary for information to qualify as a trade secret. There is no requirement that no one else in the world possess the information. Rather, AgroFresh must demonstrate that the information was known only to it or to a few others who have also treated the information as a trade secret.

### C. "REASONABLE MEASURES" REQUIREMENT

AgroFresh must prove that it took reasonable measures to protect the secrecy of its trade secret. There is no precise definition of what "reasonable measures" are; what is reasonable depends on the situation. Factors you may wish to consider in evaluating whether "reasonable measures" were taken could include the following:

1.      whether AgroFresh made it a practice to inform its employees or others involved with its business that the information was a trade secret and/or was to be kept confidential;

2.      whether AgroFresh required employees or others involved with its business to sign confidentiality agreements regarding the information or agreements not to compete in areas that could use the information;

3.      whether AgroFresh restricted access to the information on a "need to know" basis; and

4.      whether AgroFresh generally maintained tight security to protect the alleged trade secret, and did not voluntarily disclose it to others, except in confidence.

### D.   "INDEPENDENT ECONOMIC VALUE"

To qualify as a trade secret, the information must derive independent economic value from the fact that it is not generally known or not readily ascertainable by proper means.  Stated another way, a trade secret must be valuable either to AgroFresh or to its business rivals in the sense that, as long as it is secret, the information provides AgroFresh with an actual or potential competitive advantage over its rivals. In determining whether there is an actual or potential competitive advantage, you may consider factors such as:

1.   the extent to which AgroFresh used or uses the information in its business;

2.   whether the information allows AgroFresh to earn increased profits or operate its business more efficiently;

3.   what gain or benefits Defendants' business obtained from the information;

4.   what money, effort, and time AgroFresh expended to develop the information;

### E.      DEFINITION OF "MISAPPROPRIATION"

For each alleged trade secret, AgroFresh has the burden of proving by a preponderance of the evidence that Defendants have misappropriated the trade secret.  Misappropriation means:

(1)      acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2)      disclosure or use of a trade secret of another without express or implied consent--

 (a)      by a person who used improper means to acquire knowledge of the trade secret;

 (b)      by a person who, at the time of disclosure or use, knew or had reason to   know that the knowledge of the trade secret was--

  (i)      derived from or through a person who had used improper means to acquire the trade secret;

  (ii)      acquired under circumstances giving rise to a duty to maintain the    secrecy of the trade secret or limit the use of the trade secret; or

  (iii)      derived from or through a person who owed a duty to the person    seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

 (c)      by a person who, before a material change of the position of the person, knew or had reason to know that--

  (i)      the trade secret was a trade secret; and

  (ii)      knowledge of the trade secret had been acquired by accident or mistake.

## F.    DEFINITION OF "IMPROPER MEANS"

"Improper means" in acquiring a trade secret can arise in three types of circumstances:

(a)    where Defendants themselves obtained the trade secret by their own improper conduct,

(b)    where Defendants obtained the trade secret from a third party who Defendants knew or had reason to know acquired the trade secret by improper means, and

(c)    where Defendants induced another to obtain the trade secret by improper means.

It would be improper for Defendants to acquire trade secret information by theft, bribery, trespass, misrepresentation, or corporate espionage, such as wiretapping. It would also be improper for Defendants to acquire the information from a third party who Defendants knew or had reason to know either used improper means to acquire the information or breached a duty of confidentiality in disclosing the information. Where Defendants acquired the information from a third party in one of these circumstances, Defendants' conduct is only improper if Defendants knew or should have known that it was acquiring a trade secret belonging to another. Lastly, it would be improper for Defendants to induce another to either use improper means to acquire the information or to breach a duty of confidentiality that person owed to AgroFresh.

Because improper means can cover a wide variety of circumstances, it may be helpful to identify situations that the law would *not* consider "improper means." It is not improper to acquire information through independent development, research of public resources (such as, for example, trade directories, patent filings, or even the telephone book), or purchase of a product that contains trade secrets and then disassembling it to analyze those secrets (a process called "reverse engineering"). Similarly, a party who obtains information by mistake, or without knowledge or reason to know that the information is a trade secret, has not acquired the trade secret through improper means.

