IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AGROFRESH INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-662-MN |
| | ) | |
| ESSENTIV LLC, DECCO U.S. POST- | ) | |
| HARVEST, INC., CEREXAGRI, INC. d/b/a | ) | |
| DECCO POST-HARVEST, and UPL, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b)**

OF COUNSEL

Gerald F. Ivey
J. Michael Jakes
John M. Williamson
Anand K. Sharma
Rajeev Gupta
Maximilienne Giannelli
Karthik Kumar
Daniel F. Roland
FINNEGAN, HENDERSON, FARABOW
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000
gerald.ivey@finnegan.com
mike.jakes@finnegan.com
john.williamson@finnegan.com
anand.sharma@finnegan.com
raj.gupta@finnegan.com
max.giannelli@finnegan.com
karthik.kumar@finnegan.com
daniel.roland@finnegan.com

Dated: January 7, 2020

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Nicole K. Pedi (#6236)
RICHARDS, LAYTON, & FINGER
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Cottrell@rlf.com
Moyer@rlf.com
Pedi@rlf.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

I.  THE RECORD DOES NOT SUPPORT THE JURY'S VERDICT ON TRADE
    SECRET MISAPPROPRIATION ......................................................................... 1

    A.  Gas Generator ..................................................................................... 1

    B.  Gas Sampler ........................................................................................ 1

    C.  Testing Protocols ................................................................................. 2

    D.  Treatment Parameters .......................................................................... 2

    E.  No Reasonable Jury Could Find Defendants' Alleged Trade Secret
        Misappropriation Was Willful and Malicious ........................................ 3

II. UNFAIR COMPETITION, INTENTIONAL INTERFERENCE, CIVIL
    CONSPIRACY, AND CONVERSION ................................................................. 4

    A.  There Is No Evidence of Unfair Competition ....................................... 4

    B.  No Reasonable Jury Could Find Interference with Existing Contracts ................. 4

    C.  Civil Conspiracy Is Not Supported by Substantial Evidence ................. 6

    D.  AgroFresh Failed to Identify Evidence That the Information in the '216
        Patent Was Confidential When Converted ............................................ 6

III. PATENT INFRINGEMENT .............................................................................. 7

    A.  AgroFresh Failed to Prove That Its Range of Equivalents for "Molecular
        Encapsulation Agent" Does Not Ensnare the Sisler Patent ..................... 7

    B.  AgroFresh Failed to Present Substantial Evidence of Willful Infringement .......... 8

    C.  AgroFresh Failed to Explain Why "Molecular Encapsulation Agent" Has
        Meaningfully Precise Claim Scope to Avoid Indefiniteness ................... 9

    D.  AgroFresh Failed to Present Substantial Evidence That Janz's
        Anticipatory Disclosure Lacks Enablement ......................................... 9

IV. COMPENSATORY DAMAGES ........................................................................ 10

    A.  AgroFresh Failed to Prove Entitlement to Lost Profits ....................... 10

    B.  AgroFresh Failed to Prove Damages for Conversion ........................... 11

V.  THE PUNITIVE DAMAGES AWARD SHOULD BE REDUCED .............................. 11

A.      Defendants' Motion Was Not Waived ................................................... 11

B.      AgroFresh Undertakes the Wrong Analysis ......................................... 12

C.      The Reprehensibility Subfactors Favor Reducing the Award ............................. 13

D.      A 4:1 Ratio Is Excessive Given the Substantial Compensatory Award .............. 14

E.      A 1:1 Ratio Would Deter Defendants Despite Their Wealth ............................. 15

VI.   CONCLUSION ............................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acumed LLC v. Advanced Surgical Servs.,*
  561 F.3d 199 (3d Cir. 2009)..................................................................................................5

*Adams Outdoor Advert., LP v. Menegatos,*
  No. 1119 EDA 2012, 2013 WL 11256844 (Pa. Super. 2013) ................................................11

*In re Antor Media Corp.,*
  689 F.3d 1282 (Fed. Cir. 2012)..........................................................................................8, 9

*Aqua Shield v. Inter Pool Cover Team,*
  774 F.3d 766 (Fed. Cir. 2014)...............................................................................................9

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.,*
  876 F.3d 1350 (Fed. Cir. 2017)..............................................................................................8

*Baram v. Farugia,*
  606 F.2d 42 (3d Cir. 1979)...................................................................................................11

*BMW of N. Am. v. Gore,*
  517 U.S. 559 (1996).............................................................................................................14

*Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.,*
  801 F.3d 347 (3d Cir. 2015)............................................................................................14, 15

*CGB Occupational Therapy, Inc. v. RHA Health Servs.,*
  499 F.3d 184 (3d Cir. 2007)............................................................................................13, 14

*Cont'l Trend Res. v. Oxy USA,*
  101 F.3d 634 (10th Cir. 1996) .......................................................................................14, 15

*Cortez v. Trans Union, LLC,*
  617 F.3d 688 (3d Cir. 2010)................................................................................................12

*Davis v. Fid. Nat'l Title Ins. Co.,*
  No. 672-MDA-2014, 2015 WL 7356286 (Pa. Super. 2015) ...........................................12, 14