A defendant who has acquired trade secret information by improper means has no right to use or to disclose the information in any way whatsoever. Thus, any use or disclosure by a defendant who has acquired a trade secret by improper means is wrongful.

### G.   WILLFUL AND MALICIOUS CONDUCT

In determining whether Defendants engaged in willful and malicious misappropriation of the trade secrets, "willful and malicious" means:

Such intentional acts or gross neglect of duty as to evince a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the person at fault is conscious of the consequences of his carelessness.

## III.    <u>UNFAIR COMPETITION</u>

AgroFresh contends that Defendants unfairly competed against AgroFresh.  Defendants are liable for unfair competition if you find by a preponderance of the evidence that they:

(1)    caused harm to the commercial relations of AgroFresh by engaging in a business or trade; and

(2)    the harm resulted from acts or practices of Defendants relating to:

(a)    the misappropriation of trade secrets; or

(b)    other acts or practices of Defendants determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both AgroFresh and the public; or

(c)    other acts or practices of Defendants determined to be unlawful.

As a general matter, if the means of competition are otherwise tortious, they will also ordinarily constitute an unfair method of competition. "Otherwise tortious" includes tortious interference. Liability for unfair competition, however, is not limited to conduct that is otherwise tortious.

As a general matter, Defendants have the freedom to compete, including to divert business not only from competitors generally, but also from AgroFresh.  You may only find Defendants liable for unfair competition if you determine that the harm to AgroFresh resulted from particular methods of competition determined to be unlawful.

## IV.   **INTENTIONAL INTERFERENCE**

### A.   **INTENTIONAL INTERFERENCE WITH AN EXISTING CONTRACT (AGROFRESH CUSTOMERS AND MIRTECH)**

AgroFresh contends that Defendants intentionally interfered with AgroFresh's existing contractual relationships.  In order to prove its claim for intentional interference with an existing contractual relationship, AgroFresh must prove each of the following elements by a preponderance of the evidence:

> (1)   the existence of an existing contract between AgroFresh and a third party;
>
> (2)   an intent on the part of Defendants to harm AgroFresh by interfering with that contractual relationship;
>
> (3)   the absence of a privilege or justification on the part of Defendants; and
>
> (4)   actual damage to AgroFresh caused by Defendants' interference.

In determining whether Defendants intentionally interfered with AgroFresh's existing contractual relationships, you must consider whether the purpose of Defendants' conduct was to protect a legitimate interest and evaluate that against AgroFresh's interests.  In evaluating these interests, you will consider:

> (a)   the expectations of Defendants and AgroFresh,
>
> (b)   the relations between Defendants and AgroFresh,
>
> (c)   the interest Defendants sought to advance,
>
> (d)   whether Defendants' conduct was done for the purpose of causing the interference or whether it was merely incidental to another purpose, and
>
> (e)   whether Defendants' conduct is sanctioned by the "rules of the game" which society has adopted for business competition.

You cannot find in favor of AgroFresh unless you find Defendants employed "wrongful means" to interfere with AgroFresh's existing contractual relationship.

## B.    INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

AgroFresh contends that Defendants intentionally interfered with AgroFresh's prospective contractual/business relationships.  In order to prove its claim for intentional interference with a prospective contractual or business relationship, AgroFresh must prove each of the following elements by a preponderance of the evidence:

    (1)    the existence of a prospective contractual or business relationship between AgroFresh and a third party;

    (2)    an intent on the part of Defendants to harm AgroFresh by interfering with that prospective relationship;

    (3)    the absence of a privilege or justification on the part of Defendants;

    (4)    actual damage to AgroFresh caused by Defendants' interference; and

    (5)    a reasonable likelihood that the prospective relationship between AgroFresh and the third party would have occurred if not for Defendants' interference.

A "prospective" relationship is something less than an actual contract but more than just hope on AgroFresh's part that it would enter into the relationship.  The reasonable likelihood that this new relationship would have formed cannot be met based merely upon evidence of an existing contractual relationship.