*Den-Tal-Ez, Inc. v. Siemens Capital Corp.,*
  566 A.2d 1214 (Pa. Super. 1989).........................................................................................7

*Empire Trucking Co. v. Reading Anthracite Coal Co.,*
  71 A.3d 923 (Pa. Super. 2013).....................................................................................5, 14, 15

*Halliburton Energy Servs., Inc. v. M-I LLC,*
514 F.3d 1244 (Fed. Cir. 2008)........................................................................................9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
136 S. Ct. 1923 (2016).....................................................................................................8

*Hollock v. Erie Ins. Exch.,*
842 A.2d 409 (Pa. Super. 2004)...............................................................................12, 13

*Jang v. Boston Sci. Corp.,*
872 F.3d 1275 (Fed. Cir. 2017)......................................................................................7

*Johansen v. Combustion Eng'g., Inc.,*
170 F.3d 1320 (11th Cir. 1999) ....................................................................................12

*Kendall v. Wyeth, Inc.,*
No. 936-EDA-2010, 2012 WL 112609 (Pa. Super. 2012)...........................................15

*In re Lansaw,*
853 F.3d 657 (3d Cir. 2017)..........................................................................................15

*MobileMedia Ideas LLC v. Apple Inc.,*
780 F.3d 1159 (Fed. Cir. 2015)......................................................................................9

*Northcraft v. Edward C. Michener Assocs., Inc.,*
466 A.2d 620 (Pa. Super. 1983)....................................................................................11

*Option One Mortg. Corp. v. Fitzgerald,*
687 F. Supp. 2d 520 (M.D. Pa. 2009)...........................................................................11

*Parexel Int'l Corp. v. Feliciano,*
No. 04-cv-3798, 2008 WL 5101642 (E.D. Pa. Dec. 3, 2008).....................................14

*Pikunse v. Kopchinski,*
631 A.2d 1049 (Pa. Super. 1993)..................................................................................11

*PTSI, Inc. v. Haley,*
71 A.3d 304 (Pa. Super. 2013)......................................................................................11

*Saccameno v. United States Bank Nat'l Ass'n,*
943 F.3d 1071 (7th Cir. 2019) ......................................................................................12

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
538 U.S. 408 (2003)................................................................................................12, 15

*Trs. of Bos. Univ. v. Everlight Elecs. Co.,*
896 F.3d 1357 (Fed. Cir. 2018)..................................................................................8, 9

*TXO Prod. Corp. v. Alliance Res. Corp.*,
    509 U.S. 443 (1993) (plurality opinion) ......................................................14

*Waltson v. Home Depot USA, Inc.*,
    No. 09-3395, 2010 WL 3069678 (E.D. Pa. Aug. 3, 2010) .....................................14

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1988)..........................................................................9

*Virginia Welsh v. City of Phila.*,
    16 Phila. 130 (Pa. Com. Pl. May 13, 1987) .......................................................11

*Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*,
    399 F.3d 224 (3d Cir. 2005).......................................................................13, 14

**Rules**

Fed. R. Civ. P. 50, 59 ........................................................................................11, 12

**Other Authorities**

Restatement (Second) of Torts § 774A(1)(b) (1979)......................................................6

Restatement (Second) of Torts § 927(2)(b) ...............................................................11

I.     **THE RECORD DOES NOT SUPPORT THE JURY'S VERDICT ON TRADE SECRET MISAPPROPRIATION**

A.     **Gas Generator**

AgroFresh ignores two key issues related to the gas generator. First, the purportedly secret aspect—the air infusion mechanism/air bubbler—was disclosed in the Daly patent. *See* D.I. 612 ("Opp.") at 4; D.I. 597 at 2-3; PTXa-453 at 8:12-15. Next, the air infusion mechanism was described in a presentation by Dr. Beaudry based on his nonconfidential, invited observation of the generator in 2002. *See* Opp. at 4; D.I. 597 at 2-3; DTXb-556 at 4; Tr. (Beaudry) 1112:11-12, 1114:12-21. Thus, AgroFresh failed to establish the existence of a gas generator trade secret.

AgroFresh attempts to show the existence of a trade secret by citing purported evidence of misappropriation. Opp. at 4. But while Dr. Mir was "in charge of the gas generator" for TruPick (Tr. 608:4-6), there is no evidence that the TruPick bait bucket was based on any proprietary AgroFresh information (to the extent such information exists). Rather, the design of the TruPick gas generator/bait bucket includes publicly available technology, e.g., a container with an air bubbler. *See* Tr. (Beaudry) 1115:11-1116:9; DTXb-556 at 4; PTXa-453 at 8:12-15. Dr. Mir's testimony, on the advice of his counsel, that he "misappropriated AgroFresh's trade secrets" (Tr. 551:11-13) does not establish the existence of any *gas generator* trade secret.

B.     **Gas Sampler**

AgroFresh did not distinguish its gas sampler from commercial ones. D.I. 597 at 3-4; DTXb-156 at 4, 16. While AgroFresh argues that its device takes "an accurate sample" and "can reliably predict" the conditions in an apple room (Opp. at 4), it presented no evidence this aspect of sampling was known to Defendants. And it offered no evidence regarding the gas sampler used with TruPick. If AgroFresh has a gas sampler trade secret, it neither adequately described it nor showed any "secret" aspect was disclosed, used, or acquired by Defendants. D.I. 597 at 3-5.