In determining whether Defendants intentionally interfered with AgroFresh's prospective contractual or business relationships, you must consider whether the purpose of Defendants' conduct was to protect a legitimate interest and evaluate that against AgroFresh's interests.  In evaluating these interests, you will consider:

    (a)    the expectations of Defendants and AgroFresh,

    (b)    the relations between Defendants and AgroFresh,

    (c)    the interest Defendants sought to advance,

(d)     whether Defendants' conduct was done for the purpose of causing the interference or whether it was merely incidental to another purpose, and

(e)     whether Defendants' conduct is sanctioned by the "rules of the game" which society has adopted for business competition.

You cannot find in favor of AgroFresh unless you find Defendants employed "wrongful means" to interfere with AgroFresh's prospective contractual or business relationship.

## C.    "WRONGFUL MEANS"

"Wrongful means" as used in these instructions can include:

      (1)      conversion; or

      (2)      unfair competition; or

      (3)      misappropriation of trade secrets or

      (4)      other tortious or illegal actions.

## V.  <u>**CONVERSION**</u>

Plaintiff contends that Defendants have "converted" confidential, non-trade secret information disclosed in U.S. Patent No. 9,394,216.  Conversion requires proof that Defendants interfered with AgroFresh's right to use or possess its property and did so without lawful justification.  In order to prove its conversion claim, AgroFresh must prove each of the following elements by a preponderance of the evidence:

> (1)　　that Defendants procured confidential, non-trade secret information disclosed in U.S. Patent No. 9,394,216 by improper means;
>
> (2)　　for the purpose of advancing a rival business interest; and
>
> (3)　　harm was caused to AgroFresh by Defendants' possession, disclosure, or use of the information.

The law does not require confidential information to rise to the level of trade secret to be protected from conversion.  But for purposes of this case, if you determine that the information in U.S. Patent No. 9,394,216 constitutes a trade secret, you cannot find Defendants liable for conversion of that information.

## VI.   <u>CIVIL CONSPIRACY</u>

AgroFresh contends that Defendants engaged in a civil conspiracy.  In order to prove its claim for civil conspiracy, AgroFresh must prove each of the following elements by a preponderance of the evidence:

      (1)     a combination of two or more persons acted with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose;

      (2)     an overt act was done in pursuance of the common purpose;

      (3)     malice (i.e., an intent to injure); and

      (4)     actual damage to AgroFresh caused by the conspiracy.

You cannot find that any defendant conspired with itself or that employees or agents of a single defendant conspired among themselves.

In addition, to find in favor of AgroFresh, you must also find that the intent to do an unlawful act (or to do a lawful act by unlawful means) was held by all members of the alleged conspiracy, and each co-conspirator must have understood that the other shared that purpose.

## VII.    <u>PATENT JURY INSTRUCTIONS</u>

AgroFresh contends that Decco infringes claim 1 of its '849 patent by making, using, selling, and offering for sale TruPick.

Decco denies that it has infringed claim 1 of the '849 patent and argues that, in addition, the asserted claims are invalid on various grounds.

Your job is to decide whether Decco has infringed claim 1 of the '849 patent and whether that claim is invalid.  You will also need to make a finding as to whether any infringement was willful.

## A.    THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of a patent.

Here, you will need to understand what claim 1 of the '849 patent covers in order to decide whether or not that claim is infringed and to decide whether or not that claim is invalid.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide.  In this case, I have determined the meaning of the term "molecular encapsulation agent" in claim 1 to be "a compound that has a lock and key structure similar to an enzyme whereby a substrate selectively fits into the encapsulation site."  You must accept my definition of these words as being correct. It is your job to take this definition and apply it to the issues that you are deciding, including the issues of infringement and validity.

For any words in the claim for which I have not provided you with a definition, you should apply their ordinary meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

## B.     INFRINGEMENT GENERALLY

As I have said, AgroFresh has alleged that Defendants directly infringed claim 1 of the '849 patent.  Infringement is assessed on a claim-by-claim basis.  In order to prove infringement, AgroFresh must prove that the requirements for direct infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of direct infringement have been proved.

## C.     DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." In order to prove direct infringement by literal infringement, AgroFresh must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Decco made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim. In this case, AgroFresh is not contending that Decco has literally infringed the '849 patent, and you do not need to decide that issue.