### C.    Testing Protocols

AgroFresh failed to show a secret testing protocol. *See* D.I. 597 at 6-7. Instead of pointing to evidence of such a trade secret, it focuses on the parties' stipulation and testimony from Dr. Mir. Opp. at 7. But the stipulation merely states that Dr. Mir helped Decco prepare protocols—it does not state the protocols were based on AgroFresh's confidential or trade secret information. Tr. 126:21-127:1. And while Dr. Mir testified to misappropriating unidentified AgroFresh trade secrets (Tr. 551:11-13), his testimony does not establish the existence of a *testing protocol* trade secret or misappropriation thereof by Defendants (to the extent one exists).

Notably, Dr. Mir published testing protocols before consulting for AgroFresh, and thus it would be improper to assume—without evidence—that any testing protocols used by Dr. Mir were misappropriated from AgroFresh. *See* DTXb-131 at 2-3. Further, as explained by Dr. Oakes, while Dr. Mir handled testing protocols for a few trials in the U.S., other consultants handled testing protocols for trials in many other countries, which underscores the public availability of such protocols. Tr. (Oakes) 608:13-18; *see also* Tr. (Oakes) 604:20-22.

### D.    Treatment Parameters

AgroFresh's arguments regarding treatment parameters focus solely on the Turkish dosage chart sent by Mr. Isik. Opp. at 7-8; *see* D.I. 597 at 7-8 (showing public availability of treatment parameters). While Dr. Beaulieu testified generally about "the work behind AgroFresh treatment parameters" (Opp. at 7), which would include work to develop publicly available U.S. dosage charts and numerous other generally known treatment parameters (D.I. 597 at 7-9), AgroFresh presented no evidence that the Turkish chart had independent economic value. *See* Tr. (Beaulieu) 466:19-467:6 (testimony on dosage charts). Further, Decco submitted its dosage chart for TruPick several months before Dr. Oakes received the Turkish chart. *See* D.I. 597 at 10; DTXb-1363 at 20 (October 2, 2015 EPA application); PTXa-54 (June 2, 2016 Isik email).

AgroFresh incorrectly argues that Dr. Oakes "used part" of the dosage chart sent by Mr. Isik. Opp. at 7-8. Dr. Oakes's dosage chart for TruPick does not include any information from the chart sent by Mr. Isik. *Compare* DTXb-1363 at 20 *with* PTXa-54 at 3-4. Nor could it have given that Dr. Oakes received the chart from Mr. Isik several months after submitting his own chart to the EPA. *See* Tr. (Oakes) 636:19-22, 662:3-665:16; DTXb-1363 at 20; PTXa-54. Mr. Isik's *suggestion* that the Turkish chart could be used for TruPick does not change these facts. *See* Opp. at 7. As Dr. Oakes testified, his own chart was "perfectly acceptable." Tr. (Oakes) 641:251-642-4. Dr. Oakes's testimony that he "only used ten" pouches does not mean that he "used ten" pouch sizes from the chart sent by Mr. Isik. *Id.* Rather, Dr. Oakes used only about ten sizes in the dosage chart for TruPick, *none of which* matches the pouch sizes in the dosage chart sent by Mr. Isik. *See* DTXb-1363 at 20; PTXa-54 at 3-4.

### E. No Reasonable Jury Could Find Defendants' Alleged Trade Secret Misappropriation Was Willful and Malicious

AgroFresh failed to establish willful and malicious misappropriation. *See* D.I. 597 at 10-11. To the extent AgroFresh relies on arguments in its Motion for Enhanced Damages (D.I. 588), Defendants refer to their arguments in opposition (D.I. 594) and in this reply. AgroFresh ignores that Defendants had what they believed was a valid license to the TruPick technology and repeated assurances from Dr. Mir that he was free to work with Decco. *See* DTXb-493 (License Agreement); *see also* Tr. (Girin) 745:1-753:15. That Defendants disclosed Dr. Mir developed TruPick shows they had no reason to know or even suspect their license was invalid or that the TruPick technology was, as the Court later found, owned by AgroFresh. *See* PTXa-73.

AgroFresh incorrectly argues that the Mir-AgroFresh agreements did not change between the time Defendants decided to launch TruPick and the Court's decision dated June 30, 2017 (D.I. 97). Opp. at 8. The Court's Phase-I decision rescinded the Third Extension—an agreement

that Dr. Mir believed explicitly permitted him to develop TruPick. D.I. 97 at 14-15, 34. So until

June 30, 2017, Defendants had no reason to know the Third Extension would be rescinded.

## II.      UNFAIR COMPETITION, INTENTIONAL INTERFERENCE, CIVIL CONSPIRACY, AND CONVERSION

### A.      There Is No Evidence of Unfair Competition

AgroFresh failed to establish unfair competition. D.I. 597 at 12-13. AgroFresh ignores

the evidence showing Defendants had a good-faith belief their license to the TruPick technology

was valid. *See* Opp. at 8-9; *see also* DTXb-493 (License Agreement); Tr. (Girin) 745:1-753:15.