If someone makes, uses, sells, offers to sell within, or imports into the United States a product or process that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product or process satisfies that claim under the "doctrine of equivalents." Here, AgroFresh is contending that Decco infringes the '849 patent under the "doctrine of equivalents."

Under the doctrine of equivalents, a product or process infringes a claim if the accused product or process contains elements or performs steps corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused product or process. You may find that an element or step is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure or action: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim. In order for the structure or action to be considered interchangeable, the structure or action must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient. In order to prove

infringement by "equivalents," AgroFresh must prove the equivalency of the structure or actions to a claim element by a preponderance of the evidence.

### D.     WILLFUL INFRINGEMENT

In this case, AgroFresh argues both that Decco infringed and, further, that Decco infringed willfully. If you have decided that Decco have infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether AgroFresh proved that it is more likely than not that the infringement by Decco was especially worthy of punishment. You may not determine that the infringement was willful just because Decco knew of the '849 patent and infringed it. Instead, willful infringement is reserved for only the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith.

To determine whether Decco acted willfully, consider all facts. These may include, but are not limited, to:

> (1)     Whether or not Decco acted consistently with the standards of behavior for its industry;

> (2)     Whether or not Decco intentionally copied a product of AgroFresh that is covered by the '849 patent;

> (3)     Whether or not Decco reasonably believed it did not infringe or that the '849 patent was invalid;

> (4)     Whether or not Decco made a good-faith effort to avoid infringing the '849 patent, for example, whether Decco attempted to design around the '849 patent; and

> (5)     Whether or not Decco tried to cover up its infringement.

### E.     INVALIDITY – BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether or not Defendants have proven that claim 1 of the '849 patent is invalid. To prove that a claim of a patent is invalid, Defendants must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

## F.  INVALIDITY – INDEFINITENESS

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. If a claim does not meet that requirement, then the claim is said to be indefinite and is invalid.

In this case, Defendants contend that claim 1 of the '849 patent is invalid because the language of the claim is indefinite. To prevail on that contention, Defendants must show that a person of ordinary skill in the art would not understand what is and is not covered by the claim of the patent.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art, and the written description contained in the patent. Absolute clarity is not necessary. Rather, a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

### G.      PRIOR ART

Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application. However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

For the claim to be invalid because it is not new, Defendants must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent.   We call these things "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

## H.     ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention.  In general, inventions are new when the identical product or process has not been made, used, or disclosed before. Anticipation must be determined on a claim-by-claim basis.

Defendants contend that claim 1 of the '849 patent is invalid because the claimed inventions are anticipated or because AgroFresh lost the right to obtain a patent.

Here is a list of ways that Defendants can show that a patent claim was not new or that the patentee lost the right to patent the claim:

(1)     An invention is not new if it was known to or used by others in the United States before August 20, 1998 (the date of the application for the '849 patent). An invention is known when the information about it was reasonably accessible to the public on that date.

(2)     An invention is not new if it was already patented or described in a printed publication, anywhere in the world before August 20, 1998. A description is a "printed publication" only if it was publicly accessible.

A prior art reference must be enabling to anticipate; that is, it must disclose the claimed invention with sufficient detail to those of skill in the art that they could make the invention without undue experimentation.

## VIII.   <u>DAMAGES</u>

### A.     **DAMAGES GENERALLY**

I will next instruct you on damages. You must not take these instructions as implying my view about which party is entitled to your verdict in this case. Instructions regarding the measure of damages are given for your guidance in the event you find in favor of plaintiffs from a preponderance of evidence in the case in accordance with the other instructions.

### B.  DAMAGES ON MULTIPLE LEGAL THEORIES

AgroFresh seeks damages from Defendants under more than one legal theory.  However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

You will be asked to decide whether Defendants are liable for damages to AgroFresh under the following legal theories:

(1)  Trade Secret Misappropriation

(2)  Unfair Competition

(3)  Intentional Interference

(4)  Conversion

(5)  Patent Infringement

The following items of damages, if proven, are recoverable only once under all of the above legal theories:

(1)  Compensatory damages based on:

(a)  actual loss to AgroFresh (lost profits including price erosion); and

(b)  for Trade Secret Misappropriation only, damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss.