While Defendants learned on June 30, 2017, that the Third Extension had been rescinded and

that AgroFresh owned the technology, that does not undermine their reasonable beliefs

beforehand. *See* D.I. 597 at 12-13. The documents AgroFresh cites do not show that Defendants

knew Dr. Mir was violating his contract with AgroFresh, much less that AgroFresh owned the

TruPick technology. Opp. at 8-9. Further, AgroFresh cited no evidence Defendants actually pre-

sold TruPick. *Id.* And Dr. Mir's admission that *he* engaged in unfair competition or conspiracy

does not establish that Defendants' actions were unfair. *See* Opp. at 9. AgroFresh's arguments

regarding harm to commercial relationships fail for the reasons set forth in D.I. 597 at 12.

### B.      No Reasonable Jury Could Find Interference with Existing Contracts

#### 1.      AgroFresh Did Not Prove Interference with an Existing Customer Contract or an Intent to Harm

AgroFresh fails to identify a single existing contract with which Defendants interfered.

The *only* evidence AgroFresh points to of an alleged interference with an *existing* contract is the

testimony from Mr. Thomas and Mr. Harker that "AgroFresh had to rewrite some of those

'multi-year contracts' in 2016" due to Decco's market entry. Opp. at 11. AgroFresh does not

dispute that the ten contracts in evidence were negotiated anew in 2016 and are *not* multi-year

contracts. *See id.* Thus, AgroFresh does not contend that there is any evidence that those ten

contracts were interfered with. Yet, for the unidentified multi-year contracts, which were not submitted to the jury, AgroFresh cannot explain how the testimony on those contracts is not conclusory. And it clearly is, given that the testimony identifies *no* specific contract, identifies *no* contract terms, identifies *no* third party, and does not explain how the any contract was allegedly rewritten. AgroFresh also cites no case demonstrating that mere testimony that some unidentified contract was interfered with in some unidentified way is sufficient to establish this element.

AgroFresh's criticisms of Defendants' authority are also misguided. *Acumed* shows that AgroFresh's failure to point to evidence of an existing contract that was interfered with is fatal to its claim. *See Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 212 (3d Cir. 2009). And AgroFresh's view of *Empire Trucking* is wrong. The court there did not uphold the verdict for the plaintiff despite "that no written contracts were in the record based on testimony that the contracts existed." Opp. at 12. Instead, there was no factual dispute on whether the contracts had been sufficiently identified. *See Empire Trucking Co. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 926, 933 (Pa. Super. 2013). The argument the defendant advanced and the court rejected was different—that the identified contracts technically expired before the interference.

Even assuming AgroFresh had met the other elements of this claim, it still failed to show an intent to harm AgroFresh *by interfering with a contractual relationship*. AgroFresh cites evidence showing Defendants wanted AgroFresh's 1-MCP business (Opp. at 12-13), but "even if an entity has an existing contractual relationship with another entity, a stranger to the relationship must be privileged to seek to replace one of the entities lest competition be stifled." *Acumed*, 561 F.3d at 215. The other cited evidence on intent merely shows Defendants sought to advance their own business interests and were enthusiastic about the EPA's approval of the MOF (not about harming AgroFresh by interfering with its contracts). *See* Opp. at 13-14.

2.     **AgroFresh Did Not Prove Actual Damage Resulting from Defendants' Alleged Interference with the MirTech Contracts**

The purported lost "benefits" of the MirTech Agreements AgroFresh points to do not constitute *actual damage*, and AgroFresh cites no authority suggesting otherwise. AgroFresh essentially concedes as much when arguing that actual damages are shown by its lost profits. *See* Opp. at 15. AgroFresh, however, cites *nothing* tying its lost profits to the breach of the *MirTech* contracts, much less to any interference by Defendants with those agreements. AgroFresh only offers unsupported attorney argument that, had Dr. Mir honored his agreements, "none of the events related to TruPick would have happened." *See id.* Testimony from AgroFresh's damages expert actually supports Defendants' position, as his damages numbers were only tied to *customer* contracts, not the MirTech Agreements. *See* Tr. (Thomas) 937:4-20. Neither he nor anyone else explained how Defendants' interference with the MirTech Agreements legally caused AgroFresh's lost profits. *See* Restatement (Second) of Torts § 774A(1)(b) (1979).

C.     **Civil Conspiracy Is Not Supported by Substantial Evidence**

AgroFresh did not establish key elements of civil conspiracy, including that Defendants acted with malice (i.e., a sole purpose to injure AgroFresh) or had a common purpose with Dr. Mir. D.I. 597 at 14-15. AgroFresh's brief arguments (Opp. at 16) fail for the same reasons set forth in §§ I, II(A)-(B) and D.I. 597 at 14-15. And Dr. Mir's admission about a civil conspiracy does not establish any malicious intent or a common purpose by *Defendants*. Opp. at 16.