The following items of damages, if proven, are recoverable only once under only unfair competition, intentional interference, conversion, and conspiracy:

(2)  Punitive damages

### C.      COMPENSATORY DAMAGES – GENERALLY

If, after considering the evidence in this case and the instructions of the court, you should find issues in favor of AgroFresh, then it is my duty to tell you what damages AgroFresh would be entitled to recover. It would be such a sum as you believe, from the evidence, will fairly and reasonably compensate AgroFresh for any damage AgroFresh has suffered by reason of the Defendants' acts complained of and for the anticipated profits of which AgroFresh was deprived, provided they are of such a nature to be beyond the speculative stage.

In determining compensatory damages, you may consider whether AgroFresh suffered any measurable loss of profits as a result of the Defendants' conduct. In this case, AgroFresh claims that its business was affected because of loss of profits plaintiff might have earned but for the Defendants' conduct.

For lost profits to be recovered, there must be a reasonable basis for computing them. Ordinarily, it is sufficient for this purpose to show actual past profits and losses; that is, past receipts and expenses in AgroFresh's business.

Although they cannot be taken as an exact measure of future or anticipated profits, you, the jury, should consider those past profits and losses together with the uncertainties and contingencies by which they probably would have been affected. It would be proper for you to consider any normal increase in business that might have been reasonably expected in the light of past developments and existing conditions in AgroFresh's business. You may also take into consideration future uncertainties, such as increased competition, increased operating costs, and changes in economic trends. Losses and profits that are mere guesses, speculative, remote, or uncertain, or unwarranted estimates of witnesses, should not be considered.

Damages, if any, should be restricted to such losses, if any, as are proved by facts from which their existence is logically and legally inferable. The general rule on the subject of damages is that all damages resulting necessarily, immediately, and directly from the wrong are recoverable, and not those that are contingent and uncertain or mere speculation.

Although a qualified person may make estimates concerning probable profits or losses of a going business, you should, in weighing all such evidence, take into consideration, among other things, the truth or falsity of the basis of such estimates; the knowledge or lack of knowledge of the witnesses of all of the conditions on which the estimate is based; whether the facts assumed as a basis for an estimate rest upon actual accounts and records kept in the ordinary course of business rather than in uncertain recollections; and knowledge of the witness in the particular line of business about which the witness testifies. From all of the evidence in this case bearing on the subject, you should determine for yourselves the probability or improbability, and the amount, of profits anticipated by AgroFresh.

The difficulty or uncertainty in ascertaining or measuring the precise amount of any damages does not preclude recovery, and you, the jury, should use your best judgment in determining the amount of such damages, if any, based upon the evidence. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require AgroFresh to prove the amount of his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

That the Defendants did not actually anticipate or contemplate that these losses would occur is not a relevant factor for you to consider.

If you find that AgroFresh is entitled to a verdict in accordance with these instructions, but you do not find that the evidence before you is sufficient to show that AgroFresh has sustained any substantial damages, then you may return a verdict for AgroFresh on one or more of the theories of liability and fix the amount of the compensatory damages in a nominal sum such as one dollar. Such a verdict would determine the rights of the parties, and the court can then issue orders directing their future conduct.

### D.  COMPENSATORY DAMAGES – PATENT INFRINGEMENT

If you find that Decco infringed claim 1 of the '849 patent and that that claim is also not invalid, you must then consider what amount of damages to award to AgroFresh. I will now instruct you about the measure of damages.  If you find that Decco has not infringed any valid claim of the '849 patent, then AgroFresh is not entitled to any damages for patent infringement.

The damages you award must be adequate to compensate AgroFresh for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put AgroFresh in approximately the same financial position that it would have been in had the infringement not occurred.

AgroFresh has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that AgroFresh establishes that it more likely than not suffered. While AgroFresh is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that AgroFresh may be entitled to recover. In this case, AgroFresh seeks lost profits, including profits lost as a result of price erosion.  Lost profits consist of any actual reduction in business profits AgroFresh suffered as a result of Decco's infringement. You must be careful to ensure that award is no more or no less than the value of the patented invention.

1.      **LOST PROFITS – "BUT FOR" TEST**

In this case, AgroFresh seeks to recover lost profits for some of Defendants' sales of TruPick.