D.     **AgroFresh Failed to Identify Evidence That the Information in the '216 Patent Was Confidential When Converted**

Before trial, AgroFresh successfully argued that, because of distinct legal standards, allowing the jury to hear the PTAB's findings on what was known in the public domain would unfairly confuse the jury about whether the information in the '216 patent was a trade secret. *See* D.I. 519 (AgroFresh's MIL No. 1). AgroFresh now downplays the legal distinctions between

6

confidential and trade secret information, contending that its failure to put on any evidence regarding the former is cured by evidence on the latter. *See* Opp. at 15. AgroFresh should not be permitted to ignore that "confidential information" and "trade secrets" do not equate and can refer to "entirely different bodies of information." *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1224 (Pa. Super. 1989).[1]

## III.   PATENT INFRINGEMENT

### A.   AgroFresh Failed to Prove That Its Range of Equivalents for "Molecular Encapsulation Agent" Does Not Ensnare the Sisler Patent

Ensnarement is a legal question for the Court, not the jury. *Jang v. Boston Sci. Corp.*, 872 F.3d 1275, 1285-88 (Fed. Cir. 2017). AgroFresh failed to meet its burden of proving that its asserted range of equivalents does not ensnare the Sisler patent. *See id.* at 1285, 1287. Decco produced the Sisler patent, *see* DTXb-563, notified AgroFresh of its defense, D.I. 418 at 60 (11th defense); D.I. 419 at 61-62 (same), cited it in the Pretrial Order, D.I. 536-5 at 6-7 (¶ 12), and pursued it at trial, *see* Tr. (Walton) at 371:25-372:22; Tr. (Dincǎ) at 1175:14-1176:17. AgroFresh also pursued its arguments at trial. *See* Tr. (Walton) at 425:3-426:3. So AgroFresh had notice of Decco's ensnarement defense. *See Jang*, 872 F.3d at 1287-89 (no waiver despite less notice).

Dr. Walton's range of equivalents for "molecular encapsulation agent" was not limited by structure as AgroFresh argues. *See* Opp. at 17. She asserted that its function is stabilizing 1-MCP, Tr. (Walton) at 355:2-16, its way is adsorption, *id.* at 355:17-356:13, and its result is stabilized 1-MCP, *id.* at 356:15-357:12. This range covers any carrier that stabilizes 1-MCP by adsorption, regardless of structure. Thus, it is irrelevant that the Sisler and '849 patents' carriers

---

[1] The confidentiality clause in one of the Decco-MirTech agreements (DTXb-680) cannot save AgroFresh here. Opp. at 15. AgroFresh never addressed the clause at trial, much less tied it to the information in the '216 patent; i.e., the clause does not show how information in the '216 patent (a public document) was confidential at the time of the alleged conversion.

are structurally different. *See* Opp. at 17. AgroFresh also argues that the Sisler patent's carriers

are a**b**sorbants, *see id.*, but Dr. Walton admitted they include a**d**sorbents that stabilize 1-MCP:

> Q. Each of these [Sisler patent carriers] that you've highlighted
> here, these are all adsorbents and the only way they would attach
> any molecule to them would be through adsorption; is that correct?
>
> A. That's how adsorbents work, yes.

Tr. (Walton) at 371:20-24. Dr. Walton's conclusory statement, "I don't know if they work," *id*.

at 372:15, neither qualifies as substantial evidence, *see Trs. of Bos. Univ. v. Everlight Elecs. Co.*,

896 F.3d 1357, 1362-64 (Fed. Cir. 2018), nor rebuts the presumption that the Sisler patent is

enabled, *In re Antor Media Corp.*, 689 F.3d 1282, 1287-88 (Fed. Cir. 2012). Thus, AgroFresh

failed to prove that its doctrine of equivalents theory did not ensnare the Sisler patent.

### B.    AgroFresh Failed to Present Substantial Evidence of Willful Infringement

AgroFresh's opposition deflects from the relevant inquiry—whether Decco believed that

TruPick's magnesium formate MOF had substantially the same function, way, and result as a

"molecular encapsulation agent." *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923,

1932 (2016) (requiring "egregious infringement behavior" to enhance damages). More than only

witness testimony, Decco's document prepared before litigation shows otherwise. PTXa-168

("Right to Practice" slides). AgroFresh's arguments—about Dr. Mir's (not Decco's) willfulness,

Mr. Girin's view on AgroFresh's patents, *see* PTXb-321 (Slide 2); Tr. (Girin) at 769:1-20, or the

fact that TruPick, like AgroFresh's SmartFresh, also delivers 1-MCP, *see* PTXa-54; Tr. (Oakes)

at 643:11-24—are irrelevant. AgroFresh's cited case is inapposite because there, unlike here, the

defendant's knowledge of infringement was demonstrated by its attempt to buy the asserted

patents. *See Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed.

Cir. 2017). Also, the post-*Halo* Federal Circuit case it cites, *see* Opp. at 18-19, confirms that the

failure to seek a preliminary injunction, while not dispositive, is evidence of lack of willfulness. *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 773-74 (Fed. Cir. 2014). Thus, AgroFresh failed to present substantial evidence of Decco's willful infringement.