To recover lost profits AgroFresh must show a causal relationship between the infringement and AgroFresh's loss of profit. In other words, AgroFresh must show that, but for the infringement, there is a reasonable probability that AgroFresh would have earned higher profits. To show this, AgroFresh must prove that, if there had been no infringement, it would have made some portion of the sales that Defendants made of the infringing product and it would have sold its products at higher prices.

AgroFresh is entitled to lost profits if it establishes each of the following:

(1)     There was a demand for the patented product.

(2)     There were no available, acceptable, noninfringing substitute products, or, if there were, its market share of the number of the sales made by Defendants that AgroFresh would have made, despite the availability of other acceptable noninfringing substitutes.

(3)     AgroFresh had the manufacturing and marketing capacity to make any infringing sales actually made by Defendants and for which AgroFresh seeks an award of lost profits—in other words, that AgroFresh was capable of satisfying the demand.

(4)     The amount of profit that AgroFresh would have made if Defendants had not infringed.

## 2.    LOST PROFITS – DEMAND

Demand for the patented product can be proven by significant sales of a patent holder's patented product or significant sales of an infringing product containing the patented features.

### 3.   LOST PROFITS – NONINFRINGING SUBSTITUTES – ACCEPTABILITY

To be an "acceptable, noninfringing substitute," a product must have the advantages of the patented invention that were important to people who purchased TruPick. If purchasers of TruPick were motivated to buy that product because of features available only from that product and a AgroFresh's patented product, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with AgroFresh's and Defendants' products. On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured the sales made by Defendants, despite a difference in the products, then AgroFresh is not entitled to lost profits on those sales.

### 4. LOST PROFITS – NONINFRINGING SUBSTITUTES – AVAILABILITY

An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period. Factors suggesting the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available at the time of infringement. Factors suggesting the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether an alleged infringer had to design or invent around the patented technology to develop an alleged substitute.

### 5.      LOST PROFITS – CAPACITY

AgroFresh is only entitled to lost profits for sales it could have actually made. In other words, AgroFresh must show that it had the manufacturing and marketing capability to make the sales it said it lost. This means AgroFresh must prove it is more probable than not that it could have made and sold, or could have had someone else make or sell for it, the additional products it says it could have sold but for the infringement.

### 6.     LOST PROFITS – AMOUNT OF PROFIT

AgroFresh may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs. Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.

### 7.     LOST PROFITS – MARKET SHARE

If a patent holder establishes it would have made some, but not all, of an alleged infringer's sales but for the infringement, the amount of sales that the patent holder lost may be shown by proving the patent holder's share of the relevant market, excluding infringing products. A patent holder may be awarded a share of profits equal to its market share even if there were noninfringing substitutes available. In determining a patent holder's market share, the market must be established first, which requires determining which products are in that market. Products are considered in the same market if they are considered "sufficiently similar" to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.

## 8.     LOST PROFITS – PRICE EROSION

AgroFresh can recover additional damages if it can establish that it is more likely than not that, if there had been no infringement, AgroFresh would have been able to charge higher prices for some of its products. If this fact is established, you may award as additional damages the difference between:

> (A)     the amount of profits AgroFresh would have made by selling its product at the higher price, and
>
> the amount of profits AgroFresh actually made by selling its product at the lower price AgroFresh actually charged for its product.

This type of damage is referred to as price-erosion damage.

If you find that AgroFresh suffered price erosion, you may also use the higher price in determining AgroFresh's lost profits from sales that were lost because of the infringement. In calculating AgroFresh's total losses from price erosion, you must take into account any drop in sales that would have resulted from charging a higher price.

You may also award as damages the amount of any increase in AgroFresh's costs, such as additional marketing costs, caused by competition from the infringing product.

## E.   COMPENSATORY DAMAGES – UNJUST ENRICHMENT (AVOIDED COSTS)

In measuring AgroFresh's damages, you may also consider what benefit Defendants has gained from misuse of AgroFresh's trade secrets.  Regardless of whether you find that AgroFresh itself suffered losses, if you find that Defendants benefited from using a trade secret belonging to AgroFresh, then you may award the monetary value that you attribute to those benefits as the measure of AgroFresh's damage.