### C. AgroFresh Failed to Explain Why "Molecular Encapsulation Agent" Has Meaningfully Precise Claim Scope to Avoid Indefiniteness

AgroFresh fails to address Decco's core argument—there is no objective way to translate the '849 patent's "lock and key structure similar to an enzyme" definition of a "molecular encapsulation agent" into meaningfully precise claim scope. *See Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008). The intrinsic evidence and expert testimony provide no objective standard for *how to determine* whether a compound has a "lock and key structure similar to an enzyme." Also, conclusory statements about whether zeolites do (or do not) have such a lock and key structure, *see* Tr. (Thompson) at 1257:15-1258:19, with no explanation of *why*, do not qualify as substantial evidence. *See Trs. of Bos. Univ.*, 896 F.3d at 1362-64; *MobileMedia Ideas LLC v. Apple Inc*., 780 F.3d 1159, 1172 (Fed. Cir. 2015) ("Conclusory statements by an expert . . . are insufficient to sustain a jury's verdict.").

### D. AgroFresh Failed to Present Substantial Evidence That Janz's Anticipatory Disclosure Lacks Enablement

AgroFresh's only argument is that Janz fails to enable its disclosure of a complex formed from α-cyclodextrin and 1-MCP. *See* Opp. at 20-21. But Janz's disclosure is presumed enabled and AgroFresh failed to meet its burden of proving otherwise. *See Antor*, 689 F.3d at 1287-88. Prof. Thompson's *two* conclusory answers failed to address all eight Wands factors to be considered. *See* Opp. at 21; *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)). And his conclusory opinions do not qualify as substantial evidence. *See Trs. of Bos. Univ.*, 896 F.3d at 1362-64; *MobileMedia*, 780 F.3d at 1172. Finally, Janz's method is not solely for encapsulating pristane as AgroFresh argues, *see* Opp. at 21, but instead "can be applied to any alkane, alkene,

or alkyne, including aliphatic (open chain and cyclic) and aromatic compounds, for which there is a suitably sized cyclodextrin," DTXb-562 at 22:11-15. Prof. Thompson admitted that Janz's statement applies to encapsulating 1-MCP in α-cyclodextrin. Tr. (Thompson) at 1260:3-1261:10. Thus, Janz's disclosure is enabled and anticipates claim 1 of the '849 Patent.

## IV. COMPENSATORY DAMAGES

### A. AgroFresh Failed to Prove Entitlement to Lost Profits

AgroFresh does not dispute that Pace competed in the 1-MCP market and *could* have made the sales at issue. Thus, by Mr. Thomas's own testimony (Tr. 954:9-17), *Panduit* factor two was not met here. Regarding factor three, AgroFresh merely relies on conclusory expert testimony that it was "pretty clear" AgroFresh had the manufacturing capacity. *See* Opp. at 22.

On lost profits based on price erosion, AgroFresh fails to rebut Defendants' arguments. By offering only a cursory response in a footnote, *see* Opp. at 22 n.3, AgroFresh ignores the many flaws in its price-erosion claim, such as (1) the failure to link the damages to the alleged misconduct by assuming the damages would not differ regardless of the type (and extent) of the liability, (2) the failure to show sufficient evidence that any specific contracts were changed because of Decco's entrance with TruPick, and (3) the failure to account for any other factors causing price declines when attributing 100% of the price decline to Defendants' conduct.[2] *See* D.I. 597 at 21 (incorporating arguments from Defendants' Rule 50(a) motion). Having failed to rebut these shortcomings, AgroFresh did not meet its burden of proof.

---

[2] AgroFresh argues that the notion that Mr. Thomas attributed 100% of the price erosion for SmartFresh to Defendants' conduct is "simply false" because he performed a "customer-by-customer analysis." Opp. at 22, n.3. That misleading argument misses the point. While Mr. Thomas excluded some customers from his analysis altogether, for every customer he included, he did attribute 100% of the price decline to Defendants. *See* Tr. (Thomas) 948:14-25.

### B.     AgroFresh Failed to Prove Damages for Conversion

AgroFresh does not dispute it failed to proffer evidence on "the market value" of the converted property "at the time and place of conversion." Instead, citing only two Pennsylvania cases, it argues Pennsylvania has adopted § 927(2)(b) of the Restatement, which might permit recovery for "pecuniary loss of which the deprivation has been a legal cause." Opp. at 23-24. The Court should reject AgroFresh's position for three reasons. First, it ignores the many cases showing damages for conversion under Pennsylvania law are measured by the market value of the converted property at the time of the conversion.[3] Second, the two Pennsylvania cases AgroFresh relies on are distinguishable. *See* Opp. at 23. The court in *Virginia Welsh* stated that consequential losses are available "in cases of total destruction," *Virginia Welsh v. City of Phila.*, 16 Phila. 130, 143 (Pa. Com. Pl. May 13, 1987), which is plainly not the situation here. *Adams Outdoor* also involved a different type of damages—those for the "loss of use" of a billboard for the time the plaintiff was unlawfully deprived of its use. *See Adams Outdoor Advert., LP v. Menegatos*, No. 1119 EDA 2012, 2013 WL 11256844, at *6-7 (Pa. Super. 2013). Neither case shows AgroFresh can recover lost profits for conversion on these facts. And third, even if certain consequential losses were available here, AgroFresh still failed to show that the alleged "deprivation" of the information in the '216 patent "legally caused" its lost profits.