One way you may measure Defendants' benefit is by the cost of development and other costs Defendants avoided by misappropriating AgroFresh's trade secrets.

It may be that only one of these measures of damages (i.e., AgroFresh's losses or Defendants' benefit) is necessary to fully compensate AgroFresh. However, you are also entitled to combine both AgroFresh's losses and Defendants' gains in determining the measure of damages to award AgroFresh, so long as you follow the guidelines I am about to give you.

These two approaches to damages—AgroFresh's losses and Defendants' gains—while different in some respects, may overlap. That is, it may be that Defendants profited from particular sales that AgroFresh would have made had Defendants not competed using the trade secrets. In that situation, the two ways of approaching damages that I have just described would measure the identical damages—whether viewed as AgroFresh's loss or Defendants' gain. The law does not permit AgroFresh to recover twice for the same damages. Thus, you may include as damages both AgroFresh's lost profits and Defendants' gain only if and to the extent that they do not overlap in this way. Stated in other words, if you were to include lost sales in calculating AgroFresh's losses because Defendants made the sales, then the value of those same sales should be excluded from any calculation of Defendants' gains that you may make.

### F.      COMPENSATORY DAMAGES – CONVERSION

If you find in favor of AgroFresh on its conversion claim against Defendants, you should award AgroFresh an appropriate amount of damages. The measure of damages for conversion is the market value of the converted property at the time and place of the conversion. Thus you may award AgroFresh damages in an amount equal to the value of any and all property converted by Defendants.

## IX.    **PUNITIVE DAMAGES**

### A.    **GENERALLY**

If you find that Defendants proximately caused actual damages to Plaintiff and you have determined that the Defendants must pay damages because of that conduct, then you should consider whether the conduct that led to your decision also subjects the Defendants to punitive damages.

If you find that the conduct of Defendants was outrageous, you may award punitive damages, as well as any compensatory damages, in order to punish Defendants for their conduct and to deter them and others from committing similar acts.

A person's conduct is outrageous when it is malicious, wanton, willful, or oppressive, or shows reckless indifference to the interests of others.

You may only award punitive damages for the following counts: unfair competition, tortious interference, conversion, and/or conspiracy.

### B.     AMOUNT OF PUNITIVE DAMAGES

If you decide that AgroFresh is entitled to an award of punitive damages, it is your job to

fix the amount of such damages. In doing so, you may consider any or all of the following factors:

1.     the character of Defendants' act,

2.     the nature and extent of the harm to AgroFresh that Defendants caused or
intended to cause;

3.     the wealth of Defendants co insofar as it is relevant in fixing an amount that
will punish it, and deter it and others from like conduct in the future.

It is not necessary that you award compensatory damages to AgroFresh in order to assess

punitive damages against Defendants, as long as you find in favor of AgroFresh and against

Defendants on the question of liability.

The amount of punitive damages awarded must not be the result of passion or prejudice

against Defendants on the part of the jury. The sole purpose of punitive damages is to punish

Defendants' outrageous conduct and to deter Defendants and others from similar acts.

You have heard evidence of the Defendants' financial condition. You are not to consider

the Defendants' financial condition in deciding whether to award punitive damages, but you may

consider it in fixing the amount of punitive damages to the extent that the actual damages are

insufficient to justly punish the Defendants for their behavior or dissuade the Defendants or others

from acting the same way in future, similar situations.

That concludes the part of my instructions explaining the rules for considering some of the

testimony and evidence.  Now we will hear the closing arguments and then I will give you a few

more instructions regarding your deliberations and your possible verdicts.

X.    **<u>PREJUDGMENT INTEREST</u>**

There was mention of prejudgment interest during trial.  In this case, the parties have agreed that the question of prejudgment interest, should it be applicable, should be answered by the Court after the trial.  Therefore, you are instructed not to include prejudgment interest for any party in any award that you might make in your verdict form.

**XI.**   <u>**DELIBERATIONS AND VERDICT**</u>

    **A.**   **DELIBERATION AND VERDICT – INTRODUCTION**

Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

## B.    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  I will review that document with you in a minute.  You need to answer the questions on the verdict form.

You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

### C.        DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

### D.     COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.