## V.     THE PUNITIVE DAMAGES AWARD SHOULD BE REDUCED

### A.     Defendants' Motion Was Not Waived

AgroFresh's waiver arguments are baseless. *See* Opp. at 24-25. The contention that Defendants should have challenged the amount of the punitive award in their Rule 50(a) motion

---

[3] *See, e.g.*, *PTSI, Inc. v. Haley*, 71 A.3d 304, 314 (Pa. Super. 2013); *Option One Mortg. Corp. v. Fitzgerald*, 687 F. Supp. 2d 520, 529 (M.D. Pa. 2009); *Northcraft v. Edward C. Michener Assocs., Inc.*, 466 A.2d 620, 628 (Pa. Super. 1983); *Pikunse v. Kopchinski*, 631 A.2d 1049, 1051 (Pa. Super. 1993); *Baram v. Farugia*, 606 F.2d 42, 44 (3d Cir. 1979).

11

is illogical, as Defendants could not have sought to reduce the punitive award before the verdict issued. And in their Rule 50(a) motion, Defendants did challenge the propriety of any punitive award. *See* D.I. 573 at 29-30. AgroFresh's argument that Defendants did not file the present motion "within 28 days after the entry of judgment" is just as perplexing. Opp. at 25. Judgment was entered on October 30 and Defendants timely filed their motion on November 27—i.e., 28 days later. *See* D.I. 586; D.I. 597. AgroFresh's cases are inapplicable here.[4]

### B.    AgroFresh Undertakes the Wrong Analysis

Defendants are not challenging the jury's punitive award under substantive Pennsylvania law. Instead, they have advanced a constitutional challenge under the Due Process Clause of the Fourteenth Amendment. AgroFresh acknowledges as much but largely eschews the Supreme Court's three guideposts in favor of an analysis under the "*Hollock* factors." *See* Opp. at 25.

The *Hollock* analysis is simply irrelevant here. It not only answers a different inquiry than Defendants' constitutional challenge, *cf. Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 419 (Pa. Super. 2004), *with State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003), but it also requires a different standard of review, *see Davis v. Fid. Nat'l Title Ins. Co.*, 2015 WL 7356286 at *4 (Pa. Super. 2015). The *Hollock* case itself confirms Defendants' point. There, after finding no abuse of discretion in the trial court's analysis of the three *Hollock* factors, the appellate court concluded it *still* had to "undertake further review of the award" to determine if it comports with due process. *Hollock*, 842 A.2d at 420. So even if the punitive award passed

---

[4] To the extent AgroFresh is making the hyper-technical argument that Defendants waived their motion by not styling it as one for remittitur under Rule 59, it is wrong. Because a "constitutionally reduced verdict" is "really not a remittitur at all," when a court determines that the law does not permit the award, it "proceeds under Rule 50, not Rule 59." *Johansen v. Combustion Eng'g., Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999); *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 716-17 (3d Cir. 2010); *Saccameno v. United States Bank Nat'l Ass'n*, 943 F.3d 1071 (7th Cir. 2019) (citing cases).

muster under *Hollock*, this Court would still have to consider the Supreme Court's three guideposts. Consideration of the correct analysis shows the jury's punitive award cannot stand.[5]

### C.      The Reprehensibility Subfactors Favor Reducing the Award

AgroFresh does not directly address reprehensibility because consideration of *all five* subfactors hurts its position. AgroFresh does not refute that three subfactors clearly favor Defendants—i.e., the harm was economic, not physical; AgroFresh is not financially vulnerable; and Defendants did not demonstrate a disregard for the health and safety of others. *See* D.I. 597 at 23. On the "intent" subfactor, AgroFresh essentially relies on the same evidence from its Motion for Enhanced Damages. *See* Opp. 26-28; D.I. 588. For the reasons in Defendants' opposition to that motion, the Court should reject these arguments. *See* D.I. 594.

Regarding recidivism (the remaining subfactor), AgroFresh argues that "Defendants incorrectly recite Third Circuit law" by claiming this subfactor "must relate to non-parties." Opp. at 27. Defendants never claimed as much; they simply quoted a Third Circuit case (*Jurinko*) explaining that the Supreme Court examined this subfactor as it relates to nonparties. *See* D.I. 597 at 23. The authority AgroFresh cites (*CGB*) as supposedly rejecting Defendants' "argument" pre-dates *Jurinko*, and both cases quote the decision in *Willow Inn*, which provided the Third Circuit's view that the "repeated conduct" inquiry is relevant but with "less force" when, as here, a defendant's misconduct does not extend to nonparties. *See Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 232 (3d Cir. 2005). AgroFresh's contention that Defendants distorted the law is thus wrong. On the facts, AgroFresh compares this case to *CGB*, where the court found this subfactor supported a substantial punitive award. Opp. at 27. But AgroFresh overlooks that,

---

[5] In a footnote, AgroFresh asks the Court to disregard the Supreme Court's third guidepost. Opp. at 25 n.4. AgroFresh does not dispute, however, that to the extent this guidepost is helpful, the cited statutory multipliers indicate the award is excessive.

despite finding three of the five reprehensibility subfactors present, the *CGB* court still concluded that the absence of the other subfactors (two also favoring Defendants here) nevertheless counseled toward reducing the award. *See CGB Occupational Therapy, Inc. v. RHA Health Servs.*, 499 F.3d 184, 191-92 (3d Cir. 2007). AgroFresh likewise ignores that it is "significant" there is no evidence Defendants "persisted in a course of conduct after [they] had been adjudged unlawful on even one occasion." *BMW of N. Am. v. Gore*, 517 U.S. 559, 579 (1996).

Even if the Court accepts AgroFresh's arguments on recidivism or intent, as in *CGB*, the reprehensibility guidepost as a whole still favors reducing the award because of the absence of the other subfactors. *See also* D.I. 597 at 24 (citing *Gore*, *Jurinko*, *Bridgeport*); *Willow Inn*, 399 F.3d at 232-33, 237 (affirming "approximately 1:1 ratio" where three subfactors were present).

### D.     A 4:1 Ratio Is Excessive Given the Substantial Compensatory Award

AgroFresh does not contest that the $6 million compensatory award is substantial. *See* Opp. at 28-29. Nor could it have given the precedent on this point. *See* D.I. 597 at 25. Instead, it simply glosses over the implication of the large compensatory award and ignores the mountain of authority Defendants cited—from the Supreme Court, the Third Circuit, and many other courts— demonstrating that a 1:1 ratio is appropriate under these circumstances. *See* D.I. 597 at 25-26; Ex. 1 at 1 & n.6 (5 Bus. & Com. Litig. Fed. Cts. § 48:54). Rather than address this authority, AgroFresh merely points to other cases where a higher ratio was upheld. Opp. at 29 & n.6. But these cases are all meaningfully distinguishable, because they involved much smaller compensatory awards and/or more egregious conduct.[6]

---

[6] *See Empire Trucking* ($271,000 compensatory award); *Davis* ($393,277 compensatory award); *TXO* ($19,000 compensatory award); *Parexel* ($94,000 compensatory award); *CGB* ($109,000 compensatory award); *Cont'l Trend* ($269,000 compensatory award); *Brand Mktg.* ($1,045,000 in compensatory damages and defendant showed "reckless disregard" for both plaintiff's rights and consumers' health and safety, potentially putting consumers in "serious danger"); *Waltson* ($12,801 in compensatory damages and the defendant "acted with reckless

And contrary to AgroFresh's assertion, Defendants did not suggest "courts only venture above a 1:1 ratio when a defendant has 'caused noneconomic harm.'" Opp. at 29-30. That contention plainly ignores that Defendants' description of the caselaw referred to the "typical" case, not all cases, and was limited to those involving "a substantial compensatory award." *See* D.I. 597 at 27. AgroFresh's mischaracterization aside, the two cases it cites (Opp. at 29-30) do not even conflict with Defendants' point, as *Empire Trucking* involved a modest award and *Brand Mktg.* involved a threat to health and safety (i.e., noneconomic harm).

### E.    A 1:1 Ratio Would Deter Defendants Despite Their Wealth

Ignoring Supreme Court precedent that the "wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award," *State Farm*, 538 U.S. at 427, AgroFresh argues that Defendants' wealth alone favors a substantial punitive award. Opp. at 30. Even if that were true, AgroFresh offers no insight on why $24 million (or an amount close to it) is needed to further the interests punitive awards aim to advance. In *Cont'l Trend*, a decision AgroFresh relies on, the court concluded that $6 million in punitive damages—the exact number a 1:1 ratio would result in here—was sufficient to both get a very wealthy defendant's attention and to change its behavior. *See Cont'l Trend Res. v. Oxy USA*, 101 F.3d 634, 641-43 (10th Cir. 1996). Even if the Court deems Defendants' wealth should factor into the size of the punitive damages, a 1:1 ratio would adequately punish and deter Defendants.

### VI.    CONCLUSION

Defendants respectfully request that the Court grant their motion.

---

indifference" to the plaintiffs' safety); *In re Lansaw* ($10,100 compensatory award and the "most egregious" behavior a judge "had ever encountered in his time on the bench"); *Kendall* (the defendants' conduct was willful and wanton, evinced a reckless disregard for the health and safety of others, and led to physical harm—two mastectomies, removal of lymph nodes, extensive chemotherapy and radiation treatment, and painful reconstructive surgery).

OF COUNSEL

Gerald F. Ivey
J. Michael Jakes
John M. Williamson
Anand K. Sharma
Rajeev Gupta
Maximilienne Giannelli
Karthik Kumar
Daniel F. Roland
FINNEGAN, HENDERSON, FARABOW
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000
gerald.ivey@finnegan.com
mike.jakes@finnegan.com
john.williamson@finnegan.com
anand.sharma@finnegan.com
raj.gupta@finnegan.com
max.giannelli@finnegan.com
karthik.kumar@finnegan.com
daniel.roland@finnegan.com


Dated: January 7, 2020

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Nicole K. Pedi (#6236)
RICHARDS, LAYTON, & FINGER
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Cottrell@rlf.com
Moyer@rlf.com
Pedi@rlf.com


*Attorneys for Defendants*

16